## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Abdo DOE, Hadeel DOE, Faiz DOE, Ebe DOE, Sam DOE, Ali DOE, and Fahad DOE, on their own behalf and on behalf of others similarly situated,

<em>Plaintiffs</em>,

– <em>versus</em> –

Markwayne MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,

<em>Defendants</em>.

Case No. 1:26-cv-02280-DEH

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD............................................................................................................. 6

ARGUMENT.......................................................................................................................... 7

      I.      The Proposed Class Meets the Requirements of Rule 23(a)...................................7

            A.     Numerosity: Joinder of All Members is Impracticable..............................7

            B.     Commonality: The Class Shares Questions of Law and Fact.....................8

            C.     Typicality: Named Plaintiffs' Claims Are Typical of the Class. .................9

            D.     Adequacy: Named Representatives and Proposed Class Counsel Will Fairly and Adequately Protect Class Interest............................................10

      II. Class Certification is Appropriate under Rule 23(b)........................................12

            A.     Rule 23(b)(2) Class-wide Relief Is Appropriate Because Defendants' Conduct Applies Uniformly to the Classes................................................12

            B.     Rule 23(b)(1)(A) Certification is also Appropriate Because of the Risk of Creating Incompatible Standards of Conduct ................................14

CONCLUSION.......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Adair v. England*, 209 F.R.D. 5 (D.D.C. 2002) ............................................................. 15

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) ........................................... 12, 14

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)............................................................... 9

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ....................... 7

*Denney v. Deutsche Bank AG*, 443 F.3d 253, (2d Cir. 2006) ...................................... 10

*Elisa W. v. City of New York*, 82 F.4th 115 (2d Cir. 2023)......................................... 6

*Garro Pinchi v. Noem,* No. 25-CV-05632-PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025). 13

*Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y. 1978) ............................................ 10

*Hilton v. Wright*, 235 F.R.D. 40 (N.D.N.Y. 2006) ..................................................... 15

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285 (2d Cir. 1992) ....................... 9

*In re Frontier Ins. Grp., Inc., Sec. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997) ................. 10

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) ................................ 8

*MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011)............................ 9

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ................................... 7, 8, 9, 13

*Nat'l TPS All.  v. Noem*,  No. 25-CV-05687-TLT, 2025 WL 4110426 (N.D. Cal. Oct. 2, 2025) 13

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F.Supp.3d 19 (D.D.C. 2025)13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ......................... 7

*Trautz v. Weisman*, 846 F.Supp. 1160 (S.D.N.Y. 1994)................................................ 15

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .............................................. 1, 8

*Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-CV-00801-TWP-KMB, 2024 WL 4348245 (S.D. Ind. Sep. 30, 2024)........................................................................................... 13

**Statutes**

42 U.S.C. § 1320b-7(d)............................................................................................ 14

8 U.S.C. § 1254a......................................................................................................... 1, 6, 8

**Other Authorities**

DHS-USCIS, Guide to Understanding SAVE Verification Responses (Apr. 2022)................... 14

*Newberg On Class Actions* § 3.05 (2d ed. 1985).......................................................... 8

*Termination of the Designation of Yemen for Temporary Protected Status*, 91 Fed. Reg. 10,402
(Mar. 3, 2026)................................................................................................... 2, 8, 13

**Rules**

8 C.F.R. § 244.2 ........................................................................................................ 1

8 C.F.R. § 244.10(a)................................................................................................... 6

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**INTRODUCTION**

This case challenges the government's unlawful termination of Yemen's Temporary Protected Status ("TPS") designation. The March 3, 2026 termination decision, carried out as part of the government's campaign to categorically eliminate TPS protections, jeopardizes the legal status, freedom, safety, and livelihoods of thousands of Yemeni TPS holders and applicants across the United States. Plaintiffs seek certification of nationwide classes of current and prospective TPS holders who stand to lose immigration protections if the termination goes into effect. Plaintiffs propose certification of the following classes:

> The "Recipient Class" is defined as Yemeni nationals (or individuals having no nationality who last habitually resided in Yemen) who have TPS status.

> The "Applicant Class" is defined as Yemeni nationals (or individuals having no nationality who last habitually resided in Yemen) who apply or have applied for TPS for Yemen pursuant to 8 U.S.C. § 1254a and 8 C.F.R. § 244.2.

