

666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

April 20, 2026

Hon. Dale E. Ho, United States District Judge
United States District Court for the Southern District of New York
40 Foley Square
New York NY 10007

      **Re.**     Post-argument letter
               *Abdo Doe et al. v. Noem, et al.*, No. 1:26-cv-2280 (S.D.N.Y.)

Your Honor:

During oral argument on April 16, undersigned counsel suggested he could review the TPS cases for indications of how courts have gone about determining which agencies are "appropriate agencies" that must be consulted by the Secretary of Homeland Security as part of any determination to continue or terminate a TPS designation. 8 U.S.C. § 1254a(b)(3)(A). This Court indicated a post-argument submission would be appropriate on this topic. *See* Tr. of Oral Argument (Apr. 16, 2026), at 25 line 5.

A review of the sixteen TPS opinions noted in our Reply Brief, ECF 40, at 2 and 2 n.1, produced limited guidance on this point, but reinforced the centrality of the State Department's input on country conditions to the consultation requirement. *See Nat'l TPS All. v. Noem*, 166 F.4th 739, 773 (9th Cir. 2026) (noting 2020 GAO report states that, as part of consultation process, "DHS typically collects (1) a country conditions report compiled by [USCIS]; (2) a memorandum with a recommendation from the USCIS Director to the Secretary; (3) a country conditions report compiled by the State Department; and (4) a letter with a recommendation from the Secretary of State to the Secretary of Homeland Security"); *id.* at 774 (noting one and a half page long State Department letter that was actually submitted to DHS "contained no information on country conditions in Venezuela" and was therefore defective); *African Communities Together v. Noem*, No. 25-CV-13939-PBS, 2026 WL 395732, at *12 (D. Mass. Feb. 12, 2026) (single sentence email from State was inadequate, and defendants "do not contend that conversations within DHS's 'own subcomponents could fulfill' the TPS statute's consultation requirement"); *Doe v. Noem*, No. 25 C 15483, 2026 WL 184544, at *14 (N.D. Ill. Jan. 23, 2026) ("Historically, before terminating a TPS designation, DHS engaged in genuine consultations with the Department of State and DHS's subcomponents. … Although that specific historical consultation practice may not have been required by law, it reflects what a meaningful exchange of information might look like."); *id.* at *14 n.4 ("nowhere has DHS argued that consultations with its own subcomponents could fulfill the [agency consultation] requirements"); *id.* at *15 ("The Court agrees that the TPS statute does not require consultations with specific agencies," but holding absence of State Department communication fatal to Burma designation); *NTPSA v. Noem*, No. 25-CV-05687-TLT, 2025 WL 4058572, at *23-*24 (N.D. Cal. Dec. 31, 2025) (failure to meaningfully consult with

State was fatal to Honduras, Nicaragua, and Nepal terminations); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 606 (D. Md. 2025) ("statute requires consultation with the State Department and other appropriate agencies"); Tr. of Oral Order, [*Dahlia*] *Doe v. Noem*, No. 25-cv-8686 (S.D.N.Y. Nov. 18, 2025), at 18 ("requisite interagency consultation" could not have occurred because "State Department advisories" could not be reconciled with DHS Secretary's Federal Register notice).

Absent guidance from the caselaw, this Court expressed the opinion that it "[did not] know how Homeland Security is supposed to figure … out" which agencies are appropriate (and therefore mandatory) for consultation. Tr. at 24:15-16.

Plaintiffs' answer was that the Department of State was, at a minimum, the one indispensable "appropriate" agency with respect to any determination under 1254a(b), given its central role and unparalleled expertise within government in monitoring all manner of conditions in all countries abroad. The legislative history of the TPS statute reinforces this idea. The sponsor of the immediate predecessor bill to the TPS statute, Representative Joe Moakley, stated that the statute "vests the authority to grant TPS in the [Secretary], after consultation with appropriate agencies of the Federal Government. The Department of State would be one such agency, though other agencies may also be appropriate, depending on the circumstances." 135 Cong. Rec. (House) 25846 (daily ed. Oct. 25, 1989) (statement of Rep. Joe Moakley) (Ex. A). Indeed, historically, the intra-agency consultation process under the pre-TPS statute "Extended Voluntary Departure" scheme "began within the State Department['s]" Bureau of Human Rights and Humanitarian Affairs. Amicus Brief of Immigration Law Scholars, *Mullin v. Doe*, No. 25-1083 (U.S. Apr. 13, 2026) (Ex. B), at 12; *see also id*. at 13 (the "first step [in the EVD process] was the recommendation letter from the State Department," "reflect[ing] the need for the Department of State's expertise").

Guidance on the appropriate agencies to consult also flows from the language of the TPS statute itself, which requires the consultation to concern "conditions in the foreign state." 8 U.S.C. 1254a(b)(3)(A). Thus, at the time of designation, extensions, or consideration of termination, Homeland Security gathers expertise on country conditions, and *those country conditions in turn suggest* which agencies should be consulted.[1] In the past the Secretary has solicited input from the Department of Health and Human Services, the Defense Department, and USAID, as well as had meetings with White House officials, all complementing the apparently-ubiquitous input of the State Department. *See* GAO Report, *Temporary Protected Status: Steps Taken to Inform and Communicate Secretary of Homeland Security's Decisions* (Apr. 2020) (Ex. C) at 26 n.42, 40. Again, the specific factual conditions of the country will dictate which agencies are "appropriate," making it mandatory under the statute for the Secretary of Homeland Security to consult with them.

Ultimately, as with many areas of the law, the agency must try its best to comply with the will of Congress. But the federal courts, acting *after the fact*, will be the ultimate arbiter of

---

[1] *Cf*. Brief of Immigration Law Scholars, Ex. B at 13 (under prior EVD scheme, decisionmaking INS/DOJ officials might seek further information based on substantive content of first consultation with State).

whether the agency has been successful—with appropriate levels of deference applied in situations involving factual judgment calls on which reasonable minds could differ.

However, in our view, State is clearly an indispensable agency here, a view backed up by the legislative history. The Certified Administrative Record proves that the Secretary failed her duty of "consultation" with State on any commonsense definition of that term as it is situated within the statutory context. *See* Tr. 13:20-15:25 (discussing definition of "consultation"). And that is sufficient for this Court to resolve the Motion before it. *See* Tr. 24:5-9.

Plaintiffs hope this letter will prove useful to the Court.

Respectfully submitted,

Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy [BA-8406]
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
kadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

Razeen Zaman
Helen Anne Schutz Lo*
Dinesh McCoy**
Phi Nguyen**
Niji Jain
ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Tel: (212) 966-5932
rzaman@aaldef.org
alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

*Counsel for Plaintiffs*

*Application for admission pending*

*** Application for admission pro hac vice forthcoming*