May 21, 2026

**VIA ECF**
The Honorable Dale E. Ho
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:**    *Abdo Doe v. Mullin*, No. 26 Civ. 2280 (DEH) ("Second Case")
     *Noor Doe v. Noem*, No. 26 Civ. 2103 (DEH) ("First Case")

Dear Judge Ho:

The parties submit this joint status letter in response to the Court's May 7, 2026, Order ("May 7 Order") directing the parties in the above-captioned cases to file a status letter with a single proposed case management plan to be ordered in both cases or, alternatively, to request a stay of further proceedings pending a decision by the Supreme Court in *Mullin v. Doe*, No. 25-1083, and to address any other issues the parties wish to raise with the Court. ECF No. 55. For the reasons set forth below, the government respectfully requests that the Court stay these actions pending the Supreme Court's decision in *Noem v. Dahlia Doe*, No. 25-1083, 2026 WL 731088 (U.S. Mar. 16, 2026) ("*Dahlia Doe*"), and *Trump v. Miot*, No. 25-1084, 2026 WL 731087 (U.S. Mar. 16, 2026) ("*Miot*"). This request includes the government's deadline to respond to the complaints in both actions and to Plaintiffs' motion for class certification in the Second Case. In light of that request, the government also respectfully requests that the Court not file a case management plan at this time and proposes that, within 30 days of the Supreme Court's decision, the parties submit a status report to the Court, discussing the impact of that decision on this action and the parties' proposed plan forward for this Court's consideration. Plaintiffs in 26-cv-2280 and 26-cv-2103 oppose the government's request for a stay and jointly submit the attached proposed Civil Case Management Plan and Scheduling Order (Exhibit A). The parties' respective positions are further set forth below.

I.    **Background**

By way of background, Plaintiffs in the First Case filed their motion to postpone the effective date of the Secretary's termination of Yemen's TPS designation under 5 U.S.C. § 705 on March 15, 2026. *See* First Case, ECF No. 5. On March 25, 2026, Plaintiffs in the Second Case filed a parallel motion to postpone, *see* Second Case, ECF No. 24, and a day later a motion for class certification, *see* Second Case, ECF No. 25. After hearing argument on the motions to postpone on April 16, 2026, the Court entered an order on May 1, 2026, indefinitely postponing the effective date of the Secretary's TPS termination. *See* First Case, ECF No. 39; Second Case, ECF No. 54. On May 7, 2026, the Court directed the parties to file this status letter with the Court. *See* First Case, ECF No. 40; Second Case, ECF No. 55.

1

## II.    Position of the Government

### A.    *A Stay Is Warranted Pending the Supreme Court's Decision*

There is good cause to stay these actions pending the Supreme Court's decision in *Dahlia Doe* and *Miot*. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (citation and internal quotation marks omitted).

As an initial matter, particularly applicable here, courts in this district have recognized that it is an "inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision that . . . will significantly impact th[e] . . . litigation." *In re Literary Works in Elec. Databases Copyright Litig.*, No. M-21-90 GBD, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001). For that reason, a court properly exercises its discretion to stay an action when similar issues are pending before a higher court. *See Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) (instructing the district court to stay the action pending a Supreme Court decision in a "closely related case" which was likely to determine the question of liability); *Jugmohan v. Zola*, No. 98 Civ. 1509 (DAB), 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000) (staying the action and "declin[ing] to rule on the same issue" as presented to the Supreme Court in a case in which the higher court had recently granted certiorari); *In re Literary Works*, 2001 WL 204212, at *3 (granting a stay motion because the "Supreme Court's review of [another case] is likely to have a significant, if not dispositive, impact on the cases here."); *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) ("[A] court may . . . properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action" (collecting cases)).

