# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Abdo DOE, Hadeel DOE, Faiz DOE, Ebe DOE, Sam DOE, Ali DOE, and Fahad DOE, on their own behalf and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>– *versus* –<br><br>Markwayne MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,<br><br>*Defendants*. | **Case No. 1:26-cv-02280-DEH** |

**PLAINTIFFS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY PENDING CONSIDERATION OF FORTHCOMING APPLICATION FOR PRELIMINARY RELIEF AND MOTION TO ENTER EXPEDITED BRIEFING SCHEDULE**

Plaintiffs Abdo DOE, Hadeel DOE, Faiz DOE, Ebe DOE, Sam DOE, Ali DOE, and Fahad DOE ("Plaintiffs") respectfully move this Court for a brief, emergency administrative stay of the implementation and enforcement of the termination of Yemen's Temporary Protected Status ("TPS") designation pending adjudication of Plaintiffs' forthcoming renewed motion for preliminary relief regarding the same. Plaintiffs ask the Court to enter the stay immediately and direct Defendants to treat Yemen's designation, TPS status, TPS-based employment authorization, and pending applications as having remained continuously effective from entry of this Court's July 20 Stay Order and throughout the stay.

1

On July 13, 2026, Plaintiffs filed their Amended Complaint adding new claims that are not barred by the TPS statute's jurisdiction stripping provision. First Amended Complaint ("FAC") ¶¶ 185-92, ECF No. 85; *See Mullin v. Doe*, Nos. 25-1083 & 25-1084, 2026 WL 1825840, at *10 (U.S. June 25, 2026). Neither *Mullin* nor the July 20 Stay Order adjudicated those claims. Mem. Op. and Order at 6-7, ECF No. 89 ("July 20 Order"). Plaintiffs will file their renewed motion on those claims tomorrow, July 21, 2026, and propose an expedited schedule

An administrative stay is precedented in the TPS litigation context. Just days ago, on July 19, 2026, Judge Kennelly entered an administrative stay of the implementation and enforcement of the Burma TPS termination through August 7, 2026, to allow expedited consideration of a renewed motion presenting procedural due process and *ultra vires* claims. Order, *Aung Doe v. Mullin*, No. 1:25-cv-15483, ECF No. 97 (N.D. Ill. July 19, 2026). Courts considering other recent TPS terminations likewise granted short administrative stays to permit meaningful expedited review. *See African Cmtys. Together v. Noem*, No. 1:25-cv-13939, ECF No. 37 (D. Mass. Dec. 30, 2025) (South Sudan); *African Cmtys. Together v. Noem*, No. 1:26-cv-10278, ECF No. 36 (D. Mass. Jan. 30, 2026) (Ethiopia); *African Cmtys. Together v. Noem*, No. 1:26-cv-11201, ECF No. 33 (D. Mass. Mar. 13, 2026) (Somalia).

Good cause exists for the same relief here. Administrative stays are routinely used to "freeze legal proceedings until the court can rule on a party's request for expedited relief" and to "permit time for briefing and deliberation." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). For more than eleven weeks, this Court's May 1 postponement order, Op. and Order, ECF 54 ("Postponement Order"), preserved TPS status, work authorization, protection from removal, and pending applications. The July 20 Order stayed the Postponement Order while Plaintiffs' new claims remain unresolved. Current holders who lack an independent status will

now be without TPS protection from removal and TPS-based employment authorization, while pending applicants face foreclosure of their applications. This Court found those injuries irreparable and recognized that the equities favor Plaintiffs. Postponement Order at 31-36; July 20 Order at 5. Today's Order makes immediate relief especially urgent because Plaintiffs now face imminent harms that, once inflicted, will be irreversible and beyond the power of any later ruling to remedy. A short administrative stay would permit briefing and deliberation of the claims the Court has not adjudicated without permitting those irreparable harms to compound in the meantime.

Plaintiffs respectfully ask that the Court enter the expedited briefing schedule set forth below and grant an administrative stay effective immediately and continuing until the renewed motion is resolved.

## BACKGROUND

On May 1, 2026, this Court postponed the termination of TPS for Yemen under 5 U.S.C. § 705. The Court held that Plaintiffs were likely to succeed on their statutory consultation claim and found that termination would cause irreparable harm, that the balance of equities favored Plaintiffs, and that postponement served the public interest. Postponement Order at 31-36

After the Supreme Court decided *Mullin v. Doe*, Nos. 25-1083 & 25-1084, 2026 WL 1825840 (U.S. June 25, 2026), Defendants appealed. They also moved for a stay pending appeal and an indicative ruling. ECF No. 73. The Court granted that motion on July 20. It stayed the Postponement Order and stated that, upon remand, it would vacate that order. July 20 Order at 6-7.

