UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ABDO DOE, *et al.*,

        Plaintiffs,

             v.

MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,

        Defendants.

Case No. 26 Civ. 2280 (DEH)

---

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR AN ADMINISTRATIVE STAY

JAY CLAYTON
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2713/2734
*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
   *Of Counsel*

Defendants (the "government") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for an administrative stay (ECF No. 90).

## PRELIMINARY STATEMENT

After this Court stayed its order postponing the termination of Yemen's Temporary Protected Status ("TPS") designation—and issued an indicative ruling that it would vacate that order on remand—Plaintiffs submitted an emergency motion for an "administrative stay" of the implementation and enforcement of the TPS termination. Their motion should be denied.

Administrative stays are not a device for obtaining the relief Plaintiffs seek. An administrative stay preserves the existing state of affairs. Plaintiffs seek the opposite: an order directing the government to treat Yemen's TPS designation as though the termination never took effect—even though the termination has been in effect since July 20, when the Court stayed its order postponing the termination. Plaintiffs cannot recapture the suspended relief simply by relabeling their request as an "administrative stay."

Plaintiffs' motion rests on the premise that an administrative stay may issue without any showing that they are likely to prevail. But administrative stays are not blind to the merits, and their ordinary justification—buying a court time to deliberate on questions that are hard to quickly assess—has no application here. The Court has already deliberated on the merits of Plaintiffs' claims—twice. It first did so in issuing the postponement order, and then again in staying that order when the Court held that the government was likely to succeed on the merits in light of *Mullin v. Doe*, No. 25-1083, 2026 WL 1825840 (U.S. June 25, 2026) ("*Mullin*").

Nothing in Plaintiffs' emergency motion calls that judgment into question. The two claims underlying Plaintiffs' latest motion for preliminary relief—which the Court has not yet

addressed only because Plaintiffs had not asserted them in their initial complaint—fail as a matter of law. The *ultra vires* claim, which posits that authority over TPS belongs to the Attorney General rather than the Secretary, is squarely foreclosed by *Mullin*, which confirms that responsibility for TPS decisions rests with the Secretary. And the due process claim fails because a temporary, discretionary immigration benefit is not a protected liberty or property interest. Because Plaintiffs cannot show any likelihood of success, no interim relief is warranted.

Nor is there any basis to expedite briefing. About two weeks ago, after the government moved to stay the Court's postponement order, the parties negotiated a briefing schedule at this Court's direction, and the Court adopted that schedule. Plaintiffs now seek to set aside that negotiated, Court-approved schedule and compress the government's response time by two weeks in an effort to obtain speedier consideration of a motion premised on belatedly asserted claims that are unlikely to succeed. The Court should deny the motion in full and maintain the briefing schedule the Court already approved.

## BACKGROUND

Plaintiffs commenced this action on March 19, 2026, claiming that the termination of Yemen's TPS designation violated the Administrative Procedure Act ("APA") and their equal-protection rights. ECF No. 1. On May 1, 2026, this Court postponed the effective date of the termination under 5 U.S.C. § 705 after concluding that Plaintiffs were likely to succeed on one of their APA claims. ECF No. 54 ("postponement order").

On June 25, 2026, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims" and also held that an equal-protection claim—analogous to the one asserted by Plaintiffs here—was not viable. *Mullin*, 2026 WL 1825840, at *10–13.

2

On June 28, 2026, the government appealed this Court's postponement order and, two days later, moved this Court for a stay of the postponement order pending appeal and for an indicative ruling that, on remand, the Court would dissolve that order. ECF Nos. 72–74.

On July 14, 2026, Plaintiffs filed an Amended Complaint, which added two claims: that the TPS termination is *ultra vires* because authority over TPS rests with the Attorney General rather than the Secretary, ECF No. 85 ¶¶ 191–92, and that the TPS termination deprives Plaintiffs of due process, *id.* ¶¶ 186–89.

