UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Abdo DOE, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,<br><br>　　　　　Defendants. | Case No. 26 Civ. 2280 (DEH) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
RENEWED MOTION TO POSTPONE THE EFFECTIVE DATE OF AGENCY ACTION**

　　　　　　　　　　　　　　　　　　　　JAMES M. MCDONALD
　　　　　　　　　　　　　　　　　　　　United States Attorney
　　　　　　　　　　　　　　　　　　　　Southern District of New York
　　　　　　　　　　　　　　　　　　　　86 Chambers Street, 3rd Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10007
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 637-2713/2734
　　　　　　　　　　　　　　　　　　　　*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
　　*Of Counsel*

# CONTENTS

TABLE OF AUTHORITIES .................................................................................................II

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 2

    I. STATUTORY BACKGROUND ................................................................................. 2

    II. FACTUAL AND PROCEDURAL HISTORY ........................................................ 4

LEGAL STANDARD...................................................................................................... 6

ARGUMENT.................................................................................................................... 7

    I. PLAINTIFFS CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS................... 7

        A.  Plaintiffs' *Ultra Vires* Claim Is Foreclosed by *Mullin v. Doe* and Otherwise Fails on the Merits ................................................................................................ 7

        B.  Plaintiffs' Due Process Claim Is Fatally Flawed ......................................... 12

    II. THE EQUITABLE FACTORS FAVOR THE GOVERNMENT ..................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Line Pilots Ass'n, Int'l v. Quesada*,
  276 F.2d 892 (2d Cir. 1960) .................................................................................. 17

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ............................................................................................... 13

*Bah v. Cangemi*,
  548 F.3d 680 (8th Cir. 2008) ................................................................................. 14

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972) ...................................................................................... 13, 15, 18

*Bell v. Burson*,
  402 U.S. 535 (1971) ............................................................................................... 18

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
  239 U.S. 441 (1915) .......................................................................................... 17, 18

*Bucklew v. Precythe*,
  587 U.S. 119 (2019) ................................................................................................. 9

*CASA de Maryland, Inc. v. Trump*,
  355 F. Supp. 3d 307 (D. Md. 2018) ...................................................................... 15

*CASA, Inc. v. Noem*,
  792 F. Supp. 3d 576 (D. Md. 2025) ...................................................................... 10

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) .......................................................................................... 18, 19

*Dawson v. Milwaukee Hous. Auth.*,

   930 F.2d 1283 (7th Cir. 1991) ........................................................................... 18

*Estle v. IBM*,

   23 F.4th 210 (2d Cir. 2022) ................................................................................. 8

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*,

   175 F.3d 144 (2d Cir. 1999)............................................................................... 21

*Giambalvo v. Suffolk Cnty., New York*,

   155 F.4th 163 (2d Cir. 2025) ............................................................................... 9

*Goldberg v. Kelly*,

   397 U.S. 254 (1970)........................................................................................... 18

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,

   481 F.3d 60 (2d Cir. 2007).................................................................................... 6

*Gustafson v. Alloyd Co.*,

   513 U.S. 561 (1995)........................................................................................... 10

*Hernandez v. Sessions*,

   884 F.3d 107 (2d Cir. 2018)......................................................................... 14, 17

*INS v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*,

   510 U.S. 1301 (1993)......................................................................................... 21

*Jimenez-Nieves v. United States*,

   682 F.2d 1 (1st Cir. 1982).................................................................................. 13

*Katz v. Georgetown Univ.*,

   246 F.3d 685 (D.C. Cir. 2001)........................................................................... 20

*Kentucky Dep't of Corr. v. Thompson,*

    490 U.S. 454 (1989)................................................................................................ 15

*Kopunek v. Dir. of Internal Revenue,*

    528 F. Supp. 134 (S.D.N.Y. 1981) ...................................................................... 19

*Mansor v. USCIS,*

    685 F. Supp. 3d 1000 (W.D. Wash. 2023)............................................................ 16

*Maryland v. King,*

    567 U.S. 1301 (2012)........................................................................................... 21

*Mathews v. Eldridge,*

    424 U.S. 319 (1976)................................................................................... 17, 18, 20

*Mejia Rodriguez v. DHS,*

    562 F.3d 1137 (11th Cir. 2009) .......................................................................... 10

*Mullin v. Doe,*

    146 S. Ct. 2121 (2026)................................................................................... passim

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n,*

    145 S. Ct. 2658 (2025)........................................................................................... 9

*Nken v. Holder,*

    556 U.S. 418 (2009)............................................................................................. 21

*Noem v. NTPSA,*

    145 S. Ct. 2728 (2025)......................................................................................... 21

*Noem v. NTPSA,*

    146 S. Ct. 23 (2025)............................................................................................. 21

*Portillo-Rendon v. Holder*,

662 F.3d 815 (7th Cir. 2011) ................................................................................ 19

*Ramos v. Louisiana*,

590 U.S. 83 (2020) ................................................................................................. 9

*Ramos v. Nielsen*,

321 F. Supp. 3d 1083 (N.D. Cal. 2018) ................................................................ 16

*Regents of the Univ. of California*,

591 U.S. 1 (2020) ................................................................................................. 11

*Rodas v. Chertoff*,

399 F. Supp. 2d 697 (E.D. Va. 2005) ................................................................... 16

*Saget v. Trump*,

375 F. Supp. 3d 280 (E.D.N.Y. 2019) ............................................................ 11, 16

*Seminole Tribe of Fla. v. Fla.*,

517 U.S. 44 (1996) ................................................................................................. 8

*State of New York v. Admin. for Child. & Fams.*,

No. 26 Civ. 172 (VSB), 2026 WL 673848 (S.D.N.Y. Mar. 10, 2026) ..................... 6

