UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOOR DOE, *et al.*,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,<br>Defendants. | Case No. 26 Civ. 2103 (DEH) |
| ABDO DOE, *et al.*,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,<br>Defendants. | Case No. 26 Civ. 2280 (DEH) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINTS**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2713/2734
*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
*Of Counsel*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................................ III

PRELIMINARY STATEMENT ........................................................ 1

BACKGROUND ........................................................ 3

I. STATUTORY BACKGROUND ........................................................ 3

A. TPS Statute ........................................................ 3

B. The Homeland Security Act ........................................................ 4

II. FACTUAL AND PROCEDURAL HISTORY ........................................................ 5

LEGAL STANDARD ........................................................ 8

ARGUMENT ........................................................ 9

I. THE *ULTRA VIRES* CLAIM IS FORECLOSED BY *MULLIN V. DOE* AND FAILS ON THE MERITS. ........................................................ 9

II. PLAINTIFFS' EQUAL PROTECTION CLAIMS ARE FORECLOSED BY *MULLIN* AND FAIL ON THE MERITS. ........................................................ 11

III. PLAINTIFFS' APA CLAIMS ARE FORECLOSED BY *MULLIN V. DOE*. ................. 17

IV. PLAINTIFFS' DUE PROCESS CLAIM IS FORECLOSED BY *MULLIN V. DOE* AND FAILS ON THE MERITS. ........................................................ 19

A. Section 1254a(b)(5)(A) Bars Plaintiffs' Due Process Claim. ........................................ 20

B. Plaintiffs Have No Protected Liberty or Property Interest. ........................................ 21

C. The Individualized Process Plaintiffs Demand Does Not Apply to a Categorical Country Determination. ........................................................ 23

D. Plaintiffs Received Whatever Process Was Due. ........................................................ 24

CONCLUSION ........................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Singleton v. BOP,* 04 Civ. 1526 (CPS),
2006 WL 1329712 (E.D.N.Y. May 16, 2006) .......... 16

*Afr. Cmtys. Together v. Mullin*,
No. 26 Civ. 10278 (BEM), 2026 WL 2408737 (D. Mass. Aug. 18, 2026) .......... 11, 14

*Afr. Cmtys. Together v. Mullin*,
No. 26-CV-11201-ADB, 2026 WL 2364398 (D. Mass. Aug. 14, 2026).......... 14, 17

*Afr. Cmtys. Together v. Noem*,
820 F. Supp. 3d 48 (D. Mass. 2026) .......... 16, 17

*Afr. Cmtys. Together v. Noem*,
828 F. Supp. 3d 235 (D. Mass. 2026) .......... 16

*Afr. Communities Together v. Mullin*,
No. 25-CV-13939-PBS, 2026 WL 2274504 (D. Mass. Aug. 7, 2026) .......... 11

*Air Line Pilots Ass'n, Int'l v. Quesada*,
276 F.2d 892 (2d Cir. 1960).......... 24

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985).......... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......... 9, 13

*Bah v. Cangemi*,
548 F.3d 680 (8th Cir. 2008) .......... 22

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972).......... 21, 22, 23

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007).......... 9

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
239 U.S. 441 (1915).......... 23, 24

*Bucklew v. Precythe*,
587 U.S. 119 (2019).......... 13

*Buday v. N.Y. Yankees P'ship*,
486 F. App'x 894 (2d Cir. 2012) ........ 9

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ........ 22

*Cooke v. United States*,
918 F.3d 77 (2d Cir. 2019) ........ 8

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019) ........ 8

*Dawson v. Milwaukee Hous. Auth.*,
930 F.2d 1283 (7th Cir. 1991) ........ 24

*Doe v. Mullin*,
No. 25 Civ. 15483, 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) ........ 14

*Doe v. Noem*,
829 F. Supp. 3d 392 (N.D. Ill. 2026) ........ 16

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........ 19

*Hernandez v. Sessions*,
884 F.3d 107 (2d Cir. 2018) ........ 22, 23

*Jimenez-Nieves v. United States*,
682 F.2d 1 (1st Cir. 1982) ........ 20

*Kentucky Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ........ 22

*Kopunek v. Dir. of Internal Revenue*,
528 F. Supp. 134 (S.D.N.Y. 1981) ........ 25

*Libertarian Party of Erie Cty. v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) ........ 9

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........ 23

*McGowan v. United States*,
825 F.3d 118 (2d Cir. 2016) ........ 8

*Mejia Rodriguez v. DHS*,
562 F.3d 1137 (11th Cir. 2009) .......... 10

*Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*,
647 F. Supp. 3d 286 (S.D.N.Y. 2022).......... 8

*Mullin v. Doe*,
146 S. Ct. 2121 (2026).......... passim

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025).......... 13

*Portillo-Rendon v. Holder*,
662 F.3d 815 (7th Cir. 2011) .......... 25

*Ramos v. Louisiana*,
590 U.S. 83 (2020).......... 13

*Regents of the Univ. of California*,
591 U.S. 1 (2020).......... 13, 15

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) .......... 11

*Tobar v. Garland*,
65 F.4th 195 (5th Cir. 2023) .......... 22

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005).......... 22

*Trump v. Hawaii*,
585 U.S. 667 (2018).......... 12

*United States ex rel. Turner v. Williams*,
194 U.S. 279 (1904).......... 23

*United States v. Caceres*,
440 U.S. 741 (1979).......... 24

*United States v. Fla. E. Coast Ry. Co.*,
410 U.S. 224 (1973).......... 23

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977).......... 12, 15

*Washington v. Glucksberg*,
521 U.S. 702 (1997) ..... 21

*Whiteside v. Hover-Davis, Inc.*,
995 F.3d 315 (2d Cir. 2021) ..... 9

Statutes

5 U.S.C. § 705 ..... 6, 8

5 U.S.C. §§ 706(2)(A) ..... 17

6 U.S.C. § 557 ..... 3, 4, 10

8 U.S.C. § 1103(a) ..... 3, 11

8 U.S.C. § 1103(a)(1) ..... 4, 10

8 U.S.C. § 1103(g)(1) ..... 4

8 U.S.C. § 1252(f)(1) ..... 25

8 U.S.C. § 1254a ..... 10

8 U.S.C. § 1254a(b)(1) ..... 3, 4, 11, 22

8 U.S.C. § 1254a(b)(2) ..... 21, 23

8 U.S.C. § 1254a(b)(5)(A) ..... 2, 10, 18

Pub. L. No. 101-649 ..... 3

Pub. L. No. 107-296 ..... 4

U.S.C. § 1254a(b)(1)(C) ..... 5

U.S.C. § 1254a(b)(3)(A) ..... 24

Rules

Federal Rules of Civil Procedure 12(b)(1) ..... 8

Regulations

8 C.F.R. § 244.2 ..... 21

91 Fed. Reg. 10402 ..... 5

Defendants (the "government") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaints in these related putative class actions. *See* Case No. 26-cv-2103 ("First Case"), Dkt. No. 49 ("2103 Am. Compl."); Case No. 26-cv-2280 ("Second Case"), Dkt. No. 85 ("2280 Am. Compl.").[1]