The proposed classes satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Both classes are sufficiently large—2,810 individuals in the Recipient Class TPS and 425 individuals in the Applicant Class; the legality of the Department of Homeland Security's ("DHS") termination decision presents common questions of law and fact; Plaintiffs' claims arise from the same termination decision and seek the same relief as the classes, making their claims typical of all class members; and Plaintiffs and their experienced counsel will fairly and adequately protect the classes. This case turns on a single, uniform agency action decided on an administrative record, not on individualized circumstances; resolving the lawfulness of DHS's termination will resolve all class members' claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(b)(2) is satisfied because Plaintiffs seek relief from a decision that applies generally to the classes, and the requested vacatur and corresponding relief would resolve the

1

claims of all class members in a single, indivisible remedy. *See* Fed. R. Civ. P. 23(b)(2).[1] Rule 23(b)(1)(A) certification is independently appropriate, as there is significant risk that differing adjudications could impose incompatible obligations on Defendants. *See* Fed. R. Civ. P. 23(b)(1)(A). To ensure that any relief afforded by this Court extends to all similarly situated individuals, Plaintiffs request that the Court certify the proposed classes, appoint them as Class Representatives, and appoint undersigned counsel as Class Counsel.

**BACKGROUND**

*Procedural History*

On March 3, 2026, Defendants published their termination of Yemen's TPS designation, effective May 4, 2026. *See Termination of the Designation of Yemen for Temporary Protected Status*, 91 Fed. Reg. 10,402 (Mar. 3, 2026). The termination puts Yemeni holders and applicants at risk of losing lawful status, work authorization, and protection from detention and removal, creating widespread uncertainty and instability for their families and communities in the United States. *See* Compl. ¶¶ 136, 140, Dkt. 1. Plaintiffs filed this suit on March 19, 2026, alleging that the termination violated the Administrative Procedure Act ("APA") and the right to equal protection under the Fifth Amendment. *Id.* ¶¶ 163-78. Specifically, Plaintiffs allege that Defendants predetermined the outcome, failed to conduct the required objective review and consultation, relied on impermissible considerations, acted contrary to their own findings of temporary and extraordinary conditions, departed from longstanding notice practice without explanation by only providing a sixty-day wind-down period, and acted with discriminatory purpose. *Id.* ¶¶ 167, 172, 176. On March 25, 2026, Plaintiffs moved to postpone the effective date

---

[1] While Plaintiffs are pursuing class certification here, this Court can grant the requested set aside relief under the APA to all TPS holders, given that APA set aside relief applies to the agency action as a whole. 5 U.S.C. § 706(2).

of the termination to prevent irreparable harm while this case is pending. *Id.* 1–2, Dkt. 24. Plaintiffs incorporate by reference the factual record set out in their motion to postpone. *See* Pls.' Mem. in Supp. of Mot. to Postpone ("Pls.' Mem.") 1–5, Dkt. 24.

*Proposed Class Representatives*

Plaintiffs Abdo Doe, Hadeel Doe, Faiz Doe, Ebe Doe, Ali Doe, and Farad Doe ("Named Plaintiffs") are TPS holders from Yemen whose legal status and ability to work, live safely, and care for their families are in jeopardy due to Defendants' termination of Yemen's TPS designation. Plaintiff Sam Doe is a TPS applicant who is prima facie eligible for protection from deportation and work authorization, and who also faces similar imminent harm if his application cannot move forward. Together, they exemplify the widespread, uniform harms that this termination poses for all TPS holders and applicants from Yemen, which makes classwide relief appropriate and necessary.

*Recipient Class*

**Plaintiff Abdo Doe** is a Yemeni TPS holder and seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. Abdo is 66 years old and lives in the Bronx, New York. Abdo Doe Decl. ¶ 1, Ex. 1. He works part-time at a deli and has lived in the United States for nearly three decades. *Id* ¶ 3. Abdo has serious medical conditions and requires daily medication. *Id* ¶ 5. TPS is his only protection from deportation and his sole means of maintaining his healthcare regimen, since the healthcare infrastructure in Yemen has been destroyed by the war. *Id.* ¶¶ 3, 5. If TPS is terminated, he will immediately lose work authorization and lawful status, exposing him to detention and deportation. *Id.* ¶ 3. He cannot safely return to Yemen because of the danger to his life from Houthis who control much of the region and may see him as an enemy for being connected to the United States. *Id.* ¶¶ 10-11. He also fears returning because the lack of health and

economic infrastructure will leave him with no ability to survive, and he no longer has any living family there to be a support system. *Id.* ¶¶ 9, 11.