A brief stay is warranted here for this reason. The Supreme Court's decisions in *Dahlia Doe* and *Miot* will likely have a significant, if not dispositive, impact on these actions. The Supreme Court granted certiorari in *Dahlia Doe* and *Miot* and heard argument in those consolidated cases on April 29, 2026. Those cases concern the same statutory framework and issues central to this litigation, including whether plaintiffs' APA claims are reviewable given the bar on judicial review in 8 U.S.C. § 1254a(b)(5)(A), whether the degree of interagency consultation conducted satisfies the APA, and whether plaintiffs' equal protection theories are viable. The Supreme Court's forthcoming decisions are therefore likely to clarify, narrow, or resolve the very questions at issue in this lawsuit. Because the Supreme Court is expected to issue its decision by the end of next month (before the end of its current term), the stay the government proposes would only last approximately one month.

Indeed, several courts adjudicating challenges to TPS terminations have stayed proceedings pending the Supreme Court's ruling—including in an order by the Second Circuit yesterday—indicating that the courts recognized that the forthcoming rulings will likely control the legal questions presented in those cases, which are the same questions presented here. *See, e.g.*, *Doe v. Mullin*, 25-2995, ECF No. 50 (2d Cir. May 21, 2026) (holding appeal in abeyance pending Supreme Court decision); *Nat'l TPS Alliance v. Mullin et al.*, No. 26-187, ECF No. 13 (9th Cir. Apr. 14, 2026) (staying appeal and vacating briefing schedule); *Nat'l TPS Alliance v. Noem*, No. 26-199 (9th Cir. April 6, 2026), ECF No. 35 (same); *African Communities Together v. Noem*, No. 25 Civ. 13939 (PBS), ECF No. 85 (D. Mass. Apr. 23, 2026) (holding case in abeyance pending Supreme Court decision); *African Communities Together v. Mullin*, No. 26 Civ. 10278

(BEM) (D. Mass. Apr. 20, 2026), ECF No. 61 (holding district court proceedings in abeyance); *African Communities Together v. Mullin*, No. 26 Civ. 11201 (ADB) (D. Mass. May 1, 2026), ECF No. 73 (staying case pending Supreme Court ruling); *Miot v. Trump*, No. 25 Civ. 2471 (ACR) (D.D.C. Apr. 6, 2026), Minute Order (staying the government's response deadline pending the Supreme Court's decision); *CASA, Inc. v. Noem*, No. 25 Civ. 1484 (TDC) (D. Md. April 3, 2026), ECF. No. 146 (staying all proceedings pending the Supreme Court's ruling). Several of these stays were entered with the plaintiffs' consent. That practice reflects the considered judgment of multiple courts that judicial economy, orderly adjudication, and the avoidance of inconsistent rulings are best served by awaiting the Supreme Court's decision. There is no reason for the Court to depart from that approach.

A stay is also warranted under the five factors courts in this district typically consider in determining whether to stay an action, referred to as the *Kappel* factors: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).

Relevant to this Court's consideration of the *Kappel* factors, Plaintiffs' proposal to proceed with discovery disregards the presumption that judicial review in APA cases is confined to the administrative record. "[D]iscovery is generally inappropriate in cases challenging agency action," *Citizens for Resp. & Ethics in Washington v. FEC*, No. 22 Civ. 35 (CRC), 2025 WL 833075, at *7 (D.D.C. Mar. 17, 2025) (collecting cases), and "courts consider extra-record evidence in APA cases only in extraordinary circumstances," *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 728 F. Supp. 3d 45, 82–83 (D.D.C. 2024). To obtain extra-record discovery, a plaintiff must make a "strong showing of bad faith or improper behavior." *SRC Ent., LLC v. SBA*, No. 22 Civ. 1547 (APM), 2026 WL 353056, at *1 (D.D.C. Feb. 9, 2026). That rule applies regardless of whether constitutional claims are asserted. *See Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018) ("[D]istrict courts have been hesitant to permit a plaintiff asserting a constitutional challenge to agency action to avoid the APA's bar on extra-record evidence." (collecting cases)), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021). Plaintiffs have made no such showing here, and ordinary APA review confined to the administrative record is the proper course.

Even if extra-record discovery were warranted, it would be especially inappropriate to commence such discovery now, before the Supreme Court resolves the threshold question whether judicial review of the Secretary's TPS determinations is available at all. The Supreme Court's forthcoming decision may foreclose Plaintiffs' claims entirely, and requiring the parties to undertake discovery in the interim—on claims that may not prove viable—would impose precisely the kind of "inefficient use of time and resources of the court and the parties" that the stay doctrine exists to prevent. *In re Literary Works*, 2001 WL 204212, at *3.