Plaintiffs filed their amended complaint before the July 20 Order. FAC, ECF No. 85. They newly allege 1) that the Termination is *ultra vires* because the Attorney General, not the Secretary of Homeland Security, has the authority to terminate a TPS designation and 2) that the Termination

3

deprives Plaintiffs of protected liberty and property interests without constitutionally adequate procedures, in violation of the Due Process Clause. *Id.* at ¶¶ 185-92. Neither *Mullin* nor the July 20 Order adjudicated those claims. Plaintiffs will present them in the renewed motion to be filed tomorrow (one day ahead of the schedule ordered by the court, *see* Order, ECF 80 (Jul. 7, 2026).

## ARGUMENT

A brief administrative stay is warranted because Plaintiffs will file their renewed motion tomorrow, July 21, 2026, and have proposed an expedited schedule as follows: Plaintiffs' renewed motion for preliminary relief due by July 20, 2026; Defendants' opposition brief due by July 27, 2026; and Plaintiffs' reply due by July 31, 2026.[1] To allow for meaningful adjudication of that motion, and to prevent imminent and substantial harms to Yemeni TPS holders in the meantime, Plaintiffs respectfully request that the Court enter the proposed briefing schedule and grant an administrative stay pending resolution of the renewed motion.

**I.    This Court Possesses the Authority to Issue an Administrative Stay to Allow for Meaningful Adjudication of the Forthcoming Motion**

Administrative stays are a well-established procedural tool that permit courts to "freeze legal proceedings until the court can rule on a party's request for expedited relief" and "permit time for briefing and deliberation." *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring). District courts have authority to grant administrative stays through their inherent power to manage their dockets and under the All Writs Act, 28 U.S.C. § 1651(a). *See id.* at 798 n.1; *see generally* Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1960-68 (2022)

---

[1] Counsel for Plaintiffs requested consent from counsel for defendants but did not hear back before the filing of this motion.

Judge Kennelly's July 19 order provides the closest example. After *Mullin* foreclosed the statutory basis for postponement and the Seventh Circuit reversed it, the court entered an administrative stay of the implementation and enforcement of the Burma TPS termination. The stay will allow the court to consider a renewed motion presenting procedural due process and *ultra vires* claims on an expedited schedule, with the stay expected to last only through August 7, 2026. Order, *Aung Doe v. Mullin*, No. 1:25-cv-15483, ECF No. 97 (N.D. Ill. July 19, 2026). Plaintiffs respectfully request the same limited opportunity here.

District courts nationwide routinely exercise the same authority to preserve existing conditions while considering requests for emergency relief. For example, in *Nat'l Council of Nonprofits v. Office of Mgmt. & Budget*, the District Court for the District of Columbia issued an administrative stay of agency action pending receipt and consideration of expedited briefing on the plaintiffs' request for a temporary restraining order. 763 F. Supp. 3d 13, 17 (D.D.C. 2025) (citing Order, *Texas v. DHS*, No. 24-CV-306 (E.D. Tex. Aug. 26, 2024)). Courts also routinely issue administrative stays pending completion of briefing and rulings on pending motions. *See, e.g.*, *id.*; *Gallusz v. LLP Mortgage, Inc.*, 2025 WL 1360771, at *2 (S.D. Cal. Apr. 15, 2025); *Dellinger v. Bessent*, 2025 WL 450488, at *1 (D.D.C. Feb. 10, 2025); *Richman v. United States*, 2025 WL 3505458, at *1 (D.D.C. Dec. 6, 2025). Other courts have granted administrative stays to allow full consideration of motions to postpone recent TPS terminations. *See African Cmtys. Together v. Noem*, No. 1:25-cv-13939, ECF No. 37 (D. Mass. Dec. 30, 2025) (South Sudan); *African Cmtys. Together v. Noem*, No. 1:26-cv-10278, ECF No. 36 (D. Mass. Jan. 30, 2026) (Ethiopia); *African Cmtys.s Together v. Noem*, No. 1:26-cv-11201, ECF No. 33 (D. Mass. Mar. 13, 2026) (Somalia). Those orders confirm that a short administrative stay will enable the Court to meaningfully adjudicate Plaintiffs' renewed motion while minimizing harm to the parties.