On July 20, 2026, the Court stayed its postponement order pending appeal and also issued an indicative ruling stating that, on remand, the Court would dissolve that order. ECF No. 89. Recognizing that, under *Mullin*, "'the TPS statute's judicial-review bar applies to all non-constitutional claims,'" the Court held that the government "has demonstrated a likelihood of success on the merits." *Id.* at 4 (quoting *Mullin*, 2026 WL 1825840, at *10). It further concluded that "Plaintiffs are not likely to succeed on the merits of" their equal-protection claims, *id.* at 6, and that "the strong showing that the Government has made on the merits overcomes any comparatively weaker showing with respect to the equities," *id.* at 5. The Court accordingly stayed the postponement order and issued an indicative ruling stating that it "would vacate and dissolve" the order on remand from the Second Circuit. *Id.* at 6.

Plaintiffs now seek an "administrative stay" of the TPS termination pending adjudication of a second motion for preliminary relief premised on their *ultra vires* and due process claims. ECF No. 90, at 3–6. They also seek an order directing the government to treat Yemen's TPS designation as "continuously effective" from entry of the July 20 order, and a compressed

briefing schedule for their motion for preliminary relief, notwithstanding a negotiated schedule that the Court already approved. *Id.* at 9–10.

## ARGUMENT

**I.     The Requested "Administrative Stay" Would Improperly Reinstate the Very Relief This Court Has Already Stayed**

Plaintiffs' motion asks the Court to undo the relief the Court just granted. The postponement order barred the termination of Yemen's TPS designation from taking effect. This Court has now stayed that order pending appeal, thereby divesting the postponement order of enforceability. *See Nken v. Holder*, 556 U.S. 418, 428 (2009) (a stay "divest[s]" an "order of enforceability"). Yet the requested "administrative stay"—along with the demand that the government treat the TPS designation as "continuously effective," ECF No. 90, at 9–10—would restore the precise result the stay suspended. When the Court has just concluded that a postponement is not warranted, it would be improper to resurrect the same relief by entering an administrative stay on the premise that this type of stay requires no showing of likely success. *Cf. DHS v. D. V. D.*, 145 S. Ct. 2627, 2629 (2025) (subsequent "order cannot now be used to enforce an injunction that our stay rendered unenforceable").

Nor is an administrative stay a proper vehicle for the relief Plaintiffs demand. An administrative stay exists to "'freeze legal proceedings until the court can rule on a party's request for expedited relief,'" *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring); it preserves the existing state of affairs and "cannot be employed to grant a party effectual relief," *Hassoun v. Searls*, 976 F.3d 121, 130 n.5 (2d Cir. 2020). Plaintiffs seek precisely such effectual relief here. Following this Court's July 20 stay order, the termination of Yemen's TPS designation is now in effect. Plaintiffs do not ask the Court to preserve that state of

affairs; they ask the Court to reverse it and to compel the government affirmatively to treat the designation, work authorization, and pending applications as "continuously effective." ECF No. 90, at 9–10. That is injunctive relief that "alter[s]" rather than "maintain[s] the status quo" and demands "'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018) (quotation marks omitted).

## II.    An Administrative Stay Is Not Blind to the Merits, and the Merits Decisively Favor the Government

Plaintiffs suggest that an administrative stay may issue without any showing of likelihood of success. But the merits are never irrelevant to a stay, and here they strongly weigh against granting Plaintiffs' request. Plaintiffs quote Justice Barrett's observation that administrative stays "do not typically reflect the court's consideration of the merits." *United States v. Texas*, 144 S. Ct. at 798. But Justice Barrett went on to explain that just because stays "are 'administrative' does not mean they are value neutral" and that the "*Nken* factors"—which include likelihood of success—"are obviously on the court's radar, and unsurprisingly, they can influence the stopgap decision, even if they do not control it." *Id.* at 798–99 (noting "for example, [that] judges have cited the underlying merits as a reason to grant an administrative stay"). Furthermore, "[a]n administrative stay should last no longer than necessary to make an intelligent decision . . . . Once the court is equipped to rule, its obligation to apply the *Nken* factors is triggered." *Id.* at 799.

The reason administrative stays are ordinarily less searching on the merits is that they "buy[] the court time to deliberate" where the likelihood of success is "not always easy to evaluate in haste." *Id.* at 798. That rationale is inapplicable here. The Court has already twice deliberated on the likelihood that Plaintiffs' claims will succeed—first in entering the

5

postponement order, and again in its July 20 stay order. On the latter occasion, after briefing on the effect of *Mullin*, the Court concluded that the government "has demonstrated a likelihood of success on the merits" and that the government's "strong showing . . . on the merits overcomes any comparatively weaker showing with respect to the equities." ECF No. 89, at 4–5. Where the Court has already rendered a considered merits judgment against the party seeking interim relief, an administrative stay would not preserve the status quo pending deliberation—it would override the very deliberation the Court has completed.