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,

709 F. Supp. 3d 118 (S.D.N.Y. 2024) .................................................................... 7

*Sussman v. Crawford*,

488 F.3d 136 (2d Cir. 2007) ................................................................................... 7

*Tobar v. Garland*,

65 F.4th 195 (5th Cir. 2023) ................................................................................ 14

v

*Town of Castle Rock v. Gonzales*,

545 U.S. 748 (2005) ................................................................................................ 15

*Trump v. Boyle*,

145 S. Ct. 2653 (2025) ............................................................................................ 21

*Trump v. CASA, Inc.*,

606 U.S. 831 (2025) ........................................................................................... 20, 22

*Uniformed Fire Officers Ass'n v. de Blasio*,

973 F.3d 41 (2d Cir. 2020) ...................................................................................... 20

*United States ex rel. Turner v. Williams*,

194 U.S. 279 (1904) ................................................................................................ 17

*United States v. Caceres*,

440 U.S. 741 (1979) ................................................................................................ 19

*United States v. Fla. E. Coast Ry. Co.*,

410 U.S. 224 (1973) ................................................................................................ 17

*United States v. Harris*,

838 F.3d 98 (2d Cir. 2016) ........................................................................................ 9

*Washington v. Glucksberg*,

521 U.S. 702 (1997) ................................................................................................ 12

*We The Patriots USA, Inc. v. Hochul*,

17 F.4th 266 (2d Cir. 2021) ................................................................................. 7, 20

*Winter v. NRDC*,

555 U.S. 7 (2008) ...................................................................................................... 7

*Withrow v. Larkin*,

   421 U.S. 35 (1975).................................................................................................. 19, 22

**Statutes**

5 U.S.C. § 705.......................................................................................................... 1, 5, 6

6 U.S.C. § 557....................................................................................................... 2, 4, 8, 10

6 U.S.C. §§ 552(d) ......................................................................................................... 8

8 U.S.C. § 1103 ............................................................................................................. 10

8 U.S.C. § 1103(a) .................................................................................................... 2, 10

8 U.S.C. § 1103(a)(1)................................................................................................... 4, 9

8 U.S.C. § 1103(g) ....................................................................................................... 10

8 U.S.C. § 1254a ........................................................................................................... 10

8 U.S.C. § 1254a(a)(1)(A) ...................................................................................... 14, 16

8 U.S.C. § 1254a(b)(1).......................................................................................... 3, 11, 15

8 U.S.C. § 1254a(b)(2)......................................................................................... 13, 14, 21

8 U.S.C. § 1254a(b)(5)(A) ............................................................................................. 8

Pub. L. No. 101-649....................................................................................................... 2

Pub. L. No. 107-296.................................................................................................... 2, 4

U.S.C. § 1254a(b)(3)(A) .............................................................................................. 18

**Regulations and Other Authorities**

8 C.F.R. § 244.2 ........................................................................................................... 14

91 Fed. Reg. 10402 .................................................................................................... 4, 18

Defendants (the "government") respectfully submit this memorandum of law in opposition to the renewed motion filed by the plaintiffs in this putative class action ("Plaintiffs") to postpone the effective date of agency action, Dkt. No. 93 ("Pl. Br.").

## PRELIMINARY STATEMENT

Plaintiffs originally claimed that the Secretary of Homeland Security's termination of Yemen's Temporary Protected Status ("TPS") designation violated the Administrative Procedure Act ("APA") and their Fifth Amendment equal-protection rights. Based on the APA claim, they obtained an order under 5 U.S.C. § 705 postponing the termination of Yemen's TPS, which delayed it from taking effect for more than two months. Last month, however, the Supreme Court made clear that neither the APA claim nor the equal-protection claim is viable. *See Mullin v. Doe*, 146 S. Ct. 2121 (2026). Plaintiffs have now pleaded two new claims. They assert that the termination was *ultra vires* because only the Attorney General, and not the Secretary, may terminate a TPS designation, and that they were deprived of procedural due process. Plaintiffs seek the same relief—postponement under § 705—on these new claims.

Neither claim can support that relief. Both are barred by the TPS statute's prohibition on judicial review, which the Supreme Court construed broadly in *Mullin v. Doe*, and both claims fail on the merits in any event. As to the *ultra vires* claim, the Supreme Court held that the review bar reaches all non-constitutional claims, stated that responsibility for TPS decisions rests with the Secretary of Homeland Security, and construed the bar as applying to the Secretary's determinations. Plaintiffs' premise—that only the Attorney General may terminate a designation—cannot be reconciled with those holdings. The claim also fails on its own terms, because the Homeland Security Act transferred authority over TPS to the Secretary. And the claim is also self-defeating: if the Secretary lacked authority to terminate Yemen's designation, the

Secretary equally lacked authority to designate Yemen in the first place, which would leave Plaintiffs with no status to preserve.

Plaintiffs' due process claim fares no better. It is, at bottom, the same challenge to the Secretary's consultation and decision-making process that the Supreme Court has since held unreviewable—now nominally recast in constitutional terms. A constitutional label cannot render reviewable what Congress placed beyond review. The claim also fails on the merits, for several reasons. Plaintiffs have no protected interest in the continuation of a country-wide designation committed to the Secretary's discretion. The individualized procedures they demand do not apply to a categorical determination about conditions in a foreign country and the national interest. And Plaintiffs in any event received the process the statute prescribes and the Constitution requires.