## PRELIMINARY STATEMENT

Plaintiffs in these two related putative class actions challenge the Secretary of Homeland Security's termination of Yemen's Temporary Protected Status ("TPS") designation. Both amended complaints assert claims under the Administrative Procedure Act ("APA") and the equal protection guarantee of the Fifth Amendment, and the amended complaint in the Second Case also includes *ultra vires* and due process claims. All of these claims are foreclosed by the Supreme Court's decision in *Mullin v. Doe*, 146 S. Ct. 2121 (2026), and each is independently deficient.

The *ultra vires* claim is based on the premise that the termination is invalid because authority over TPS rests with the Attorney General, not the Secretary. In *Mullin v. Doe*, however, the Supreme Court concluded that the Secretary of Homeland Security has authority over TPS, and made clear that the TPS statute's bar on judicial review applies to the Secretary's determinations. The claim also fails on the merits because, as courts have consistently held, the Homeland Security Act of 2002 transferred authority over TPS to the Secretary. And the claim is self-defeating: if the Secretary lacked authority to terminate Yemen's designation, the Secretary equally lacked authority to designate Yemen in the first place, which would leave Plaintiffs with no TPS status to preserve.

---

[1] Unless stated otherwise, subsequent citations to docket entries refer to Case No. 26-cv-2280.

Plaintiffs' equal protection claims fail as a matter of law under *Mullin v. Doe*. The Supreme Court there credited a strong, race-neutral explanation for TPS terminations—the administration's antipathy toward past administrations' TPS policies, reflected in its termination of every TPS designation that has come up for review to date. The Supreme Court further held that the allegedly discriminatory statements of the same character as those cited by Plaintiffs here were insufficient to show that the termination of the TPS designation at issue was based on race. That reasoning applies with equal force to claims of discrimination based on national origin, ancestry, ethnicity, or religion, and renders Plaintiffs' Fifth Amendment claims implausible under *Iqbal*.

Plaintiffs' APA claims are also barred. They ask the Court to review the Secretary's termination of Yemen's designation, and 8 U.S.C. § 1254a(b)(5)(A) forecloses courts' review of any such determination. Nor can Plaintiffs avoid the judicial-review bar by characterizing their claims as procedural rather than substantive; the Supreme Court rejected that distinction and cautioned that the bar cannot be evaded by creative pleading.

The due process claim in the Second Case fails as well. That claim is the same challenge to the Secretary's consultation and decision-making process that *Mullin v. Doe* held unreviewable, now recast in constitutional terms. The claim also fails on the merits: Plaintiffs have no protected interest in the continuation of a discretionary, country-wide designation; the individualized procedures they invoke do not apply to a categorical determination about conditions in a foreign country and the national interest; and Plaintiffs received the process the statute prescribes and the Constitution requires.

For these reasons, the amended complaints should be dismissed in their entirety.

# BACKGROUND

## I. Statutory Background

### A. TPS Statute

The Immigration Act of 1990 established TPS to allow for temporary, discretionary shelter in the United States for qualifying nationals from designated foreign countries. Pub. L. No. 101-649, 104 Stat. 4978. The statute permits the Secretary of Homeland Security,[2] "after consultation with appropriate agencies," to designate countries for TPS if the Secretary determines that certain statutorily specified conditions are met. 8 U.S.C. § 1254a(b)(1). As relevant here, one condition is that "there exist extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety, unless the [Secretary] finds that permitting the aliens to remain temporarily in the United States is contrary to the national interest of the United States." *Id*. § 1254a(b)(1)(C). Another is that "there is an ongoing armed conflict within the state and, due to such conflict, requiring the return of aliens who are nationals of that state to that state (or to the part of the state) would pose a serious threat to their personal safety." *Id*. § 1254a(b)(1)(A).

TPS designations are discretionary and last "not less than 6 months and not more than 18 months." *Id.* § 1254a(b)(2). At least 60 days before the end of the initial designation and any later extension, the Secretary, after consulting with appropriate agencies, must "review the conditions in the foreign state . . . for which a designation is in effect" and "determine whether the conditions for such designation . . . continue to be met." *Id.* § 1254a(b)(3)(A). If the foreign state "no longer

[2] As discussed below, Congress has transferred TPS authority from the Attorney General to the Secretary of Homeland Security. *See* 6 U.S.C. § 557; 8 U.S.C. § 1103(a).

continues to meet the conditions for designation," the Secretary "shall terminate the designation." *Id.* § 1254a(b)(3)(B).

Congress enacted a broad prohibition on judicial review of the Secretary's exercise of TPS authority: "There is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." *Id.* § 1254a(b)(5)(A).

**B. The Homeland Security Act**

The Homeland Security Act of 2002, Pub. L. No. 107-296, § 1517, 116 Stat. 2135 (codified at 6 U.S.C. § 101 *et seq.*) (the "Act"), established the Department of Homeland Security ("DHS") and, among other things, charged it with certain functions that had previously been administered by other governmental components. As relevant here, the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens" was transferred to the Secretary of Homeland Security, subject to limited exceptions for certain "powers, functions, and duties conferred upon the President, Attorney General," and other executive officials. 8 U.S.C. § 1103(a)(1). Under the Act, the Attorney General retained only such "authorities and functions" as "were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review." 8 U.S.C. § 1103(g)(1).

Congress did not rewrite every immigration law referring to the Attorney General. It did not need to do so. The Act's reference-updating provision states that, "[w]ith respect to any function transferred," a "reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557.