**Plaintiff Hadeel Doe** is a Yemeni TPS holder and seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. Hadeel is 33 years old and lives in Detroit, Michigan. Hadeel Doe Decl. ¶ 1, Ex. 2. She has two children, who are 2 and 9 years of age, and is pregnant with a third child who is due in mid-May 2026. *Id.* ¶¶ 4-5. Hadeel came to the U.S. on a B-2 visa in 2023, and has since earned a Master's degree in Educational Psychology in order to strengthen her career and support her family. *Id.* ¶ 3. TPS is her only form of lawful status and provides the necessary work authorization to support her family. *Id.* ¶¶ 2, 12. Without TPS, Hadeel faces impossible choices for her family—her children have never stepped food in Yemen, and being forced to go with them into a country plagued by war is a horrific possibility. *Id*. ¶¶ 11. She has no relatives left in Yemen, as the rest of her family are either U.S. citizens or permanent residents. *Id.* ¶¶ 9-10.

**Plaintiff Faiz Doe** is a Yemeni TPS holder and seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. He is 50 years old and lives in Brooklyn, New York. Faiz Doe Decl. ¶ 1, Ex. 3. When he lived in Yemen, Faiz worked extensively in the human rights field. *Id.* ¶ 2-3. He has been living in the United States since 2024, and TPS is his only protection from deportation. *Id.* ¶ 2. Because of his prior human rights work in Yemen, which included reporting on the recruitment of child soldiers, Faiz is a target for the Houthis who control different regions of Yemen. *Id.* ¶ 5-7. Losing TPS will also result in the loss of work authorization, which Faiz needs for his job at a car service in New York to support his family. *Id.* ¶ 17.

**Plaintiff Ebe Doe** is a Yemeni TPS holder who seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. Ebe is 36 years old and lives in Houston, Texas. Ebe Doe Decl. ¶ 1,

4

Ex. 4. She moved to the United States in November 2018 and has been working for years as a clinical research specialist while she takes steps to pursue a career as a physician. *Id.* ¶¶ 7, 9, 10. If TPS ends, Ebe will lose her work authorization and her protection from deportation. *Id.* ¶¶ 6, 10. Ebe also supports her family in Yemen by sending money back to them, and she does not know how they will survive without her financial support. *Id.* ¶ 17. If deported, Ebe worries about facing additional abuse from the Houthi regime given the severe restrictions they place on women, especially since she is a working professional in the United States. *Id.* ¶¶ 12, 15.

**Plaintiff Ali Doe** is a Yemeni TPS holder and seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. He is 32 years old and lives in Brooklyn, New York. Ali Doe Decl. ¶ 1, Ex. 5. Ali came to the United States in 2021 on an F-1 visa, and TPS is the only form of protection from deportation that he currently has. *Id.* ¶ 2. Because of his father's work in Yemen on behalf of the Saudi coalition fighting the Houthis, Ali and his family are on a Houthi hit list, and he is fearful of being killed if he is forced to return to Yemen. *Id.* ¶¶ 2-3. If TPS ends, Ali will lose his work authorization, and he will be unable to support his family with covering their basic needs such as rent, food, and medicine. *Id.* ¶ 16.

**Plaintiff Fahad Doe** is a Yemeni TPS holder and seeks to represent the proposed Recipient Class. Compl. ¶ 159, Dkt. 1. He is 31 years old and lives in Florida. Fahad Doe Decl. ¶ 1, Ex. 6. Fahad came to the United States in 2017 to train as an airline pilot. *Id.* ¶ 3. He has since invested nearly $100,000 of his own money to obtain the required certifications and approvals and has completed over 1,500 hours of flight time. *Id.* ¶ 4-5. While he is a citizen of Yemen, he was raised in Saudi Arabia, and most of his family left Yemen because of dangerous conditions. *Id.* ¶ If TPS ends, he will lose his work authorization and no longer be able to support his mother and sibling, for whom he is the sole provider. *Id.* ¶ 8. TPS is his only form of protection from deportation and

5

source of work authorization. *Id.* ¶ 3. Fahad fears for his life if he is forced to return to Yemen, given that the Houthis consider both Saudi Arabia and the United States enemies and would suspect him of being a threat by association. *Id.* ¶¶ 10-11.