Thus, a stay of this action is in the parties' and the Court's interests (*Kappel* factors one, two, and three) because it will conserve their resources in litigating the availability of discovery that will likely soon be impacted by a controlling authority. Indeed, "[p]ostponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy." *Jugmohan*, 2000 WL 222186, at *5. Plaintiffs in particular face no prejudice from a brief stay. The Court has already entered an order indefinitely postponing the effective date of the challenged termination of TPS

3

designation, and that postponement remains in force. Plaintiffs and the putative class members thus retain their TPS status, work authorization, and protection from removal throughout the pendency of any stay, and the status quo that Plaintiffs seek to preserve through this litigation will continue undisturbed. Whatever interest Plaintiffs might otherwise have in proceeding expeditiously is substantially diminished where, as here, the relief they sought from this Court is already in place and will remain in place during the brief stay the government proposes. The government, for its part, would be substantially burdened by being required to litigate the availability of discovery and potentially engage in discovery on issues that Supreme Court is on the verge of deciding. A brief stay will conserve the resources of the parties, counsel, and the Court alike.

The remaining *Kappel* factors point the same way. A stay of this action will not prejudice any third parties (*Kappel* factor four) given that the court postponed the TPS termination date for parties and non-parties alike. And because "considerations of judicial economy are frequently viewed as relevant to the public interest," a stay of this action will also serve the public interest (*Kappel* factor five). *Est. of Heiser v. Deutsche Bank Tr. Co. Americas*, 2012 WL 2865485, at *5 (July 10, 2012), *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012). The public has a strong interest in the orderly administration of the TPS statute and in avoiding piecemeal litigation of issues the Supreme Court is poised to resolve.

B.    *Plaintiffs' Arguments Provide No Basis to Deny a Stay*

Plaintiffs' opposition to a stay does not change the analysis. Below, Plaintiffs in the Second Case argue that their Fifth Amendment claim will be unaffected by the Supreme Court's forthcoming decision, but Plaintiffs misapprehend the relevance of the cases before the Supreme Court. The Supreme Court is adjudicating materially identical equal protection claims based on materially identical statements. The government has argued in the Supreme Court that such equal protection challenges to TPS terminations are not viable under controlling Supreme Court precedent, including *DHS v. Regents of University of California*, 591 U.S. 1 (2020), and *Trump v. Hawaii*, 585 U.S. 667 (2018). The Supreme Court's forthcoming decision is therefore likely to clarify whether equal protection claims of this type are cognizable at all. Commencing discovery now, particularly the extra-record discovery Plaintiffs say they will seek, would risk a substantial expenditure of resources on claims the Supreme Court may shortly hold are not viable.

The remaining arguments of the Plaintiffs in the Second Case fare no better. Plaintiffs' reliance on the Court's prior order declining to defer production of the administrative record (ECF No. 36) is misplaced. That order addressed a narrow question, *i.e.*, whether to delay production in advance of the postponement hearing, at a time when the Supreme Court had not yet heard argument and a decision was still months away. The procedural posture has now changed: the Court ruled on Plaintiffs' preliminary relief motions, the Supreme Court has heard argument, and a decision is expected within weeks.

Plaintiffs in the First Case principally argue below that the Court has already entered preliminary relief and made a likelihood-of-success finding, and the case turns on a Yemen-specific administrative record. Neither point warrants denying a stay. The Court's preliminary findings did not adjudicate the merits, and they themselves rest on the same legal framework the Supreme Court is about to clarify. And the Yemen-specific nature of Plaintiffs' merits theory is beside the point because the threshold reviewability question pending before the Supreme Court applies to all TPS terminations and may foreclose merits review entirely. Even Plaintiffs' assertion that DHS's

consultation with other agencies was improper is before the Supreme Court. The plaintiffs in *Dahlia Doe* and *Miot* likewise contended that the Secretary failed to satisfy the consultation requirement of 8 U.S.C. § 1254a(b)(3)(A) on similar factual records. And, as discussed above, Plaintiffs' equal protection claims are not materially distinguishable from the one the Supreme Court is adjudicating. The Supreme Court's forthcoming decisions are therefore likely to address not only whether Plaintiffs' claims are reviewable at all, but also the legal standard governing the adequacy of interagency consultation that drives Plaintiffs' argument here.