5

Moreover, Plaintiffs need not demonstrate a likelihood of success on the merits of their claims to obtain an administrative stay. *See United States v. Texas*, 144 S. Ct. at 798 ("Administrative stays do not typically reflect the court's consideration of the merits") (Barrett, J., concurring). Conducting a full merits assessment at this juncture would undermine a central purpose of administrative stays: ensuring that courts are not forced to decide complex and consequential issues that are "not . . . easy to evaluate in haste." *Id.* The Supreme Court and courts of appeals frequently use administrative stays to secure "time to deliberate" on requests for expedited relief, including to assess likelihood of success. *Id.* (collecting cases). In doing so, the Supreme Court has "stressed that the administrative stay reflect[s] no view of the underlying merits." *Id.* (citing *June Med. Servs., L.L.C. v. Gee*, 139 S. Ct. 661 (2019) (mem.)). Deferring the full merits inquiry until the Court considers the renewed motion therefore accords with the purpose and practice of administrative stays.

The pending interlocutory appeal does not alter this authority with respect to claims the appealed order did not decide. An appeal from an interlocutory injunction leaves the action in the district court and divests jurisdiction only over the questions raised and decided in the appealed order. *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989). The Postponement Order did not adjudicate the procedural due process or *ultra vires* claims, and the *Abdo Doe* Plaintiffs added those claims after the order issued. Those claims therefore fall outside the questions on appeal.

## II. A Short Administrative Stay Is Necessary to Halt Imminent and Irreparable Harm

The purpose of an administrative stay is to "minimize harm" while a court deliberates. *United States v. Texas*, 144 S. Ct. at 798 (Barrett, J., concurring). Here, the threatened harms will not wait for that deliberation. With the Postponement Order suspended, Plaintiffs face the injuries this Court has already found irreparable: arrest, detention, loss of employment, and removal to a

6

country where there is "nowhere...Plaintiffs would be free from their fear of targeted violence." Those injuries are imminent and irreparable. A later ruling cannot restore liberty lost in detention, undo removal to Yemen, or recover employment and immigration opportunities lost in the interim. Yemen is also subject to the travel ban. A person removed there may be barred from returning even after prevailing, turning removal into exile. Proclamation No. 10949 § 2(l), 90 Fed Reg. 24,497, 24,501 (June 4, 2025); Proclamation No. 10998 § 2(b), 90 Fed. Reg. 59,717, 59,718 (Dec. 19, 2025). The Termination also threatens to foreclose approximately 425 pending TPS applications. FAC §2. Any of those harms may occur before the Court considers two claims it has never adjudicated. A stay entered today can prevent them. One entered after an arrest, detention, removal, job loss, or foreclosure of a pending immigration application would come too late for that injury. Only immediate relief preserves the Court's ability to decide the renewed motion before the Termination inflicts the very injuries that motion seeks to prevent.

For the administrative stay to protect Plaintiffs while the Court considers the renewed motion, the order should direct Defendants to treat Yemen's designation, TPS status, TPS-based employment authorization, and pending applications as continuously effective from entry of the July 20 Order. That relief would preserve work authorization and pending applications, prevent detention or removal based on the loss of TPS protection, and avert lasting immigration consequences from an interim lapse. Approximately 2,810 Yemeni nationals held TPS when the Termination issued, and another 425 had applications pending. FAC ¶ 2. All seven named Plaintiffs face detention. *Id.* ¶ 159.

This Court has already found these precise injuries irreparable, and today's order left that finding intact. The DHS termination Notice states both that conditions "continue to challenge Yemeni nationals' ability to safely return home" and that "ICE is currently removing aliens to

Yemen." Termination of the Designation of Yemen for Temporary Protected Status, 91 Fed. Reg. 10,402, 10,404-–05 (Mar. 3, 2026). On May 1, the Court found that termination would strip lawful status, jeopardize employment and medical care, and expose Plaintiffs to immediate arrest, detention, deportation, and family separation. Postponement Order at 31. It further found that "Plaintiffs have no way of avoiding these harms other than through TPS" and that "[t]here is nowhere in Yemen where Plaintiffs would be free from their fear of targeted violence." *Id.* at 32. Today's order did not question those findings. It granted the Government's stay because the merits showing on the grounds then before the Court outweighed the equitable showing. July 20 Order at 5. That merits determination did not address whether interim protection is warranted while the Court considers two grounds for relief it has never evaluated.