Plaintiffs offer no basis to revisit that judgment, because the two belatedly asserted claims underlying their second motion for preliminary relief are without merit. First, as their lead claim, Plaintiffs contend that the termination is *ultra vires* and thus void because the power to terminate TPS "was never transferred to the Secretary of Homeland Security" and instead remains with the Attorney General. ECF No. 85 ¶¶ 191–92. This claim fails at the threshold because it is statutory, and the Supreme Court has held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin*, 2026 WL 1825840, at \*10. Further, Plaintiffs' claim that the review bar in § 1254a(b)(5)(A) "only applies to determinations 'of the Attorney General'" is not viable when the Supreme Court has held that the bar applies to determinations of the Secretary of Homeland Security. *See* ECF No. 93, at 2. Beyond holding that there can be no judicial review of this claim, *Mullin* also confirmed that "[r]esponsibility for TPS decisions rests with the Secretary." 2026 WL 1825840, at \*4 (citing 6 U.S.C. §§ 552(d), 557). The TPS statute refers to the Attorney General only because the Department of Homeland Security did not exist when Congress created TPS in 1990; the Homeland Security Act of 2002, however, transferred the TPS functions to the Secretary. *See Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th

6

Cir. 2009). And even if Plaintiffs were somehow right that TPS authority was never transferred to the Secretary, that would not amount to likely success for Plaintiffs, because it would mean that Yemen was never properly designated for TPS in the first place and there is no designation to terminate.

Second, with respect to their due process claim, Plaintiffs assert "liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection." ECF No. 85 ¶ 187. That claim fails because TPS holders have no protected liberty or property interest in a status that is temporary by statute and subject to the Secretary's discretionary judgment. *See* 8 U.S.C. § 1254a(a)(1)(A) (providing that the Secretary "may grant" TPS to a qualifying national of a designated country); 8 C.F.R. § 244.2 ("an alien may in the discretion of the director be granted [TPS] if the alien establishes that he or she" meets the eligibility criteria); *Mullin*, 2026 WL 1825840, at *16 (Thomas, J., concurring) ("The termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property' . . . . The discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right."); *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023) (TPS is a "discretionary form of relief"); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008) (same); *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018) ("aliens have no constitutionally-protected 'liberty or property interest' in such a discretionary grant of relief for which they are otherwise statutorily ineligible"); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018) ("the explicitly temporary nature of the [TPS] program suggests" that holders cannot establish "reliance interests").

7

### III.    Plaintiffs Should Not Be Permitted to Disrupt the Briefing Schedule the Parties Negotiated and the Court Adopted

Plaintiffs' separate request to expedite briefing should likewise be denied, because it would upend a schedule the parties jointly negotiated and the Court adopted. To conserve party and judicial resources, the agreed-upon schedule consolidates briefing on Plaintiffs' motion for preliminary relief and the government's motions to dismiss in both related cases. The parties negotiated this schedule while the government's stay motion was pending and thus with full awareness that the Court might issue the very ruling Plaintiffs now rely on to set aside that schedule. Nothing about the Court's July 20 order justifies discarding that mutual arrangement. Plaintiffs would unwind a negotiated, Court-approved schedule and compress the government's response time by two weeks to expedite consideration of claims that are unlikely to succeed. Compounding the problem, the proposed schedule does not account for briefing in the related case (26 Civ. 2103). The renewed motion should proceed on the schedule the parties negotiated and the Court adopted.

**CONCLUSION**

The Court should deny Plaintiffs' motion for an administrative stay and leave in place the

mutually agreed, Court-ordered briefing schedule.

Dated: New York, New York
        July 22, 2026

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney
                                        Southern District of New York
                                        *Attorney for Defendants*

                          By:    */s/ Mark Osmond*
                                 MARK OSMOND
                                 ADAM GITLIN
                                 Assistant United States Attorneys
                                 86 Chambers Street, 3rd Floor
                                 New York, New York 10007
                                 Tel.: (212) 637-2713/2734
                                 mark.osmond@usdoj.gov
                                 adam.gitlin@usdoj.gov