Because Plaintiffs cannot show a likelihood of success, and because the equities and public interest favor allowing the Secretary's lawful determination to take effect, the renewed motion should be denied.

## BACKGROUND

### I. Statutory Background

#### A. TPS Statute

The Immigration Act of 1990 established TPS to allow for temporary, discretionary shelter in the United States for qualifying nationals from designated foreign countries. Pub. L. No. 101-649, 104 Stat. 4978. The statute permits the Secretary,[1] "after consultation with appropriate agencies," to designate countries for TPS if the Secretary determines that certain statutorily

---

[1] As discussed below, Congress transferred the Attorney General's TPS authority to the Secretary of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (2002) (codified at 6 U.S.C. § 557); 8 U.S.C. § 1103(a).

specified conditions are met. 8 U.S.C. § 1254a(b)(1). As relevant here, one condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." *Id.* § 1254a(b)(1)(C). Another is that "there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety." *Id.* § 1254a(b)(1)(A).

TPS designations are discretionary and last "not less than 6 months and not more than 18 months." *Id.* § 1254a(b)(2). At least 60 days before the end of the initial designation and any later extension, the Secretary, after consulting with appropriate agencies, must "review the conditions in the foreign state . . . for which a designation is in effect" and "determine whether the conditions for such designation . . . continue to be met." *Id.* § 1254a(b)(3)(A). If the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id.* § 1254a(b)(3)(B).

Congress enacted a broad prohibition on judicial review of the Secretary's exercise of TPS authority: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

## B.  The Homeland Security Act

The Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135 (codified at 6 U.S.C. § 101 *et seq.*) (the "Act"), established the Department of Homeland Security ("DHS")

3

and, among other things, charged it with certain functions that had previously been administered by the Attorney General. Relevant here, the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens" was transferred to the Secretary of DHS, subject to limited exceptions for certain "powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers[.]" 8 U.S.C. § 1103(a)(1).

Rather than update all laws that previously vested these immigration functions in the Attorney General, the Act incorporated a reference provision providing that, "[w]ith respect to any function transferred by or under this chapter," a "reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557.

## II.  Factual and Procedural History

Yemen was initially designated for TPS on September 3, 2015, based on a determination by the then-serving Secretary of Homeland Security that ongoing armed conflict posed a serious threat to the personal safety of returning nationals. *See Termination of the Designation of Yemen for Temporary Protected Status*, 91 Fed. Reg. 10402, 10402–03 (Mar. 3, 2026). The designation was repeatedly renewed in subsequent years—first based on ongoing armed conflict, and later also based on extraordinary and temporary conditions. *Id.* at 10403. On March 3, 2026, the Secretary published a notice terminating Yemen's TPS designation effective May 4, 2026, after finding that the criteria for the designations were no longer met. *Id.* at 10,403–08.

4

Plaintiffs sued on March 19, 2026, asserting claims under the APA and the equal-protection guarantee of the Fifth Amendment. Dkt. No. 1.[2] About one week later, they moved under 5 U.S.C. § 705 to postpone the effective date of the Secretary's termination of Yemen's TPS designation. Dkt. Nos. 22–24. On May 1, 2026, this Court granted Plaintiffs' motion after concluding that Plaintiffs were likely to succeed on one of their APA claims. Dkt. No. 54 ("postponement order"). The Court did not reach Plaintiffs' equal-protection claim. *Id.* at 31 n.14.

On June 25, 2026, the Supreme Court held in a similar case that "the TPS statute's judicial-review bar applies to all non-constitutional claims," while also finding that an equal-protection claim—analogous to the one asserted by Plaintiffs here—was flawed and not likely to succeed on the merits. *Mullin v. Doe*, 146 S. Ct. 2121, 2137–40 (2026).

On June 28, 2026, the government appealed this Court's postponement order and, two days later, moved this Court for a stay of the postponement order pending appeal and for an indicative ruling under Rule 62.1 stating that, upon remand, the Court would vacate that order. Dkt. No. 74.

Plaintiffs filed an Amended Complaint on July 14, 2026, adding an *ultra vires* claim and a due process claim. Dkt. No. 85.

After initially deferring its ruling (Dkt. No. 84), on July 20, 2026, the Court ultimately granted the government's motion for a stay pending appeal and for an indicative ruling. Dkt. No. 89. The Court both stayed the postponement order and stated that, upon remand from the Second Circuit, the Court would dissolve the postponement order. In so ruling, the Court noted that the Supreme Court had held that the "'TPS statute's judicial-review bar applies to all non-

---

[2] Before Plaintiffs commenced this case, a similar case was filed at 26 Civ. 2103. The plaintiffs in that case have not filed a second motion to postpone under 5 U.S.C. § 705, so that case is not discussed elsewhere in this memorandum of law.

constitutional claims'" which foreclosed the APA claim on which the postponement order rested. *Id.* at 4. Though Plaintiffs had argued that the Court should postpone the effective date of the TPS termination because they were likely to succeed on their equal-protection claim (an issue the postponement order did not reach), the Court found that Plaintiffs offered no "cogent reason" why their constitutional claim differed from the one the Supreme Court rejected in *Mullin v. Doe. Id.* The Court also rejected Plaintiffs' attempt to bolster their equal-protection claim with "problems with the substantive merits of the Secretary's determination," which the Court held were "not reviewable." *Id.* at 5. The Court concluded that the "strong showing that the Government has made on the merits overcomes any comparatively weaker showing with respect to the equities." *Id.* For these reasons, the Court stayed the postponement order and issued the requested indicative ruling. *Id.* at 4–6.