## II. Factual and Procedural History

Yemen was initially designated for TPS on September 3, 2015, based on a determination by the then-serving Secretary that ongoing armed conflict posed a serious threat to the personal safety of returning nationals. *See Termination of the Designation of Yemen for Temporary Protected Status*, 91 Fed. Reg. 10402, 10402–03 (Mar. 3, 2026). The designation was repeatedly renewed in subsequent years—first based on ongoing armed conflict, and later also based on extraordinary and temporary conditions. *Id.* at 10403.

On March 3, 2026, the Secretary published a notice terminating Yemen's TPS designation effective May 4, 2026, after finding that the criteria for the designations were no longer met. *Id.* at 10403–08. Specifically, the Secretary concluded that Yemen no longer satisfied the ongoing-armed-conflict criterion based in part on improvements in security since an April 2022 U.N.-brokered truce, including a significant reduction in violence and the cessation of Saudi-led coalition airstrikes and major ground offensives. *Id.* at 10403–04. The Secretary further determined that, although extraordinary and temporary conditions persist in Yemen, the designation could not be extended on that basis either. *Id.* at 10404–07. The statute forbids extension on that ground where the Secretary finds that permitting aliens who are nationals of the foreign state designated for TPS to remain temporarily in the United States "is contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). The Secretary found as much, citing, among other things, Yemen's lack of a competent central authority to issue reliable identity documents and a terrorist organization's control of much of the country. 91 Fed. Reg. at 10404–07.

Since the start of the current administration, all 13 TPS designations to come up for review have been terminated, including the designations of Haiti, Afghanistan, Cameroon, Nepal,

Nicaragua, Honduras, Venezuela, Syria, South Sudan, Burma, Ethiopia, Somalia, and Yemen. *See* 2280 Am. Compl. ¶¶ 4 & n.1, 79; *Mullin v. Doe*, 146 S. Ct. at 2139.

Plaintiffs in the First Case sued on March 14, 2026, and Plaintiffs in the Second Case sued on March 19, 2026, both asserting claims under the APA and the equal protection guarantee of the Fifth Amendment. *See* Case No. 26-cv-2103, Dkt. No. 1 ("2103 Compl."); Case No. 26-cv-2280, Dkt. No. 1 ("2280 Compl."). Plaintiffs' APA claims rest on alleged deficiencies in the process of terminating Yemen's TPS designation, including the Secretary's alleged failure to consult with appropriate agencies. 2103 Compl. ¶ 172(a); 2280 Compl. ¶ 167(a); *see also* 2103 Am. Compl. ¶ 96; 2280 Am. Compl. ¶ 173(a). Plaintiffs' equal protection claims assert that the termination resulted from discriminatory animus toward Yemeni, Middle Eastern, Muslim, and "non-white" immigrants. 2103 Compl. ¶¶ 104–05, 179–83; 2280 Compl. ¶¶ 108–09, 174–78; *see also* 2103 Am. Compl. ¶¶ 47–48, 82–94; 2280 Am. Compl. ¶¶ 114–15, 180–84. For support, Plaintiffs cite statements by the President and the former Secretary that they claim disparage such immigrants. *See* 2103 Compl. ¶¶ 104–28; 2280 Compl. ¶¶ 108–34; *see also* 2103 Am. Compl. ¶¶ 49–55; 2280 Am. Compl. ¶¶ 114–40.

Both sets of Plaintiffs moved under 5 U.S.C. § 705 to postpone the effective date of the termination of Yemen's TPS designation. Case No. 26-cv-2103, Dkt. No. 5; Case No. 26-cv-2280, Dkt. Nos. 22–24. On May 1, 2026, the Court granted the motions, concluding that Plaintiffs were likely to show that the Secretary had failed to conduct adequate interagency consultation before terminating the designation in violation of the APA. Dkt. No. 54 ("postponement order") at 23–31. The Court did not reach the equal protection claims. *Id.* at 31 n.14.

On June 25, 2026, the Supreme Court held in a similar case that "the TPS statute's judicial-review bar applies to all non-constitutional claims," while also finding that an equal protection claim—analogous to the ones asserted by Plaintiffs here—was flawed and not likely to succeed on the merits. *Mullin v. Doe*, 146 S. Ct. at 2137–40.

On June 28, 2026, the government appealed this Court's postponement order and, two days later, moved this Court for a stay of that order pending appeal and for an indicative ruling under Rule 62.1 stating that, upon remand, the Court would vacate that order. Dkt. Nos. 72, 73.

Plaintiffs in the First Case filed an amended complaint on July 2, 2026. *See* 2103 Am. Compl. Plaintiffs in the Second Case filed an amended complaint on July 14, 2026, adding an *ultra vires* claim and a due process claim. *See* 2280 Am. Compl. ¶¶ 185–92.[3]

After initially deferring its ruling (Dkt. No. 84), the Court ultimately granted the government's motion for a stay pending appeal and for an indicative ruling on July 20, 2026. Dkt. No. 89. The Court both stayed the postponement order and stated that, upon remand from the Second Circuit, the Court would dissolve the postponement order. *Id.* at 6–7. In so ruling, the Court noted that the Supreme Court had held that the "'TPS statute's judicial-review bar applies to all non-constitutional claims'" which foreclosed the APA claim on which the postponement order rested. *Id.* at 4. Though Plaintiffs had argued that the Court should postpone the effective date of the TPS termination based on their equal protection claim (an issue the postponement order did not reach), the Court found that Plaintiffs offered no "cogent reason" why their constitutional claim

[3] By contrast, the amended complaint in the First Case adds no genuinely new causes of action. Its two standalone equal protection claims—for national-origin and race/ancestry discrimination—merely disaggregate the equal protection claim pled in the original complaint. *Compare* 2103 Compl. ¶¶ 179–83 *with* 2103 Am. Compl. ¶¶ 82–94.

differed from the one the Supreme Court rejected in *Mullin v. Doe*. *Id.* The Court also rejected Plaintiffs' attempt to bolster their equal protection claim with "problems with the substantive merits of the Secretary's determination," which the Court held were "not reviewable." *Id.* at 5. The Court concluded that the "strong showing that the Government has made on the merits overcomes any comparatively weaker showing with respect to the equities." *Id.* For these reasons, the Court stayed the postponement order and issued the requested indicative ruling. *Id.* at 5–7.