*Applicant Class*

**Plaintiff Sam Doe** is a Yemeni TPS applicant and seeks to represent the proposed Applicant Class. Compl. ¶ 159, Dkt. 1. Sam is 25 years old and lives in Indianapolis, Indiana. Sam Doe Decl. ¶ 1, Ex. 7. Sam came to the United States in June 2024 on a J-1 visa for an internship, and currently is completing his Bachelor of Science in Business and Informatics. *Id.* ¶ 2, 5. Sam's father works for the United Nations, and his father's work has made the entire family a target for the Houthis, who have accused U.N. workers of being spies and detained them. *Id.* ¶ 7-8. If approved, TPS will be his only form of protection from deportation, given USCIS's current pause on adjudication of asylum applications from several countries, including Yemen. *Id.* ¶¶ 3, 4, 12. He is protected from deportation now during consideration of his application because he is prima facie eligible for TPS. *See* 8 U.S.C. § 1254a(a)(4)(B); 8 C.F.R. § 244.10(a), (e). He fears that if he is forced to return to Yemen, he will be detained or killed because of his father's work and the Houthis' perception of individuals who previously lived in the United States. *Id.* ¶ 10.

## **LEGAL STANDARD**

To maintain a class action, Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Elisa W. v. City of New York*, 82 F.4th 115, 122 (2d Cir. 2023). "[P]laintiffs must also show that one of the three conditions of Rule 23(b) is met." *Id.*

As relevant here, Rule 23(b)(2) allows for class treatment if "the party opposing the class

has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* (quoting Fed. R. Civ. P. 23(b)(2)). Additionally, Rule 23(b)(1)(A) allows for class treatment where Plaintiffs can show that prosecuting separate actions by or against individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

Rule 23's requirements for class certification are given flexible and "liberal rather than restrictive construction." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). And class certification is mandatory where plaintiffs satisfy Rule 23(a) and one of the subsections of Rule 23(b). *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-400 (2010).

## ARGUMENT

The proposed classes satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy. Certification is proper under Rule 23(b)(2) because Plaintiffs seek indivisible relief that would resolve the claims of all class members at once. In the alternative, certification is appropriate under Rule 23(b)(1)(A) given the risk of inconsistent adjudications establishing incompatible standards of conduct for Defendants.

## I.    The Proposed Class Meets the Requirements of Rule 23(a).

### A.    Numerosity: Joinder of All Members is Impracticable.

Plaintiffs' proposed classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Under Second Circuit precedent, a class of 40 or more members is presumptively numerous. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg On Class Actions* § 3.05 (2d ed. 1985)). While Plaintiffs need not establish

the exact number of class members, *see Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d. Cir. 1993), Defendants estimate that approximately 2,810 current Yemeni TPS holders and 425 pending applicants are affected by the challenged TPS termination. 91 Fed. Reg. 10402, 10408. Therefore, the proposed classes for TPS recipients and applicants, respectively, far exceed the threshold number of members required to satisfy numerosity.

### B.  Commonality: The Class Shares Questions of Law and Fact.

The commonality requirement is satisfied if "resolution" of a question of law or fact "will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). "[E]ven a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citation modified). Commonality is generally present where Plaintiffs "allege that their injuries derive from a unitary course of conduct" by the Defendants. *Marisol A.*, 126 F.3d at 377.

Plaintiffs easily meet the commonality requirement. Their claims arise from a "unitary course of conduct," *id.*—i.e., DHS's termination of Yemen's TPS designation—and raise several questions common to all class members. The questions common to all class members include whether Defendants:

- Failed to conduct the objective review of country conditions required by 8 U.S.C. § 1254a(b)(3)(A);

- Failed to engage in the interagency consultation required by 8 U.S.C. § 1254a(b)(3)(A);

- Terminated TPS despite finding that extraordinary and temporary conditions in Yemen continue to prevent safe return, in violation of 8 U.S.C. § 1254a(b)(3)(B);

- Cut the transition period to sixty days without acknowledging decades of contrary practice or offering a reasoned explanation; and

- Acted, at least in part, with impermissible discriminatory animus against non-white and Muslim non-citizens.