Accordingly, the government respectfully requests that the Court: (i) stay all further proceedings in these actions pending the Supreme Court's decisions in *Dahlia Doe* and *Miot*, including the government's deadlines to respond to the complaints in both cases and the pending briefing on Plaintiffs' motion for class certification in the Second Case; and (ii) direct the parties to submit a joint status report within 30 days after the Supreme Court issues its decisions, addressing the impact of those decisions on this action and the parties' proposed plan forward.[1]

### III.      Position of Plaintiffs in 26-cv-2280 (*Abdo Doe v. Mullin*)

Plaintiffs in 26-cv-2280 oppose Defendants' requests to stay these proceedings and to defer entry of the case management plan, and ask the Court to enter the attached proposed Plan so the case can proceed on a single schedule.

The Supreme Court's decision in *Dahlia Doe* and *Miot*, expected in late June 2026, will not resolve this case. *Dahlia Doe* and *Miot* concern whether 8 U.S.C. § 1254a(b)(5)(A) bars judicial review of TPS terminations, but Plaintiffs' Fifth Amendment claim does not turn on that question. The government represented at oral argument before the Supreme Court that it does not contend the statute bars constitutional claims here. *See Tr. of Oral Arg.* at 27*, Mullin v. Doe*, No. 25-1083 (U.S. Apr. 29, 2026). Defendants now press a different point — that the Court may also clarify whether equal protection claims of this kind are cognizable under *DHS v. Regents of University of California*, 591 U.S. 1 (2020), and *Trump v. Hawaii*, 585 U.S. 667 (2018)— but even a decision on that standard would not resolve Plaintiffs' claim, because the terminations the Court will review are not the one at issue here. *Dahlia Doe* and *Miot* concern the Syria and Haiti terminations, which the Secretary grounded in findings that conditions had improved and nationals could return safely. Yemen is the opposite, and the Secretary's own findings make it so: she found that conditions "prevent Yemeni nationals from returning in safety," then terminated anyway, overriding her own finding on a "national interest" rationale — a contrast this Court has already singled out. 2026 WL 1192079, at *7 & n.9. Whatever the Court decides about claims arising from safe-return terminations, it will not decide one arising from a termination the Secretary entered in the teeth of the opposite finding. Plaintiffs' equal protection claim is built on that anomaly — the termination of protection for people the Secretary herself found cannot return in safety — and it can be adjudicated only on a record the administrative record does not contain and the Supreme Court will not supply.

The discovery needed to develop that claim overlaps substantially with Plaintiffs' arbitrary-and-capricious claim. Because the Fifth Amendment claim is reviewable regardless of how those cases come out, and both claims rise on the same Yemen-specific record, that record must be built whatever the Supreme Court decides about reviewability or the cognizability of equal protection

---

[1] The government is investigating the USCIS website issue raised below by Plaintiffs in the First Case and should be prepared to discuss the issue with Plaintiffs in the near future.

claims. This Court has already found Plaintiffs likely to succeed on the merits, 2026 WL 1192079, at *15; a stay would not change the work the case requires, only when it is done. Plaintiffs accordingly anticipate moving for extra-record discovery, which can be briefed alongside the Court's review.

Deferring these proceedings would conserve nothing. Discovery, class-certification briefing, and the other matters before the Court must proceed whatever the Supreme Court decides; a stay would only postpone them, and Defendants would litigate the same claims once it lifted. It would impose no comparable burden on Defendants, who would litigate the same claims once it was lifted. The delay would fall instead on Plaintiffs—who have already shown they are likely to prevail—and on the more than 3,200 Yemeni nationals whose protection, for now, rests only on this Court's postponement. Defendants answer that Plaintiffs face no prejudice because this Court's postponement remains in force, but that postponement is preliminary and preservative — it is not the final relief Plaintiffs seek, and Defendants are litigating to undo it. The stay is, in substance, a renewed request that the Court await the Supreme Court before ordering production of materials relevant to Plaintiffs' claims — a request the Court already declined. *See* ECF No. 36.