For the named Plaintiffs, the danger is concrete and documented. Abdo Doe requires ongoing treatment and medication for heart and spinal conditions that would be difficult to obtain in Yemen. FAC ¶¶ 7, 152. Hadeel Doe is the mother of two U.S.-citizen children and recently gave birth to a child whose heart condition requires care unavailable in Yemen; she has no relatives remaining there. *Id.* ¶¶ 8, 153. Faiz Doe faces detention or disappearance because of his human-rights work. *Id.* ¶¶ 9, 154. Ebe Doe would lose her cancer-research career and return to a region where women face severe professional restrictions. *Id.* ¶¶ 10, 155. Sam Doe faces forced recruitment by the Houthis if returned. *Id.* ¶¶ 11, 156. Ali Doe would be targeted because of his and his father's association with Yemen's internationally recognized government. *Id.* ¶¶ 12, 157. Fahad Doe would lose his work authorization and aviation career just as he is poised to become an airline pilot. *Id.* ¶¶ 13, 158. A later ruling cannot restore liberty lost to detention, undo removal to danger, or repair these medical, professional, and family harms after they occur.

The status lapse itself can produce consequences that outlast this litigation. Many Yemeni TPS holders have no comparable immigration protection, and a lapse in immigration status can render some ineligible to change status or adjust status from within the United States. Expert Declaration of Stacy Tolchin ¶¶ 12, 25-29, ECF No. 23-7. TPS holders are treated as maintaining lawful nonimmigrant status for purposes of adjustment of status. 8 U.S.C. § 1254a(f)(4). A gap can therefore affect adjustment eligibility. *See id.* § 1255(c)(2). Departing for consular processing offers no reliable alternative because Proclamation 10949 suspends entry by Yemeni nationals, and Proclamation 10998 continues that restriction. Proclamation No. 10949 § 2(l), 90 Fed. Reg. 24,497, 24,501 (June 4, 2025); Proclamation No. 10998 § 2(b), 90 Fed. Reg. 59,717, 59,718 (Dec. 19, 2025). Treating TPS protections as continuously effective during the short stay is therefore essential. It would prevent the present gap from creating permanent consequences before the Court can decide whether the termination may lawfully remain in effect.

The Government faces no comparable injury from maintaining for a few days the protections that remained in place for more than eleven weeks. On May 1, this Court found that the Government had identified only "the generalized grievance that [it] may not implement a statute as [it sees] fit" and that this "diffuse concern cannot outweigh the concrete and critical interests substantiated by Plaintiffs." Postponement Order at 35. The Court concluded that the balance of equities and the public interest "decidedly favor the Plaintiffs." *Id.* at 36. Today's order did not revise that assessment. Rather, it concluded that the Government's merits showing on the grounds then presented outweighed the equities on the sliding scale. July 20 Order at 5. An administrative stay weighs no merit at all; on the factors it does weight, this Court's findings, left intact today, already answer. A short administrative stay would therefore prevent irreversible injury without materially burdening the Government while the Court evaluates unresolved claims.

These are harms that no later relief can repair, and they strongly support a short administrative stay.

Plaintiffs will file the renewed motion tomorrow, July 21, 2026. They respectfully propose the following schedule and page limits:

1. Plaintiffs file the renewed motion for postponement by July 21, 2026.

2. Defendants file their opposition by July 28, 2026.

3. Plaintiffs file their reply by July 31, 2026, not to exceed 15 pages.

**CONCLUSION**

Plaintiffs respectfully request an administrative stay, effective immediately, of the implementation and enforcement of the Termination of Yemen's TPS designation until the Court resolves Plaintiffs' renewed motion. To make that relief effective, Plaintiffs further request that the Court direct Defendants to treat Yemen's designation, TPS status, TPS-based employment authorization, and pending applications as continuously effective from entry of the July 20 Order through the duration of the administrative stay. To permit prompt adjudication of the renewed motion, Plaintiffs also request that the Court enter the briefing schedule and page limits proposed above.

Dated: July 20, 2026                          Respectfully submitted,

*/s/ Razeen Zaman*
Razeen Zaman
Helen Anne Schutz Lo
Dinesh McCoy*
Phi Nguyen*
Niji Jain
ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Tel: (212) 966-5932
rzaman@aaldef.org

10

alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
kadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

*Counsel for Plaintiffs*

*\*Application for admission Pro Hac Vice
forthcoming*

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this motion complies with the word limits of Local Rules of the United States District Courts for the Southern & Eastern Districts of New York § 7.1(c) and United States District Judge Dale E. Ho, Individual Rules and Practices in Civil Cases § 4(c). According to the word-processing system used to prepare this Memorandum of Law, the total word count for all printed text exclusive of the material omitted under Loc. R S.D.N.Y & E.D.N.Y § 7.1(c) and U.S. Dist. J. Dale E. Ho, Individual Rules and Practices in Civil Cases § 4(c) is 2,835 words and 10 pages.

Dated: July 20, 2026

New York City, New York

/s/*Razeen Zaman*

Razeen Zaman