With the postponement order stayed, the termination of Yemen's TPS designation took effect on July 20, 2026. That same day, Plaintiffs moved for an emergency administrative stay pending resolution of a renewed motion for preliminary relief, which the Court later denied. Dkt. Nos. 94, 100.

On July 21, 2026, Plaintiffs filed a second motion to postpone the effective date of Yemen's TPS termination under 5 U.S.C. § 705 based on the *ultra vires* and due process claims pleaded in their amended complaint. Dkt. No. 93.

## LEGAL STANDARD

"The standard for a stay of agency action under 5 U.S.C. § 705 is the same as the standard for a preliminary injunction." *State of New York v. Admin. for Child. & Fams.*, No. 26 Civ. 172 (VSB), 2026 WL 673848, at *10 (S.D.N.Y. Mar. 10, 2026). Such an injunction is a form of relief that is "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enterprise*

6

*Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). This relief "'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024). The plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

"When the government is a party to the suit, [the] inquiries into the public interest and the balance of the equities merge." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021). Further, where, "as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme," the party must demonstrate "a clear or substantial likelihood of success on the merits." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007).

## ARGUMENT

### I.  Plaintiffs Cannot Demonstrate a Likelihood of Success

#### A.  Plaintiffs' *Ultra Vires* Claim Is Foreclosed by *Mullin v. Doe* and Otherwise Fails on the Merits

Plaintiffs contend that the termination of Yemen's TPS designation is void because Congress vested the authority to terminate TPS designations exclusively in the Attorney General, and that authority was never transferred to the Secretary of Homeland Security. Pl. Br. at 5–11. In *Mullin v. Doe*, the Supreme Court foreclosed this argument three times over. First, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. at 2137. Because the *ultra vires* claim is non-constitutional in nature, it is plainly foreclosed by the Supreme Court's decision. Second, contrary to Plaintiffs' view that the

Attorney General has authority over TPS, the Supreme Court concluded that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security." *Id.* at 2129 (citing 6 U.S.C. §§ 552(d), 557). Third, the Supreme Court made clear that the TPS statute's bar on judicial review applies to determinations by the Secretary, stating that 8 U.S.C. § 1254a(b)(5)(A) "provides: 'There is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection.'" *Id.* at 2133 (alterations in original) (quoting 8 U.S.C. § 1254a(b)(5)(A)). Thus, Plaintiffs' contention that the statutory review bar "only applies to determinations 'of the Attorney General'" (Pl. Br. at 2) is not viable.

Thus, Plaintiffs' *ultra vires* argument is squarely at odds with Supreme Court precedent. Plaintiffs contend that *Mullin v. Doe* is not binding on this issue because it "'merely lurk[ed] in the record.'" Pl. Br. at 2–3, 10 n.3. But the Supreme Court did not simply assume in passing that the Secretary possessed authority over TPS. Instead, the Supreme Court expressly stated that responsibility for TPS decisions rests with the Secretary, cited statutory provisions that supported this conclusion (e.g., 6 U.S.C. § 557), and then construed § 1254a(b)(5)(A) by replacing "Attorney General" with "Secretary of Homeland Security" in the statutory text. *Mullin v. Doe*, 146 S. Ct. at 2129–30, 2133. This understanding was essential to the Court's application of the review bar to the Secretary's TPS terminations. This aspect of the decision is therefore binding. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").[3]

---

[3] Even if this discussion were mere dictum (it is not), the dictum would still command "'great deference.'" *Estle v. IBM*, 23 F.4th 210, 214 n.2 (2d Cir. 2022) ("[W]e are obligated to accord

8

Plaintiffs also suggest that the Supreme Court's decision was not binding because it was reviewing decisions granting preliminary relief. Pl. Br. at 3. But "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases.'" *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring) (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020)); *see also Bucklew v. Precythe*, 587 U.S. 119, 136 (2019) ("[J]ust as binding as [a] holding is the reasoning underlying it."); *Giambalvo v. Suffolk Cnty., New York*, 155 F.4th 163, 177 n.4 (2d Cir. 2025) ("a well-considered conclusion of law by a panel of this Court in a published opinion, which addresses a pure issue of law . . . is binding precedent," even if the decision is issued "in the preliminary injunction posture").

Even putting aside *Mullin v. Doe*, the *ultra vires* argument fails on the merits. When Congress created the Department of Homeland Security in 2002 and reorganized the Executive Branch's immigration functions, it transferred authority over TPS from the Attorney General to the Secretary. The Homeland Security Act charged the Secretary with the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1).

Plaintiffs seize on that provision's carve-out for functions "'conferred upon the . . . Attorney General,'" Pl. Br. at 7, but the same section defines the reserved functions as those previously exercised by the Executive Office for Immigration Review ("EOIR"). Specifically, the Attorney General retains "such authorities and functions . . . as were exercised by [EOIR], or by

---

great deference to Supreme Court *dicta*, absent a change in the legal landscape.") (quoting *United States v. Harris*, 838 F.3d 98, 107 (2d Cir. 2016)).