On July 21, 2026, Plaintiffs in the Second Case filed another motion to postpone the effective date of Yemen's TPS termination under 5 U.S.C. § 705 based on the *ultra vires* and due process claims pleaded in their amended complaint. Dkt. No. 93. The government opposed the motion (Dkt. No. 101), and it remains pending. On July 27, 2026, the Second Circuit remanded these cases so that the Court could vacate the postponement order, which the Court subsequently did, and the government then withdrew its appeal. Dkt. Nos. 102-1, 108, 109.

## LEGAL STANDARD

The government moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Daly v. Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (citation and quotation marks omitted). To withstand dismissal under Rule 12(b)(1), a plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 125 (2d Cir. 2016)). While Rule 12(b)(1) requires a court to accept all material factual allegations in the complaint as true, the court may not draw "argumentative inferences favorable to the party asserting jurisdiction." *Mid-New York Env't & Sustainability Promotion Comm., Inc.*

*v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290 (S.D.N.Y. 2022) (quoting *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012)). Furthermore, the Court may extend its purview to consider evidence outside the pleadings. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020) (abrogated on other grounds).

To withstand dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). The assumption of truth, however, does not apply to "allegations that amount to mere 'legal conclusions.'" *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021) (citation omitted). While "detailed factual allegations" are not necessary, a pleading must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. The *Ultra Vires* Claim Is Foreclosed by *Mullin v. Doe* and Fails on the Merits.

Plaintiffs in the Second Case claim that the termination of Yemen's TPS designation is void because Congress vested the authority to terminate TPS designations exclusively in the Attorney General, and that authority was never transferred to the Secretary. *See* 2280 Am. Compl. ¶¶ 191–92. In *Mullin v. Doe*, the Supreme Court foreclosed this argument in three ways. First, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. at 2137. Because the *ultra vires* claim is non-constitutional, it is foreclosed by the Supreme Court's decision. *See* 2103 Am. Compl. ¶ 2 (admitting that *Mullin v. Doe* "bars judicial review of non-constitutional challenges to a TPS determination"). Second, contrary to Plaintiffs' view that the Attorney General has authority over TPS, the Supreme Court

concluded that "[r]esponsibility for TPS decisions rests with the Secretary of Homeland Security." *Mullin v. Doe*, 146 S. Ct. at 2129 (citing 6 U.S.C. §§ 552(d), 557). Third, the Supreme Court made clear that the TPS statute's bar on judicial review applies to determinations by the Secretary, stating that 8 U.S.C. § 1254a(b)(5)(A) "provides: 'There is no judicial review of any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection.'" *Id.* at 2133 (alterations in original). For these reasons, Plaintiffs' contention that the statutory review bar "only applies to determinations 'of the Attorney General'" (Dkt. No. 93 at 2) is foreclosed by *Mullin v. Doe*.

Even putting aside the Supreme Court's decision, the *ultra vires* argument fails on the merits. When Congress created DHS in 2002 and reorganized the Executive Branch's immigration functions, it transferred authority over TPS from the Attorney General to the Secretary. Specifically, the Homeland Security Act charged the Secretary with the "administration and enforcement" of all laws "relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). Rather than rewrite each of the TPS statute's references to the "Attorney General," Congress relied on the Act's reference-updating provision. Specifically, 6 U.S.C. § 557 provided that, with respect to "any function transferred by or under this chapter," a reference "to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary." 6 U.S.C. § 557. Because TPS administration was a function transferred to the Secretary, § 557 updates every reference to the Attorney General in 8 U.S.C. § 1254a to mean the Secretary.

Lower courts universally adopted this construction, even before *Mullin v. Doe*. *See, e.g.*, *Mejia Rodriguez v. DHS*, 562 F.3d 1137, 1140 n.3 (11th Cir. 2009) (though "the statute governing TPS refers to the Attorney General as the decisionmaker," this "authority . . . has been transferred

to the Secretary" (citing 8 U.S.C. § 1103(a)); *Saget v. Trump*, 375 F. Supp. 3d 280, 297 (E.D.N.Y. 2019) ("Congress . . . transferred authority to make TPS designations from the Attorney General to the Secretary" (citing 8 U.S.C. § 1103; 6 U.S.C. § 557)). This Court reached the same conclusion in the postponement order. Dkt. No. 54 at 6 n.4 (while the TPS statute "'refers to the Attorney General, the Homeland Security Act . . . transferred the immigration powers . . . to the Secretary'"). And since *Mullin v. Doe*, courts have rejected this same *ultra vires* argument, concluding that the Secretary has authority over TPS determinations. *See Afr. Cmtys. Together v. Mullin*, No. 26 Civ. 10278 (BEM), 2026 WL 2408737, at *5 (D. Mass. Aug. 18, 2026) (dismissing *ultra vires* claim and noting that the "only courts to have squarely addressed this issue adopted Defendants' interpretation" (citing three recent decisions in other TPS cases)). Plaintiffs cite no decision holding that the Secretary lacks authority to make or terminate a TPS designation.

Finally, Plaintiffs' theory is self-defeating. Both the designation and termination provisions of the TPS statute refer to the "Attorney General." 8 U.S.C. § 1254a(b)(1), (b)(3)(B). If the reference deprived the Secretary of authority to terminate Yemen's TPS designation, it equally deprived the Secretary of authority to designate Yemen for TPS in 2015 and to extend that designation in the years since. Plaintiffs' success on their *ultra vires* claim would therefore eliminate the very benefit they seek to preserve. *See Afr. Communities Together v. Mullin*, No. 25-CV-13939-PBS, 2026 WL 2274504, at *4 (D. Mass. Aug. 7, 2026) (plaintiffs' "*ultra vires* claim would likely still be futile . . . because if . . . the Attorney General enjoys the exclusive right to *terminate* a TPS designation, he likewise has the sole authority to *designate* a country for TPS").

## II. Plaintiffs' Equal Protection Claims Are Foreclosed by *Mullin* and Fail on the Merits.

Plaintiffs contend that the Secretary's determination to terminate Yemen's TPS designation violated the Fifth Amendment's equal protection guarantee because it discriminated against them

based on their national origin, race, ethnicity, religion, and ancestry. *See* 2103 Am. Compl. ¶¶ 82–94; 2280 Am. Compl. ¶¶ 180–84. These discrimination claims rest principally on statements by administration officials, including the President and the Secretary, about various immigrant groups. *See* 2103 Am. Compl. ¶¶ 49–55; 2280 Am. Compl. ¶¶ 114–40. Yet Section 1254a(b)(5)(A) applies to these claims as well. *See Mullin v. Doe*, 146 S. Ct. at 2140 (Thomas, J., concurring) (concluding that the plaintiffs' "equal protection claim" falls "within the plain text of § 1254a(b)(5)(A)'s judicial-review bar"). And even if the claims were reviewable, they would fail as a matter of law under *Mullin v. Doe*.