8

*See* Compl.  ¶¶ 4–5, 23–32, 47-57, 108-134, 163-178, Dkt. 1.

Each of these questions will be assessed against the same evidence for each class member. By contrast, none of these questions involves any analysis of the individual circumstances of class members. Indeed, this case presents "precisely the type of situation for which the class action device is suited." *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) (citation modified). Plaintiffs' claims all arise from "a single policy of defendants," *id.*—the termination of TPS for Yemen. And there is "strong commonality of the violation and the harm," *id.* (citation modified), because the same action by the same Defendants threatens to remove the same immigration protections from every member of the class.

### C.    Typicality: Named Plaintiffs' Claims Are Typical of the Class.

For similar reasons, the claims of the Named Plaintiffs are typical of the claims of the classes. Fed. R. Civ. P. 23(a)(3); *see Marisol A.*, 126 F.3d at 376 (noting that "[t]he commonality and typicality requirements tend to merge into one another"). The claims of representative plaintiffs are typical if they arise "from the same course of events" and rely on "similar legal arguments" as the class. *Id.* at 376 (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he typicality criterion does *not* require that the factual predicate of each claim be identical to that of all class members." *MacNamara v. City of New York*, 275 F.R.D. 125, 128 (S.D.N.Y. 2011) (citation modified). "[M]inor variations in the fact patterns underlying individual claims" thus do not defeat typicality. *Robidoux*, 987 F.2d at 937 (2d Cir. 1993).

Here, the Named Plaintiffs' claims arise from the same course of conduct that affected all members of the proposed classes: termination of TPS designation for Yemen. Because the focus of Plaintiffs' claims is on a sweeping policy change, Named Plaintiffs and unnamed class members have the same legal arguments. Moreover, the Named Plaintiffs for each proposed class share the

9

same harm as other proposed class members. For the Recipient Class, the harm is the loss of lawful status under TPS, work authorization, and protection from detention or removal. For the Applicant Class, the harm is the loss of protection from detention and removal and work authorization while their application is pending. All class members seek the same relief. Therefore, Named Plaintiffs' claims are not distinguishable in any way from the classes they seek to represent.

> **D.     Adequacy: Named Representatives and Proposed Class Counsel Will Fairly and Adequately Protect Class Interest.**

The Named Plaintiffs and their proposed Class Counsel satisfy Rule 23(a)(4) because they "will fairly and adequately protect the interests of the class[es]." Fed. R. Civ. P. 23(a)(4). The adequacy requirement under Rule 23(a)(4) "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "Courts that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives display an 'alarming unfamiliarity with the suit.'" *In re Frontier Ins. Grp., Inc., Sec. Litig.*, 172 F.R.D. 31, 47 (E.D.N.Y. 1997) (citing *Greenspan v. Brassler*, 78 F.R.D. 130, 131 (S.D.N.Y. 1978).

The Named Plaintiffs' interests are aligned with the proposed classes. As Yemeni TPS holders and applicants, they face the same imminent harms from DHS's uniform termination decision, including loss of work authorization and protection from detention or removal. Compl. ¶¶ 135–52, Dkt. 1. Each Named Plaintiff understands the responsibilities of class representation and is committed to serving in that role. Abdo Doe Decl. ¶ 15; Hadeel Doe Decl. ¶ 14; Faiz Doe Decl. ¶ 20; Ebe Doe Decl. ¶ 20; Sam Doe Decl. ¶ 14, Ali Doe Decl. ¶ 20, and Fahad Doe Decl. ¶ 15.

Proposed Class Counsel are well qualified to litigate this action on behalf of the class. Class

10

Counsel include attorneys from the Center for Constitutional Rights ("CCR") and Asian American Legal Defense and Education Fund ("AALDEF"). This legal team brings decades of collective experience in civil rights and immigration litigation, including experience representing TPS holders. They have served as counsel in complex immigration and civil rights class actions, including another TPS termination case, demonstrating both the ability and commitment to pursue class-wide relief. *See* Razeen Zaman Decl.; Baher Azmy Decl., Ex. 8.