Defendants' objection to extra-record discovery is not a basis for a stay. Whether discovery may reach beyond the administrative record is a scope question for the discovery motion the parties propose in the Case Management Plan, *see* Ex. A ¶ 13, and Plaintiffs will make the required showing there.

**Class Certification.** Plaintiffs filed their motion for class certification in 26-cv-2280 on March 26, 2026. *See* ECF No. 27 (Memorandum of Law in Support of Class Certification). Under the schedule previously set by the Court, Defendants' opposition is due May 28, 2026 and Plaintiffs' reply is due June 11, 2026. This schedule reflects an extension to which Plaintiffs consented on March 27, 2026, *see* ECF No. 28, to accommodate the Government's request that the Court first rule on Plaintiffs' motion to postpone under 5 U.S.C. § 705. Class certification briefing should proceed on the existing schedule and should not be subject to any stay or further extension Defendants may seek.

**Other Matters.** Plaintiffs in 26-cv-2280 do not oppose Defendants' anticipated request for an extension of time to respond to the complaint.

For these reasons, Plaintiffs in 26-cv-2280 ask the Court to: (1) enter the proposed Civil Case Management Plan and Scheduling Order attached as Exhibit A; (2) deny Defendants' anticipated requests to stay these proceedings or defer entry of a case management plan; and (3) schedule an Initial Pretrial Conference at the Court's convenience.

## IV.     Position of Plaintiffs in 26-cv-2103 (*Noor Doe v. Noem*)

Plaintiffs in 26-cv-2103 also oppose Defendants' request to stay all further proceedings, defer entry of a case management plan, and postpone their deadline to respond to the complaint. A stay is no automatic merely because related issues are pending before the Supreme Court. "The proponent of a stay bears the burden of establishing its need," and where there is "even a fair possibility" that a stay will harm the opposing party, the movant "must make out a clear case of hardship or inequity." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendants have not made that showing here.

6

This case is no longer at the threshold stage. The Court has already granted Plaintiffs' motion to postpone the effective date of the Yemen TPS termination and found that Plaintiffs are likely to succeed on their APA claim because Defendants failed to comply with the consultation requirement Congress impose. *See* ECF No. 39. That ruling was based on this administrative record and on a Yemen-specific procedural defect; Defendants' failure to conduct the consultation required by 8 U.S.C. § 1254a(b)(3)(A) before terminating Yemen TPS. Defendants now seek to halt the case after Plaintiffs have obtained operative relief and after the Court has already found substantial likelihood that the challenged termination is lawful.

Defendants' assertion that Plaintiffs will suffer no prejudice because the Court's postponement order remains in place is incorrect. The issue is not only whether the order exists; it is whether the agencies are implementing it in a manner that preserves the protections the Court ordered maintained. As reflected in **Exhibit B**, USCIS's online TPS re-registration form does not presently display Yemen as an available designated TPS country option in the country-selection dropdown, notwithstanding this Court's order postponing the effective date of the Yemen TPS termination. That omission creates immediate uncertainty for Yemeni TPS holders, pending applicants, counsel, employers, and government officers regarding whether Yemeni nationals may re-register, pursue TPS related benefits, or rely on existing TPS documentation while the Court's order remains in effect. It also creates a practical risk that individuals protected by the Court's order may be treated as though their TPS-related documentation is no longer valid. That is not a theoretical litigation concern; it is an implementation problem arising now.

Defendants' proposed stay would therefore not preserve the status quo. It would freeze the case while leaving unresolved whether the agencies are actually administering Yemen TPS consistently with the Court's order. Continued case management is particularly appropriate where Defendants seek to delay their response to the complaint, avoid entry of a scheduling order, and postpone any proposed path forward until 30 days after the Supreme Court issues its decision. That is not simply a brief pause; it is a request to suspend ordinary litigation obligations while implementation issues remain unresolved.