9

the Attorney General with respect to [EOIR]." 8 U.S.C. § 1103(g). EOIR never administered the TPS statute. If, as Plaintiffs contend, § 1103(a) reserved to the Attorney General every function the Attorney General had previously exercised, then § 1103(g) would be superfluous. There would be no need to specify that the Attorney General retains the functions he exercised with respect to EOIR. Courts "avoid" interpretations of statutory text that render "some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995).

Congress did not rewrite each of the TPS statute's references to the "Attorney General" because it relied on the transfer and reference-updating provisions in the Homeland Security Act. While 8 U.S.C. § 1103 charged the Secretary with the "administration and enforcement" of the immigration laws, 6 U.S.C. § 557 operated to update all other federal laws with respect to functions that were transferred to the Secretary. Specifically, § 557 provided that, with respect to "any function transferred by or under this chapter," a "reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557. Because TPS administration was a function transferred to the Secretary, § 557 updates every reference to the Attorney General in 8 U.S.C. § 1254a to mean the Secretary.

Reflecting the statutes' clarity, lower courts had universally adopted this construction even before the Supreme Court decided *Mullin v. Doe*. *See, e.g.*, *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 (11th Cir. 2009) ("Although the statute governing TPS refers to the Attorney General as the decisionmaker, the authority to designate countries for inclusion in the TPS program and for adjudicating the eligibility of individual applicants for TPS has been transferred to the Secretary of the Department and the district directors at USCIS." (citing 8 U.S.C. § 1103(a)); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 582 (D. Md. 2025) (noting that "certain authorities granted by statute

10

to the Attorney General, including those relating to TPS," were conferred "to the Secretary of Homeland Security" (citing 6 U.S.C. § 557)); *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) ("Congress . . . transferred authority to make TPS designations from the Attorney General to the Secretary of the Department of Homeland Security[.]" (citing 8 U.S.C. § 1103; 6 U.S.C. § 557)). Indeed, this Court reached the same conclusion in its postponement order. Dkt No. 54 at 6 n.4 ("'Although the [Immigration and Nationality Act ('INA'), under which the TPS program falls,] refers to the Attorney General, the Homeland Security Act of 2002 . . . transferred the immigration powers previously exercised by the Attorney General to the Secretary of Homeland Security and divisions of DHS.'" (alterations in original) (citing cases)). Plaintiffs meanwhile cite no decision holding that the Secretary lacks authority to make or terminate a TPS designation.

Finally, Plaintiffs' theory is self-defeating. Both the designation and termination provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If that reference deprived the Secretary of authority to terminate Yemen's TPS designation, it equally deprived the Secretary of authority to designate Yemen for TPS in 2015 and to extend that designation in the years since. On Plaintiffs' reading, then, Yemen's initial designation and extensions would be legal nullities, leaving Plaintiffs with no TPS protection. Their success on the *ultra vires* claim would therefore eliminate the very benefit they seek to preserve.[4]

---

[4] Plaintiffs offer three responses to this problem in a footnote, Pl. Br. at 11 n.5, but none succeeds. First, Plaintiffs argue that this suit challenges only the termination as a single final agency action. But that framing ignores the underlying problem: if the Secretary has no authority over TPS, then the designation Plaintiffs seek to preserve is just as *ultra vires* as the termination—so a ruling in their favor would compel the termination of the designation. Second, Plaintiffs misread *DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020), which they cite for the proposition that the government must consider "alternatives" to termination. That case involved a program with two components: one allegedly unlawful, the other concededly lawful. The Supreme Court faulted DHS for rescinding both without considering whether to preserve the lawful one. 591 U.S. at 28–

11

### B.    Plaintiffs' Due Process Claim Is Fatally Flawed

Plaintiffs contend that the termination deprived them of "liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection," without constitutionally adequate process. Am. Compl. ¶ 187; *see* Pl. Br. at 12–18. The claim fails for four independent reasons. First, section 1254a(b)(5)(A) bars review of the claim. Second, Plaintiffs have no protected liberty or property interest in the continuation of a discretionary, country-wide designation. Third, the individualized procedural protections they invoke have no application to the Secretary's across-the-board determination to terminate a country's designation. Finally, in any event, Plaintiffs received the process the Constitution requires.

### 1.    Section 1254a(b)(5)(A) Bars Plaintiffs' Due Process Claim

Section 1254a(b)(5)(A) bars review of Plaintiffs' due process claim. The Supreme Court reasoned that this jurisdictional bar applies not only to the substantive TPS determination, but to claims based on purported procedural errors and any subsidiary determinations as well. *Mullin v. Doe*, 146 S. Ct. at 2136–37. The Supreme Court reserved the question whether the bar reaches constitutional claims generally, *id*. at 2137, but the Court need not fully resolve that question here, because Plaintiffs' due process claim simply repackages the challenges that *Mullin v. Doe* held unreviewable. The respondents there, like Plaintiffs here, challenged a TPS termination on the

---

29. Plaintiffs' theory here offers no lawful component to preserve: if the Secretary lacks TPS authority altogether, he cannot retain Yemen's designation as an "alternative" to terminating it. And third, Plaintiffs' reference to "mutually explicit understandings" creating "vested due process interests" is misplaced. To the extent Plaintiffs assert a substantive due process right to continuation of a TPS designation that, on their own theory, was *ultra vires* from the start, no such right is remotely rooted in the Nation's history and tradition. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (substantive due process protects only rights "deeply rooted in this Nation's history and tradition") (citation omitted). If Plaintiffs instead mean to argue that they have a procedural due process claim, that argument fails for the reasons explained below.

ground that the Secretary failed to consult appropriate agencies and reached a preordained result. The Court rejected the argument that the review bar "applies only to substantive claims, not those based on alleged procedural errors," and identified "her decision to consult the State Department in a particular manner" as subject to the bar. *Id.* at 2134. Having held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," the Court noted that the bar cannot be evaded "by creative pleading or clever lawyering." *Id.* at 2136–37.