The Supreme Court there assumed without deciding that the heightened *Arlington Heights* standard applied to the plaintiffs' equal protection claims.[4] *See Mullin v. Doe*, 146 S. Ct. at 2138. Under that standard, courts determine whether "'discriminatory purpose [was] a motivating factor in the decision,'" *id.* (quoting *Arlington Heights*, 429 U.S. at 265–66)) and, if so, whether "the same decision would have resulted even had the impermissible purpose not been considered." *Arlington Heights*, 429 U.S. at 271 n.21.

In *Mullin v. Doe*, the six-justice majority concluded that the race-based equal protection claim was flawed because the plaintiffs there, like here, had themselves identified "a strong, race-neutral explanation" for the TPS termination—namely, the current administration's "obvious

[4] Plaintiffs' equal protection claims are subject to rational basis review for the reasons explained in its opposition to Plaintiffs' motions to postpone. Dkt. No. 32 at 26–29. TPS determinations turn on country-specific judgments that "implicate 'relations with foreign powers'" and "involve 'classifications . . . defined in the light of changing political and economic circumstances,'" and thus warrant deferential review. *See Trump v. Hawaii*, 585 U.S. 667, 702 (2018). Nevertheless, the government here follows the Supreme Court's framing in *Mullin v. Doe* and assumes "for the sake of argument that the *Arlington Heights* standard applies." *Mullin v. Doe*, 146 S. Ct. at 2138 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977)).

antipathy toward past administrations' TPS policies." *Mullin v. Doe*, 146 S. Ct. at 2139. This administration had "terminated the TPS designations for every country that came up for review, 13 in all," *id.*—a fact that the Plaintiffs here also emphasize. 2280 Am. Compl. ¶¶ 4, 79. The Supreme Court further observed that the terminations concerned a "racially diverse group of countries"—including those in "East Asia (Nepal and Burma), Central Asia (Afghanistan), the Middle East (Syria and Yemen), Africa (Somalia, Ethiopia, South Sudan, and Cameroon), Central America (Nicaragua and Honduras), South America (Venezuela), and the Caribbean (Haiti)." *Mullin v. Doe*, 146 S. Ct. at 2139. Given that "strong, race-neutral explanation," the Court concluded that the plaintiffs' evidence was "insufficient to show that the termination of Haiti's TPS designation was based on the race of the Haitian people." *Id.*

This reasoning renders Plaintiffs' equal protection claims implausible under *Iqbal*. When an "obvious alternative explanation" accounts for the challenged action, "discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. That principle applies with full force here. Indeed, Plaintiffs themselves allege the very across-the-board TPS terminations that supplied the race-neutral explanation in *Mullin v. Doe*. 2280 Am. Compl. ¶¶ 4 & n.1, 79. That *Mullin v. Doe* was decided at the preliminary-relief stage does not lessen the force of the decision's reasoning or make it any less binding at the motion-to-dismiss stage. *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663–64 (2025) (Gorsuch, J., concurring) ("regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases.'" (quoting *Ramos v. Louisiana*, 590 U.S. 83, 104 (2020)); *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019) ("[J]ust as binding as [a] holding is the reasoning underlying it."); *see also DHS v. Regents of the Univ. of California*, 591 U.S. 1, 34–35 (2020) (concluding at pleadings stage that

allegations of "disparate impact of the [government action] on Latinos," "unusual history behind" the action, and "statements about Latinos that [allegedly] evince discriminatory intent" did not, "either singly or in concert, establish[] a plausible equal protection claim"). Nor does it matter that the plaintiffs in *Mullin v. Doe* claimed only race discrimination. The explanation that the Supreme Court credited is just as neutral to national origin, ancestry, religion, and ethnicity as it is to race.[5]

In support of their equal protection claims, Plaintiffs cite statements by the Secretary, the President, and other administration officials as evidence of alleged bias against Yemenis, Muslims, and immigrants generally. The Supreme Court considered these same types of statements in *Mullin v. Doe*, acknowledging that they "associate[d] [certain] immigrants with crime and other social ills," "denigrate[d] the countries for which TPS designations have been granted . . . portraying them as hellish places in which to live," "malign[ed] [groups of immigrants] who have come to the United States," "expressed antipathy toward travelers from countries covered by a renewed travel ban," contained "derogatory comments about immigration and its effects," and "criticized past implementation of TPS." *Mullin v. Doe*, 146 S. Ct. at 2138. But the majority

[5] Two district courts outside this Circuit recently denied the government's motions to dismiss equal protection claims in other TPS cases because *Mullin v. Doe* was decided under a prospective "likelihood of success standard." *Doe v. Mullin*, No. 25 Civ. 15483, 2026 WL 2279577, at *11 (N.D. Ill. Aug. 7, 2026) (denying motion to dismiss equal protection claim "[b]ut because there [was] substantial ground for difference of opinion," certifying "ruling for interlocutory appeal under 28 U.S.C. § 1292(b)"); *Afr. Cmtys. Together*, 2026 WL 2408737, at *7. But the posture in which *Mullin v. Doe* arose does not diminish the binding force of its reasoning and that reasoning prevents Plaintiffs from stating a plausible claim under *Iqbal*. The Supreme Court did not hedge its conclusion to the interim posture. It did not say the evidence was merely unlikely to establish discrimination; it held that it was "*insufficient* to show that the termination of Haiti's TPS designation was based on" race. *Mullin v. Doe*, 146 S. Ct. at 2139 (emphasis added). Accordingly, another district court found that, after *Mullin v. Doe*, it could "not discern a path to concluding that Plaintiffs will succeed on the merits of [their equal protection] claim," even though the court itself thought plaintiffs had "la[id] out a strong case." *Afr. Cmtys. Together v. Mullin*, No. 26-CV-11201-ADB, 2026 WL 2364398, at *9 (D. Mass. Aug. 14, 2026) (denying motion to postpone).

concluded that none of these statements was "overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Id.* The Supreme Court recognized the "heated language" used, but concluded that, "whatever one may think of the cited statements, they are insufficient to show that the termination of [a] TPS designation was based on" illegal discrimination—especially given the "strong, race-neutral explanation" discussed above, namely, "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* at 2139. That reasoning applies with equal force to claims of discrimination based on national origin, ancestry, ethnicity, or religion.