CCR is a not-for-profit legal, educational, and advocacy organization dedicated to protecting and advancing rights guaranteed by the United States Constitution, federal civil rights law, and international law. Baher Azmy Decl., Ex. 8 ¶ 2. The CCR team has served as class counsel in several complex civil rights cases, as well as many cases involving the rights of noncitizens. *Id.* ¶¶ 4-5. Furthermore, the CCR team includes legal worker Ibraham Qatabi, a Yemeni American fluent in Arabic who has been a paralegal at CCR since 2008. *Id.* ¶ 9. Mr. Qatabi has been central to CCR's immigration work with the Yemeni community in New York and around the United States, organizing trainings, workshops, conferences, and press conferences; engaging in human rights and political advocacy; and leading coordination among Yemeni community organizations. *Id.*

AALDEF is an organization dedicated to defending civil rights and civil liberties and focused specifically on Asian American immigrant communities. *See* Razeen Zaman Decl. ¶¶ 2-3. Proposed Class Counsel from AALDEF have extensive experience in class action litigation and immigrants' rights litigation. *Id.* ¶¶ 5-9. AALDEF also serves as lead counsel in the class action lawsuit challenging the Trump Administration's termination of TPS for Burma. *Id.* ¶ 5. Collectively, proposed Class Counsel have the resources, experiences, and commitment necessary to prosecute this class action vigorously and without conflicts. *Id.* ¶¶ 12-13; Baher Azmy Decl,

11

Ex. 8 ¶¶ 10-11; *see* Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel also have the support of Yemeni community organizations and leaders who either have directly worked with proposed Class Counsel in the past or have knowledge of their prior experience with class action and civil rights litigation. Abdulrahman Barman Decl. ¶¶ 12-16, Ex. 9; Adel Mozip Decl. ¶ 6, Ex. 10; Abdulsamad Elfgeeh Decl. ¶¶ 6-7, Ex. 11. These individuals and organizations provide programming and engage in advocacy that supports thousands of Yemeni community members, including TPS holders. Abdulrahman Barman Decl. ¶¶ 7-11, Ex. 9; Adel Mozip Decl. ¶ 3-6, Ex. 10; Abdulsamad Elfgeeh Decl. ¶¶ 4-12, Ex. 11. Because of their deep commitment and concern for the Yemeni community, these organizations have submitted declarations to support the appointment of proposed Class Counsel in this case.

The Court should therefore find that Rule 23(a)(4) is satisfied and that Named Plaintiffs are qualified to represent the putative classes. The Court should also appoint the undersigned counsel as Class Counsel under Rule 23(g).

## II.    Class Certification is Appropriate under Rule 23(b).

### A.    Rule 23(b)(2) Class-wide Relief Is Appropriate Because Defendants' Conduct Applies Uniformly to the Classes.

In addition to satisfying the requirements of Rule 23(a), this action qualifies under Rule 23(b)(2) because it challenges whether Defendants have "acted or refused to act on grounds that apply generally to the class[es], so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class[es] as a whole. Fed. R. Civ. P. 23(b)(2); *see Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997) (Rule 23(b)(2) permits class actions for non-monetary relief where the party opposing class has acted, or refused to act, on grounds generally applicable to class). "[C]ivil rights cases seeking broad" non-damages "relief for a large and amorphous class"

12

generally "fall squarely into the category of 23(b)(2) actions." *Marisol A.*, 126 F.3d at 377 (citation modified).

Plaintiffs challenge a uniform agency action: DHS's termination of Yemen's TPS designation, which applies to all current Yemeni TPS holders and applicants. 91 Fed. Reg. at 10,402; Compl. ¶¶ 158, 162, 163-78, Dkt. 1. Plaintiffs seek indivisible, class-wide relief: vacatur of the termination under the APA, an injunction preventing Defendants from enforcing the termination decision, and a declaration that the termination of TPS for Yemen was unlawful under the APA and unconstitutional under the Due Process Clause of the Fifth Amendment—all of which will resolve the claims of all class members at once. *See* Compl. ¶¶ 179-86, Dkt. 1; *see, e.g., Garro Pinchi v. Noem,* No. 25-CV-05632-PCP, 2025 WL 3691938, at *18 (N.D. Cal. Dec. 19, 2025); *Nat'l TPS All. v. Noem*, No. 25-CV-05687-TLT, 2025 WL 4110426, at *16 (N.D. Cal. Oct. 2, 2025); *Refugee & Immigr. Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 97-98 (D.D.C.2025) (certifying Rule 23(b)(2) class where plaintiffs sought an injunction, vacatur of federal guidance, and declaratory relief); *Xirum v. U.S. Immigr. & Customs Enf't*, No. 1:22-CV-00801-TWP-KMB, 2024 WL 4348245 at *13 (S.D. Ind. Sep. 30, 2024) (certifying class under Rule 23(b)(2) where plaintiffs brought APA claims).