Plaintiffs do not dispute that the Supreme Court's forthcoming decisions may affect these cases. However, a stay pending the Supreme Court's decision in *Mullin v. Doe*, No. 25-1083, is not required, will not foreclose review over these cases, and does not justify freezing all proceedings now. A stay is discretionary and requires the Court to balance the competing interests, including the hardship to the party opposing delay. See *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97–99 (2d Cir. 2012). Here, the balance disfavors delay because the Court's order rests on a Yemen-specific administrative record and a Yemen-specific procedural defect: Defendants' failure to conduct the consultation required by 8 U.S.C. § 1254a(b)(3)(A).

The Supreme Court's treatment of the related TPS cases also does not support a categorical stay. The Court granted stays in the Venezuela TPS litigation, but it did not do the same in the Syria and Haiti cases; instead, it granted certiorari before judgment and left the lower-court relief in place. See *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728 (2025); *Noem v. Nat'l TPS All.*, 146 S. Ct. 23 (2025); *Mullin v. Dahlia Doe*, 146 S. Ct. ___, 2026 WL 793243 (Mar. 16, 2026); *Trump v. Miot,* 146 S. Ct. ___, 2026 WL 793244 (Mar. 16, 2026). At minimum, that procedural history counsels against treating the Venezuela stay orders as a blanket command that all TPS litigation should be

stayed pending Supreme Court review. Because the Supreme Court's decision will not foreclose review, these cases remain active, and the case-specific issues here warrant continued litigation.

Defendants' discovery arguments are also premature. No discovery motion is presently before the Court, and entry of a case management plan would not decide whether extra-record discovery is appropriate, what discovery may proceed, or how any discovery dispute should be resolved. Those issues can be addressed through ordinary motion practice if and when they arise. Defendants' position improperly converts a future discovery dispute into a basis to halt the entire case, defer pleadings, delay case management, and postpone merits development. If the Supreme Court issues a decision that materially affects these proceedings, the parties can promptly notify the Court and propose any necessary modification to the schedule. That ordinary mechanism is sufficient; a blanket stay is not.

Plaintiffs in 26-cv-2103 also do not consent to extending Defendants' deadline to respond to the complaint until after the Supreme Court rules. The ordinary response deadline is governed by Federal Rule of Civil Procedure 12(a)(2), and Defendants have already fully briefed the principal jurisdictional and merits issues in connection with preliminary relief. There is no good cause to defer Defendants' obligation to answer or otherwise respond while Plaintiffs continue to face uncertainty concerning status, work authorization, agency implementation, and the practical effect of the Court's order. If the Court declines to stay these actions, Plaintiffs in 26-cv-2103 respectfully request that the Court enter the attached single proposed case management plan included as **Exhibit A** and direct the parties to proceed promptly with discovery and further merits proceedings.

*** 

We thank the Court for its attention to this matter and its consideration of the parties' submission.

Respectfully submitted,

ASIAN AMERICAN LEGAL DEFENSE          GOLDBERG AND ASSOCIATES
AND EDUCATION FUND


*/s/ Razeen Zaman*                      */s/ Julie A. Goldberg*
Razeen Zaman                            Julie A. Goldberg
Helen Anne Schutz Lo*                   2403 2nd Avenue
Dinesh McCoy**                          New York, New York 10035
Phi Nguyen**                            Tel: (718) 432-1022
Niji Jain                               julie@goldbergimmigration.com
99 Hudson Street, 12th Floor
New York, NY 10013                      *Counsel in Plaintiffs in 26-cv-2103*
Tel: (212) 966-5932
rzaman@aaldef.org
alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

8

CENTER FOR CONSTITUTIONAL RIGHTS

Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
kadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

*Counsel for Plaintiffs in 26-cv-2280*

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: */s/ Adam Gitlin*
MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2713/2734
mark.osmond@usdoj.gov
adam.gitlin@usdoj.gov

*Counsel for the government*


*\*Application for admission pending*

*\*\*Application for admission Pro Hac Vice forthcoming*