That is what Plaintiffs attempt here. Their due process claim rests on the same alleged defects, *i.e.*, inadequate consultation and a preordained decision, that were before the Supreme Court, now recast in constitutional terms. *See* Am. Compl. ¶¶ 187–89. A court must "look beyond the literal meaning of the language used to ascertain the real cause of the complaint." *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.). Any other approach would allow parties to "evade" the review bar "by relabeling their" statutory claims as constitutional ones. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Were it otherwise, section 1254a(b)(5)(A) would impose little constraint and every challenge that *Mullin v. Doe* placed beyond review could be reasserted, unchanged in substance, as a claim for denial of due process.

### 2.    Plaintiffs Have No Protected Liberty or Property Interest

Even if Plaintiffs' due process claim were reviewable, it would fail on the merits. The Due Process Clause constrains governmental action only where it deprives a person of a protected liberty or property interest, and a protected property interest requires "a legitimate claim of entitlement," not merely "a unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see also* Pl. Br. at 13. TPS supplies no such entitlement. A TPS designation is temporary by name and design; an initial designation lasts "not less than 6 months and not more than 18 months," 8 U.S.C. § 1254a(b)(2), and its continuation beyond that period is never

13

guaranteed. Whether a designation is extended or terminated turns on the Secretary's periodic review of country conditions and her discretionary determination whether the statutory criteria "continue to be met." *Id.* § 1254a(b)(3)(A); *see id.* § 1254a(b)(3)(B) (the Secretary "shall terminate" a designation upon determining that the country "no longer continues to meet the conditions for designation"). The benefit rests on discretionary judgments at each stage. The Secretary "may grant" TPS to an eligible national of a designated country, *id.* § 1254a(a)(1)(A), and an applicant "may in the discretion of the director be granted" that status only upon establishing eligibility, 8 C.F.R. § 244.2. The underlying country-wide designation is likewise committed to the Secretary's discretion. *See Mullin*, 146 S. Ct. at 2128 (the Secretary "may designate" a country for TPS "after consultation with appropriate agencies of the Government" (internal quotation marks omitted); 8 U.S.C. § 1254a(a)(1)(A).

A benefit that the Secretary may withhold at the outset, and may end based on a discretionary judgment about country conditions and the national interest, is not the sort of entitlement the Due Process Clause protects. As the Second Circuit has held, "aliens have no constitutionally-protected 'liberty or property interest' in . . . a discretionary grant of relief for which they are otherwise statutorily ineligible." *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018). Justice Thomas made the same point about TPS in *Mullin v. Doe*, explaining that "[t]he termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property'" because the "discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right." 146 S. Ct. at 2143 (Thomas, J., concurring). The courts of appeals have likewise treated TPS as a "discretionary form of relief." *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023); *Bah v. Cangemi*, 548 F.3d 680,

14

685 (8th Cir. 2008) (noting that it was appropriate for the district court not to evaluate "whether the government's rejection of [a] TPS application had been substantially justified" because "the district court lacked jurisdiction to review the government's discretionary action"). And the "explicitly temporary nature of the [TPS] program" forecloses any claim of protected reliance. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018). At most, Plaintiffs held a "unilateral expectation" that a discretionary designation would continue—not the "legitimate claim of entitlement" that a protected property interest requires. *Roth*, 408 U.S. at 577.

Plaintiffs' contrary theory misapprehends the discretionary nature of the TPS designation decision. Plaintiffs assert that a statutory scheme creates a protected interest when it "meaningfully channels official discretion by mandating a defined administrative outcome," Pl. Br. at 13 (citation and quotation marks omitted), and that TPS's benefits become mandatory once the status is granted. But a statute confers a protected entitlement only where it imposes "substantive limitations on official discretion" and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quotation marks omitted); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). The TPS statute does neither. The decision whether a designation is made or continues rests on the Secretary's discretionary judgment about country conditions and the national interest: the Secretary "*may* designate" a country in the first instance, and she extends or terminates a designation based on her determination whether the statutory criteria "continue to be met." 8 U.S.C. § 1254a(b)(1), (b)(3)(A) (emphasis added). A scheme that turns on that kind of judgment does not mandate a defined outcome and creates no entitlement. And even when a country is

15

designated, the decision whether to grant TPS to any particular eligible individual remains

discretionary. *See id.* § 1254a(a)(1)(A) (the Secretary "may grant" TPS to an eligible national of a

designated country).

The district court decisions Plaintiffs cite do not establish otherwise. *Ramos v. Nielsen* held

that any due process interest was "co-extensive with [plaintiffs'] ability to prove that Defendants

violated the APA or equal protection guarantee." 321 F. Supp. 3d 1083, 1122 (N.D. Cal. 2018).