This Court has already applied *Mullin v. Doe* to Plaintiffs' claims and reached the same conclusion. In staying the postponement order, the Court held that Plaintiffs offered "no cogent reason" why their equal protection claims should fare differently from the claim the Supreme Court rejected. Dkt. No. 89, at 4. The Court explained that the "claim in *Mullin* was for racial discrimination, while the claims here are for discrimination on the basis of national origin and/or religion," but that distinction "is not relevant to the Supreme Court's conclusion." *Id.* Indeed, the statements Plaintiffs cite here are, if anything, weaker than those at issue in *Mullin v. Doe*—"fewer in number and in some sense less specific (in that they tended to refer to a broader group of people rather than to Yemenis specifically) than the statements about Haitians in *Mullin*." *Id.* at 4–5.

To the extent Plaintiffs seek to establish discrimination by citing alleged procedural errors and departures from past practices, deviations from an agency's "normal procedural sequence" can be probative of discrimination but only when the deviations suggest that the challenged decision was handled differently from others because of a protected characteristic. *Arlington Heights*, 429 U.S. at 267. Across-the-board departures carry no such implication. *See id.* at 270 (policy had been

"applied . . . too consistently for us to infer discriminatory purpose"); *cf. Singleton v. BOP*, No. 04 Civ. 1526 (CPS), 2006 WL 1329712, at *9 (E.D.N.Y. May 16, 2006) (where an agency's policy was "allegedly ignored in regard to both plaintiff and" a comparator, the departure "cannot serve as evidence of discriminatory intent or pretext"). Here, Plaintiffs point to similar alleged problems in the TPS terminations of numerous countries that lack Plaintiffs' religious, ethnic, and ancestral characteristics—including Venezuela, Haiti, Cameroon, Nepal, Honduras, Nicaragua, South Sudan, Burma, and Ethiopia. 2280 Am. Compl. ¶¶ 79–113. This Court has previously observed that the process for terminating Yemen's TPS designation resembled those of other countries. Dkt. No. 54 at 18 (finding that the "process in terminating TPS for Yemen" was similar to "the processes that courts found defective in [other] cases"). These across-the-board alleged departures therefore raise no inference of discrimination; if anything, they confirm that Yemen was treated no differently than the many other countries whose designations were terminated.

Plaintiffs attempt to distinguish this TPS termination from others because the Secretary's decision rested on the TPS statute's "national-interest proviso." 2103 Am. Compl. ¶ 41; *see also* 2280 Am. Compl. ¶ 4. But plaintiffs in other cases have made very similar arguments. *See, e.g.*, *Afr. Cmtys. Together v. Noem*, 828 F. Supp. 3d 235, 256 n.30 (D. Mass. 2026) (noting plaintiffs' argument in Ethiopia TPS case that "national interests are not a permissible consideration during periodic review"), *rev'd and remanded*, 183 F.4th 76 (1st Cir. 2026); *Doe v. Noem*, 829 F. Supp. 3d 392, 399 (N.D. Ill. 2026) ("plaintiffs also claimed that the Secretary[] . . . impermissibly relied on national interest to justify the termination of Burma's TPS"); *Afr. Cmtys. Together v. Noem*, 820 F. Supp. 3d 48, 59 (D. Mass. 2026) (noting plaintiffs' argument that Secretary "impermissibly considered the national interest" when terminating South Sudan's TPS status), *rev'd and*

*remanded*, 183 F.4th 77 (1st Cir. 2026). Moreover, as this Court previously concluded, this argument concerns an alleged "problem[] with the substantive merits of the Secretary's determination, which is not reviewable by this Court." Dkt. No. 89, at 5. Another district court reached the same conclusion, holding that even robust, country-specific allegations of discrimination cannot survive *Mullin v. Doe*. *See Afr. Cmtys. Together*, No. 26-cv-11201-ADB, 2026 WL 2364398, at *9 (D. Mass. Aug. 14, 2026) (denying preliminary relief after finding no "path to concluding that Plaintiffs will succeed on the merits of [an equal protection] claim" when "view[ed] . . . through the *Mullin* prism," despite alleged departures "from decades of past practice" and "targeting of Somalia through . . . immigration policies").

## III. Plaintiffs' APA Claims Are Foreclosed by *Mullin v. Doe.*

Plaintiffs in both cases assert claims under the APA. Plaintiffs in the First Case plead a single count under 5 U.S.C. §§ 706(2)(A), (C), and (D), asserting that the termination was "arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and adopted without observance of procedure required by law," including through a failure "to consult appropriate agencies about Yemen's country conditions." 2103 Am. Compl. ¶ 96. Plaintiffs in the Second Case plead two counts, the first alleging several statutory-related and procedural errors, 2280 Am. Compl. ¶ 173(a)–(f), and the second alleging that the sixty-day wind-down "represented an unacknowledged and unexplained departure from decades of decision-making practices and ordinary procedures," *id.* ¶ 178. Each of these claims is non-constitutional, and each is therefore foreclosed by *Mullin v. Doe* and should be dismissed.

As explained above, the Supreme Court held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Mullin v. Doe*, 146 S. Ct. at 2137. Plaintiffs' APA claims fall within that holding. They ask the Court to review the Secretary's determination terminating

Yemen's designation, and Congress has provided that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under this subsection." 8 U.S.C. § 1254a(b)(5)(A).

Nor can Plaintiffs properly allege APA claims by characterizing them as directed at the Secretary's process rather than her conclusion. The Supreme Court rejected the argument that the review bar "applies only to substantive claims, not those based on alleged procedural errors," and identified "her decision to consult the State Department in a particular manner" as subject to the bar. *Mullin v. Doe*, 146 S. Ct. at 2134. That holding forecloses the consultation theory that both complaints allege. *See* 2103 Am. Compl. ¶ 96; 2280 Am. Compl. ¶ 173(a). The same is true for Plaintiffs' allegations that the decision was preordained, that it rested on "statutorily impermissible factors," that the review process "deviated dramatically from past practice without explanation," and that any process afforded "was so deficient as to amount to no process at all." 2280 Am. Compl. ¶ 173(b)–(e). Each of those allegations reflects an objection to how the Secretary reached her determination, and the Supreme Court has held that such objections are subject to the judicial-review bar. *Mullin v. Doe,* 146 S. Ct. at 2136–37. The Court also noted that the bar cannot be evaded "by creative pleading or clever lawyering." *Id.* at 2136.