The proposed classes are therefore a textbook example of a Rule 23(b)(2) class: all members are subject to the same conduct; the requested relief would resolve all class members' claims in a single adjudication; and the Court's determination will provide complete, class-wide relief.

**B.      Rule 23(b)(1)(A) Certification is also Appropriate Because of the Risk of Creating Incompatible Standards of Conduct**

While the classes can be certified under Rule 23(b)(2) alone, the risk for incompatible standards of conduct caused by varying adjudications is significant here and provides an independent basis for (b)(1)(A) certification.

"Rule 23(b) (1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax) . . ." *Amchem*, 521 U.S. at 614. The risk of incompatible standards of conduct is present here because Plaintiffs challenge a single, countrywide agency determination: DHS's termination of Yemen's TPS designation. TPS termination directly affects whether class members are removable and whether they may be detained. If multiple courts reach divergent conclusions regarding the lawfulness of the termination, Defendants could be compelled to treat the same individual as both removable and non-removable, authorized and unauthorized to work, or eligible for release and subject to detention.

The problem is amplified by DHS's use of centralized immigration databases that govern lawful presence, work authorization, and removability nationwide, including the Electronic Immigration System and the Systematic Alien Verification for Entitlements program. *See* 42 U.S.C. § 1320b-7(d); DHS-USCIS, Guide to Understanding SAVE Verification Responses (Apr. 2022), available at https://www.uscis.gov/sites/default/files/document/guides/SAVE-Guide%20to%20Understanding%20SAVE%20Verification%20Responses.pdf. TPS status and related benefits, such as Employment Authorization Documents, are recorded in these systems. Conflicting judgments, such as one requiring continued recognition of TPS status and another upholding termination, could compel DHS to maintain contradictory records, treating the same designation as both valid and invalid. Such operationally incompatible obligations go beyond

14

differing legal conclusions and would create significant administrative confusion while risking inconsistent protection of class members' statutory and constitutional rights.

Courts have found Rule 23(b)(1)(A) certification appropriate in cases involving challenges to a general government policy that applies similarly to all members of the classes. *See Trautz v. Weisman*, 846 F.Supp. 1160, 1168 (S.D.N.Y. 1994) ((b)(1)(A) covers situations where class representative "seeks injunctive relief to alter an on-going course of conduct which is either legal or illegal as to all members of the class") (citation modified)); *see also Hilton v. Wright*, 235 F.R.D. 40, 54 (N.D.N.Y. 2006) ((b)(1)(A) certification appropriate in case challenging correctional facilities' medical policy); *Adair v. England*, 209 F.R.D. 5, 12–13 (D.D.C. 2002) (certifying class under (b)(1)(A) in case challenging religious policies in the Navy).

Because separate lawsuits could impose conflicting duties on DHS in administering a centralized, nationwide program, class certification under Rule 23(b)(1)(A) is warranted. Class treatment will prevent incompatible standards from arising and ensure uniform implementation of the law across all proposed class members. Accordingly, Rule 23(b)(1)(A) provides an independent basis for certification alongside Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) certify the proposed classes under Federal Rules of Civil Procedure Rule 23(a) and 23(b)(2); or, in the alternative, under Rule 23(b)(1)(A); (2) appoint Named Plaintiffs as Class Representatives; and (3) appoint undersigned counsel as Class Counsel.

Dated: March 26, 2026

Respectfully submitted,

*/s/ Razeen Zaman*
Razeen Zaman

15

Helen Anne Schutz Lo*
Dinesh McCoy**
Phi Nguyen**
Niji Jain
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Tel: (212) 966-5932
rzaman@aaldef.org
alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy [BA-8406]
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
skadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

*Counsel for Plaintiffs*

*\*Application for admission pending*

*\*\*Application for admission Pro Hac Vice forthcoming*

16