Plaintiffs cannot make that showing here. *Mullin v. Doe* forecloses their APA challenge, and this

Court has already concluded that, "in light of *Mullin*, the Plaintiffs are not likely to succeed on the

merits of" their equal-protection claims. Dkt. No. 89, at 6. Plaintiffs also cite *Mansor v. USCIS* for

the proposition that prima facie eligible applicants possess a distinct interest,

but *Mansor* concerned employment authorization for TPS applicants whose country designation

remained in effect, and held only that "a prima facie eligible TPS applicant has a property interest

in temporary employment authorization." 685 F. Supp. 3d 1000, 1013 (W.D. Wash. 2023). Here,

the TPS designation for Yemen has ended.[5]

Plaintiffs separately assert a liberty interest in the "removal protection" and freedom from

"status-based detention" that accompany TPS. Pl. Br. at 15. But their liberty theory fails for the

same reason as their property theory: they have "no constitutionally-protected 'liberty or property

---

[5] Plaintiffs citation to *Saget* is inapposite. The court there declined to reach the plaintiffs' due process claim. *See Saget v. Trump*, 375 F. Supp. 3d 280, 366 n.24 (E.D.N.Y. 2019) ("Plaintiffs allege they have protectable property and liberty interests in ensuring lawful compliance with the TPS statute. . . . Because Plaintiffs' claim is unnecessary to the disposition of the case . . . the Court need not reach Plaintiffs' procedural due process claim." (citation, alteration, and quotation marks omitted)). Likewise, in *Rodas v. Chertoff*, the court "assum[ed], without deciding," that temporary employment authorization, not TPS, reflected a property right, but it held that it lacked jurisdiction to review a due process claim. 399 F. Supp. 2d 697, 705–706 (E.D. Va. 2005).

interest' in . . . a discretionary" immigration benefit. *Hernandez*, 884 F.3d at 112. Once Yemen's designation was lawfully terminated, Plaintiffs stood in the position of any other noncitizen without lawful status, and "the deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 290 (1904); *see also Mullin*, 146 S. Ct. at 2143 (Thomas, J., concurring) (quoting *Turner* in the TPS context).

### 3.    The Individualized Process Plaintiffs Demand Does Not Apply to a Categorical Country Determination

Even setting the absence of a protected interest aside, the procedural protections that Plaintiffs invoke do not apply to a determination of this kind. Due process "is flexible and calls for such procedural protections as the particular situation demands," *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citation and quotation marks omitted), and it has long distinguished between agency action that "adjudicate[s] disputed facts in particular cases" and action involving "the formulation of a basically legislative-type judgment, for prospective application only," *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). The termination of a country's TPS designation is a determination of the latter kind: a categorical judgment about conditions in a foreign state and the national interest, applicable to an entire class of nationals, not an adjudication of any Plaintiff's particular circumstances. The Due Process Clause does not entitle every affected individual to an individualized hearing before the government adopts a generally applicable policy. *See Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an

17

assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals . . . without giving [them] a chance to be heard." (quoting *Bi-Metallic Inv.*, 239 U.S. at 445; internal quotation marks omitted)); *see also Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991) ("[T]he due process clause does not require individual hearings before a governmental body takes decisions that affect the interests of persons in the aggregate."). Plaintiffs' claim rests on the three-factor balancing of *Mathews*, *see* Pl. Br. at 16–17, 20, but that test governs individual adjudications, which the cases Plaintiffs cite make clear. *See Mathews*, 424 U.S. at 323 (Social Security disability benefits); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 535 (1985) (public employment); *Roth*, 408 U.S. at 566 (same); *Bell v. Burson*, 402 U.S. 535, 535–37 (1971) (driver's license); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (public assistance payments). None applied that framework to a generally applicable determination like the termination of a country's TPS designation.

### 4.    Plaintiffs Received Whatever Process Was Due

Even if the individualized framework applied, Plaintiffs received whatever process could be due. Plaintiffs do not contend that the Constitution requires anything beyond the steps Congress prescribed: the Secretary must consult appropriate agencies, review conditions in the foreign state, and publish notice of the determination and its basis in the Federal Register. 8 U.S.C. § 1254a(b)(3)(A); *see* Pl. Br. at 18. The Secretary did so here. *See* 91 Fed. Reg. 10402 (Mar. 3, 2026).

Plaintiffs' claim thus reduces to the contention that the Secretary did not adequately follow the statute—that is, that the consultation "consisted of four terse emails," that DHS "neither requested nor received substantive information about conditions in Yemen," and that the national-interest determination rested on insufficient evidence. Pl. Br. at 16–17. But an alleged statutory

18

violation does not necessarily amount to a constitutional procedural due process violation. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) ("It is equally clear that the violations of agency regulations disclosed by this record do not raise any constitutional questions."); *Kopunek v. Dir. of Internal Revenue*, 528 F. Supp. 134, 137 (S.D.N.Y. 1981) (same). An agency's failure to observe statutory procedures gives rise to a statutory claim, not a constitutional one, and a litigant cannot recast a statutory claim as a constitutional due process claim merely by invoking the Due Process Clause. *See Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (litigants who have procedural objections should rely on the statute and the regulations rather than "intoning 'due process' in the hope that it will cover all bases"). Plaintiffs do not argue that the Due Process Clause itself, independent of the TPS statute, would require interagency consultation or Federal Register publication before a designation could be terminated. Their objections go to the Secretary's statutory compliance and to the substance of her determination, not to the denial of any procedure the Constitution guarantees.[6]

Plaintiffs' remaining authorities, Pl. Br. at 17, are not to the contrary. *Loudermill* addressed the process due before an individualized deprivation—the termination of a particular public employee. 470 U.S. at 545–46. And *Withrow v. Larkin* addressed the impartiality required of a decisionmaker in an adjudicative proceeding. 421 U.S. 35, 46–47 (1975). Neither governs a categorical country determination, and, as the Supreme Court has explained, "[t]he judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of

---

[6] As the government previously explained, the Secretary complied with the TPS statute in connection with the termination of the TPS designation. *See, e.g.*, ECF No. 32, at 19–26. That this Court earlier found the consultation inadequate does not alter the analysis; that finding supported the APA consultation claim that *Mullin v. Doe* has since foreclosed. *See* Dkt. No. 89, at 4.