Plaintiffs' remaining allegations fare no better, because they attack the substance of the Secretary's judgment. Plaintiffs allege that the Secretary terminated Yemen's designation "notwithstanding her own finding that extraordinary and temporary conditions continue to challenge Yemeni nationals ability to safely return," and that she "relied on statutorily impermissible factors." 2280 Am. Compl. ¶ 173. However, this Court has already observed, in rejecting Plaintiffs' attempt to make similar arguments in connection with their equal protection

claim, that such arguments concern "problems with the substantive merits of the Secretary's determination," which are "not reviewable." Dkt. No. 89, at 5. Section 1254a(b)(5)(A) does not permit a court to reweigh the considerations Congress committed to the Secretary.

The second APA claim pleaded in the Second Case is barred for the same reason. That claim alleges that the sixty-day wind-down was an unacknowledged departure from prior practice under *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). *See* 2280 Am. Compl. ¶¶ 176–79. But a challenge to the adequacy of the Secretary's acknowledgment and explanation of her determination is a challenge to that determination, and section 1254a(b)(5)(A) forecloses it.

Plaintiffs in the First Case do not contend otherwise. They acknowledge that *Mullin v. Doe* "bars judicial review of non-constitutional challenges to a TPS determination," 2103 Am. Compl. ¶ 2, and plead Count III "solely to preserve it for further review," *id*. ¶ 97. But a claim Congress has placed beyond judicial review should be dismissed. Plaintiffs in the Second Case have likewise acknowledged that "*Mullin* forecloses Plaintiffs' APA claims." Dkt. No. 81, at 1.

This Court has already applied *Mullin* to these claims. In staying the Court's postponement order, the Court recognized that the holding foreclosed the APA claim on which the postponement order rested. Dkt. No. 89, at 4. The APA claims in both cases should be dismissed.

## IV. Plaintiffs' Due Process Claim Is Foreclosed by *Mullin v. Doe* and Fails on the Merits.

Plaintiffs in the Second Case contend that the termination deprived them of liberty and property interests in their TPS status and related benefits, including employment authorization and removal protection, without constitutionally adequate process. *See* 2280 Am. Compl. ¶ 187. The claim fails for four reasons. First, section 1254a(b)(5)(A) bars review of the claim. Second, Plaintiffs have no protected liberty or property interest in the continuation of a discretionary, country-wide designation. Third, the individualized procedural protections they invoke have no

application to the Secretary's across-the-board determination to terminate a country's designation. Finally, Plaintiffs' allegations make clear that they received any process the Constitution requires.

### A. Section 1254a(b)(5)(A) Bars Plaintiffs' Due Process Claim.

The Court need not decide whether the review bar applies to every constitutional claim, *Mullin v. Doe*, 146 S. Ct. at 2137, because it applies at least to a due process claim like this one, which simply repackages the challenges that *Mullin v. Doe* held were unreviewable. The respondents there, like Plaintiffs here, challenged a TPS termination on the ground that the Secretary failed to consult appropriate agencies and reached a preordained result. The Court rejected the argument that the review bar "applies only to substantive claims, not those based on alleged procedural errors," and identified "her decision to consult the State Department in a particular manner" as subject to the bar. *Id.* at 2134. Having held that "the TPS statute's judicial-review bar applies to all non-constitutional claims," the Court noted that the bar cannot be evaded "by creative pleading or clever lawyering." *Id.* at 2136–37.

That is what Plaintiffs attempt here in their complaints. The deprivation that Plaintiffs allege is the Secretary's asserted failure to follow "the statutorily mandated requirements for termination." 2280 Am. Compl. ¶ 187. Those are the same alleged defects that were before the Supreme Court, now recast in constitutional terms. A court must "look beyond the literal meaning of the language used to ascertain the real cause of the complaint." *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (Breyer, J.). Any other approach would allow parties to "evade" the review bar "by relabeling their" statutory claims as constitutional ones. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Were it otherwise, section 1254a(b)(5)(A) would impose little

constraint and every challenge that *Mullin v. Doe* placed beyond review could be reasserted, unchanged in substance, as a claim for denial of due process.[6]

**B. Plaintiffs Have No Protected Liberty or Property Interest.**

Even if Plaintiffs' due process claim were reviewable, they would fail to state a claim. The Due Process Clause constrains governmental action only where it deprives a person of a protected liberty or property interest, and a protected property interest requires "a legitimate claim of entitlement," not merely "a unilateral expectation." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). TPS supplies no such entitlement. A TPS designation is temporary by name and design; an initial designation lasts "not less than 6 months and not more than 18 months," 8 U.S.C. § 1254a(b)(2), and its continuation beyond that period is never guaranteed. Whether a designation is extended or terminated turns on the Secretary's periodic review of country conditions and her discretionary determination whether the statutory criteria "continue to be met." *Id.* § 1254a(b)(3)(A); *see id.* § 1254a(b)(3)(B) (the Secretary "shall terminate" a designation upon determining that the country "no longer continues to meet the conditions for designation"). Each stage of the process includes discretionary judgment. The Secretary "may grant" TPS to an eligible national of a designated country, *id.* § 1254a(a)(1)(A), and an applicant "may in the discretion of the director be granted" that status only upon establishing eligibility, 8 C.F.R. § 244.2.

A benefit that the Secretary may withhold at the outset, and may end based on a discretionary judgment about country conditions and the national interest, is not an entitlement the

[6] To the extent Plaintiffs mean to assert a substantive due process right to the continuation of a TPS designation, no such right is remotely rooted in the Nation's history and tradition. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (substantive due process protects only rights "deeply rooted in this Nation's history and tradition") (citation omitted).