19

decisionmaking in all circumstances." *Mathews*, 424 U.S. at 348. Plaintiffs' predetermination theory fails as well. A policymaker's general disposition toward a policy outcome does not offend due process, and the Supreme Court has already identified the administration's "obvious antipathy toward past administrations' TPS policies," reflected in its termination of every designation that came up for review, as a permissible, race-neutral explanation for these decisions. *Mullin*, 146 S. Ct. at 2139. For all these reasons, Plaintiffs have not shown a likelihood of success on their due process claim.

## II.   The Equitable Factors Favor the Government

Because the merits decisively favor the Government, the importance of the equitable factors is diminished. *Cf. Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 49 (2d Cir. 2020) ("With likelihood of success totally lacking, the aggregate assessment of the factors bearing on issuance of a stay pending appeal cannot possibly support a stay." (citation omitted)); *see also Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) ("[L]ikelihood of success is the main bearing wall of the four–factor framework."). In any event, the equities favor the Government as explained below.

Specifically, the remaining considerations—irreparable harm, the balance of equities, and the public interest—favor the Government, and where the Government is the opposing party those inquiries merge. *See We The Patriots USA*, 17 F.4th at 295 ("When the government is a party to the suit, our inquiries into the public interest and the balance of the equities merge."). Each day a lawful termination of Yemen's TPS designation is postponed, the Government and the public are harmed by the judicial suspension of an authority Congress committed to the Secretary's unreviewable judgment. *See Mullin*, 146 S. Ct. at 2137; *Trump v. CASA, Inc.*, 606 U.S. 831, 861

20

(2025) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C. J., in chambers))); *Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (rejecting the assumption that delaying immigration enforcement causes an "absence of any injury to the public interest"). The harm is concrete here: the relief Plaintiffs seek would require the United States to permit thousands of foreign nationals to remain in the country notwithstanding the Secretary's determination that their continued presence is "contrary to the national interest." 91 Fed. Reg. at 10404. Compelling that result is "an improper intrusion by a federal court into the workings of a coordinate branch of the government." *INS v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1305–06 (1993). The Supreme Court has twice stayed orders postponing TPS terminations, confirming that the Government suffers irreparable harm when it is prevented from giving effect to those determinations. See *Noem v. NTPSA*, 145 S. Ct. 2728 (2025); *Noem v. NTPSA*, 146 S. Ct. 23, 24 (2025). Those decisions "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

Plaintiffs' asserted injuries do not outweigh that harm. Because the merits foreclose relief, that is dispositive. *See Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999) ("[A]ny irreparable harm plaintiffs might suffer in this case does not warrant a preliminary injunction in the absence of a showing of (at least) a likelihood of success."). And in any event, the injuries Plaintiffs identify follow from the statutory scheme itself, not from any unlawful act. TPS is, by design, "temporary." *Mullin*, 146 S. Ct. at 2130. A designation lasts "not less than 6 months and not more than 18 months," 8 U.S.C. § 1254a(b)(2), and Plaintiffs had no

21

entitlement to retain work authorization or protection from removal once Yemen's designation was lawfully terminated. The loss of those benefits is the ordinary consequence of a lawful termination, and Plaintiffs remain free to pursue any other immigration relief for which they may be eligible.

Finally, Plaintiffs cannot rely on this Court's earlier assessment that the equities "decidedly favor the Plaintiffs." Dkt. No. 54, at 36 (citation and quotation marks omitted). That assessment rested on the Court's preliminary determination that the Secretary had likely acted unlawfully, and on its view that the Government had identified only a "generalized" interest in implementing the statute as it saw fit. *Id.* at 35 (citation and quotation marks omitted). *Mullin v. Doe* has undermined both premises. The Court's unlawfulness determination rested on Plaintiffs' APA claim, which *Mullin v. Doe* holds as unreviewable. And once the Secretary's determination is recognized as a lawful exercise of congressionally authorized authority, the Government's injury is not a generalized grievance but concrete harm that it and the public suffer whenever the Executive is enjoined from carrying out a valid exercise of statutory authority. *See CASA*, 606 U.S. at 859–861. The Court has already conducted the relevant weighing in connection with certain claims in this matter, concluding on July 20 that "the strong showing that the Government has made on the merits overcomes any comparatively weaker showing with respect to the equities." Dkt. No. 89, at 5. The same result follows here. Because Plaintiffs cannot show a likelihood of success on either of their new claims, and because the equities and the public interest favor allowing the Secretary's lawful determination to take effect, the renewed motion should be denied.

22

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion to postpone the effective date of agency action.

Dated: New York, New York
       July 31, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By:    */s/ Adam Gitlin*
       MARK OSMOND
       ADAM GITLIN
       Assistant United States Attorney
       86 Chambers Street, 3rd Floor
       New York, New York 10007
       Tel.: (212) 637-2713/2734
       mark.osmond@usdoj.gov
       adam.gitlin@usdoj.gov

23