Due Process Clause protects. As the Second Circuit has held, "aliens have no constitutionally-protected 'liberty or property interest' in . . . a discretionary grant of relief for which they are otherwise statutorily ineligible." *Hernandez v. Sessions*, 884 F.3d 107, 112 (2d Cir. 2018). Justice Thomas made the same point about TPS in *Mullin v. Doe*, explaining that "[t]he termination of Haiti's TPS designation does not deprive respondents of 'life, liberty, or property'" because the "discretionary and limited status that a TPS designation provides, like any immigration status for aliens, is a government-created privilege, not a core private right." 146 S. Ct. at 2143 (Thomas, J., concurring). The courts of appeals have likewise treated TPS as a "discretionary form of relief." *Tobar v. Garland*, 65 F.4th 195, 196 (5th Cir. 2023); *Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008). The "explicitly temporary nature of the [TPS] program" forecloses any claim of protected reliance. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018). At most, Plaintiffs held a "unilateral expectation" that a discretionary designation would continue—not the "legitimate claim of entitlement" that a protected property interest requires. *Roth*, 408 U.S. at 577.

A statute confers a protected entitlement only where it imposes "substantive limitations on official discretion" and "mandat[es] the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quotation marks omitted); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). The TPS statute does neither. The decision whether a designation is made or continues rests on the Secretary's discretionary judgment about country conditions and the national interest: the Secretary "may designate" a country in the first instance, and she terminates a designation based on her determination whether the statutory criteria "continue to be met." 8 U.S.C. § 1254a(b)(1),

(b)(3)(A) (emphasis added). And even when a country is designated, the decision to grant TPS to a particular eligible individual remains discretionary. *See id.* § 1254a(a)(1)(A).[7]

Plaintiffs separately assert a liberty interest in the removal protection that accompanies TPS. *See* 2280 Am. Compl. ¶ 187. But their liberty theory fails for the same reason as their property theory: they have "no constitutionally-protected 'liberty or property interest' in . . . a discretionary" immigration benefit. *Hernandez*, 884 F.3d at 112. Once Yemen's designation was lawfully terminated, Plaintiffs stood in the position of other noncitizens without lawful status, and "the deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law." *United States ex rel. Turner v. Williams*, 194 U.S. 279, 290 (1904); *see also Mullin v. Doe*, 146 S. Ct. at 2143 (Thomas, J., concurring) (quoting *Turner* in the TPS context). Plaintiffs have identified no liberty or property interest that the Due Process Clause protects and therefore fail to state a due process claim.

### C. The Individualized Process Plaintiffs Demand Does Not Apply to a Categorical Country Determination.

Even setting the absence of a protected interest aside, the procedural protections that Plaintiffs invoke do not apply to a determination of this kind. Due process "is flexible and calls for such procedural protections as the particular situation demands," *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (citation and quotation marks omitted), and it has long distinguished between agency action that "adjudicate[s] disputed facts in particular cases" and action involving "the formulation of a basically legislative-type judgment, for prospective application only," *United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 245–46 (1973); *see also Bi-Metallic Inv. Co. v. State*

---

[7] The analysis is no different for the putative applicant class. *See* 2280 Am. Compl. ¶¶ 162, 166. A pending application for a benefit that the Secretary may grant or withhold in her discretion is not a "legitimate claim of entitlement" either. *Roth*, 408 U.S. at 577.

*Bd. of Equalization*, 239 U.S. 441, 445 (1915). The termination of a TPS designation is a determination of the latter kind: a categorical judgment about conditions in a foreign state and the national interest, applicable to an entire class of nationals, and is not an adjudication of any Plaintiff's particular circumstances. The Due Process Clause does not entitle every affected individual to an individualized hearing before the government adopts a generally applicable policy. *See Air Line Pilots Ass'n, Int'l v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting. . . . General statutes within the state power are passed that affect the person or property of individuals . . . without giving [them] a chance to be heard." (quoting *Bi-Metallic Inv.*, 239 U.S. at 445; internal quotation marks omitted)); *see also Dawson v. Milwaukee Hous. Auth.*, 930 F.2d 1283, 1286 (7th Cir. 1991) ("[T]he due process clause does not require individual hearings before a governmental body takes decisions that affect the interests of persons in the aggregate.").

### D. Plaintiffs Received Whatever Process Was Due.

Even if the individualized framework applied, Plaintiffs fail to state a claim because they received whatever process is due. Plaintiffs do not allege that the Constitution requires anything beyond the steps Congress prescribed: the Secretary must consult appropriate agencies, review conditions in the foreign state, and publish notice of the determination and its basis in the Federal Register. 8 U.S.C. § 1254a(b)(3)(A). The Secretary did so here. *See* 91 Fed. Reg. at 10402–08.

Plaintiffs' claim is therefore that the Secretary's conduct did not adequately adhere to the statute. But an alleged statutory violation does not necessarily amount to a constitutional procedural due process violation. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 751–52 (1979)

("It is equally clear that the violations of agency regulations disclosed by this record do not raise any constitutional questions."); *see also Kopunek v. Dir. of Internal Revenue*, 528 F. Supp. 134, 137 (S.D.N.Y. 1981). An agency's failure to observe statutory procedures gives rise to a statutory claim, not a constitutional one, and Plaintiffs cannot recast a statutory claim as a constitutional due process claim merely by invoking the Due Process Clause. *See Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) (litigants who have procedural objections should rely on the statute and the regulations rather than "intoning 'due process' in the hope that it will cover all bases"). Plaintiffs do not allege that the Due Process Clause itself, independent of the TPS statute, would require interagency consultation or Federal Register publication before a designation could be terminated. Their objections go to the Secretary's statutory compliance and to the substance of her determination, not to the denial of any procedure the Constitution guarantees. For all these reasons, the due process claim should be dismissed.[8]

## CONCLUSION

For the foregoing reasons, the Amended Complaints in these related putative class actions should be dismissed in their entirety.

[8] The government previously argued that 8 U.S.C. § 1252(f)(1) precludes the relief Plaintiffs seek. *See* Dkt. No. 32, at 25–26; 8 U.S.C. § 1252(f)(1) ("[r]egardless of the nature of the action or claim," "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" the relevant provisions of the immigration laws). The Court rejected that argument. *See* Dkt. No. 54, at 22. Given the Court's prior ruling, the government does not repeat this argument here but preserves it for any further proceedings in this Court and for appeal.

Dated: New York, New York
August 28, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: */s/ Adam Gitlin*
MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2713/2734
mark.osmond@usdoj.gov
adam.gitlin@usdoj.gov

**<u>Certificate of Compliance</u>**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 8,010 words.