**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

Abdo DOE, Hadeel DOE, Faiz DOE, Ebe DOE, Sam DOE, Ali DOE, and Fahad DOE, on their own behalf and on behalf of others similarly situated,

*Plaintiffs*,

- *versus* -

Markwayne MULLIN, Secretary, United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; and UNITED STATES OF AMERICA,

*Defendants*.

**Case No. 1:26-cv-2280-DEH**

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................ 1

LEGAL STANDARD ........................................................ 2

ARGUMENT ........................................................ 3

I. *Ultra Vires* claims ........................................................ 3

II. APA claims ........................................................ 7

III. Equal Protection claims ........................................................ 7

IV. Due Process claims ........................................................ 16

CONCLUSION ........................................................ 21

# TABLE OF AUTHORITIES

## CASES

*African Communities Together v. Mullin*, No. 25-cv-13939 (PBS), 2026 WL 2274504 (D. Mass. Aug. 7, 2026)........ 5-7

*African Communities Together v. Mullin, No. 26-cv-11201-ADB*, 2026 WL 2364398 (D. Mass. Aug. 14, 2026)........8, 16

*African Communities Together v. Mullin*, No. CV 26-10278-BEM, 2026 WL 2408737 (D. Mass. Aug. 18, 2026)........ 3, 6, 8, 10

*Aung Doe v. Mullin*, No. 25 C 15483, 2026 WL 1983721 (N.D. Ill. July 9, 2026) ........ 11

*Aung Doe v. Mullin*, No. 25 Civ. 15483 (MFK), 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026)........ 3, 5, 6, 8, 10

*Allis-Chambers Corp. v. Lueck*, 471 U.S. 202 (1985) ........17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 1, 2, 9, 15

*Bah v. Cangemi*, 548 F.3d 680 (8th Cir. 2008)........19

*Bell v. Burson*, 402 U.S. 535 (1971) ........ 18-19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 1, 2, 9, 11

*Bellin v. McDonald*, 177 F.4th 167 (2d Cir. 2026)........17

*Board of Pardons v. Allen*, 482 U.S. 369 (1987)........19

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ........ 17-18

*Brecht v. Abrahamson*, 507 U.S. 619 (1993)........3

*Carter v. HealthPort Technologies*, LLC, 822 F.3d 47 (2d Cir. 2016) ........2

*CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307 (D. Md. 2018) ........19

*Chambers v. Time Warner, Inc*., 282 F.3d 147 (2d Cir. 2002)........19

*Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72 (2d Cir. 2015)........16

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ........11

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) .......................................... 17-18, 21

*DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1 (2020).....................................................6, 14

*Dubbs v. CIA*, 866 F.2d 1114 (9th Cir. 1989).......................................................................13

*Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) ........................................................9

*Hernandez v. Sessions*, 884 F.3d 107 (2d Cir. 2018).................................................................19

*Hunter v. Underwood*, 471 U.S. 222 (1985)...........................................................................15

*Jimenez-Nieves v. United States*, 682 F.2d 1 (1st Cir. 1982).....................................................17

*Kapps v. Wing*, 404 F.3d 105 (2d Cir. 2005) ..........................................................................18

*Kentucky Dep't of Corrections v. Thompson*, 490 U.S 454 (1989) ....................................... 17-19

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020)........................................................2, 10

*Mansor v. USCIS*, 830 F.Supp.3d 1082 (W.D. Wash. 2025) .....................................................18

*Mathews v. Eldridge*, 424 U.S. 319 (1976)........................................................................ 20-21

*Mejia Rodriguez v. DHS*, 562 F.3d 1137 (11th Cir. 2009) ..........................................................5

*MHANY Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016)...........................16

*Mullin v. Doe*, 609 U.S. ___, 146 S. Ct. 2121 (2026).................................................. 3, 5-11, 19

*Nat'l Rifle Ass. of Amer. v Vullo*, 602 U.S. 175 (2024) ..........................................................9, 15

*New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766 (S.D.N.Y. 2018)........................11, 12

*Nozzi v. Hous. Auth. of the City of L.A.*, 806 F.3d 1178 (9th Cir. 2015) ....................................20

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) .........................................................9

*Perry v. Sindermann*, 408 U.S. 593 (1972)...............................................................................6

*Portillo-Rendon v. Holder*, 662 F.3d 815 (7th Cir. 2011) ..........................................................19

*Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008).......................................................................15

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)..............................................12

*Reid v. Bondi*, 132 F.4th 109 (2d Cir. 2024)....................16

*Retirement Plans Committee of IBM v. Jander*, 589 U.S. 49 (2020)....................3

*Romero Marroquin de Rodriquez v. Hyde*, 2026 WL 220416 (D. Mass. Jan. 28, 2026)......... 16-17

*Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019) ....................5

*Schiebel v. Schoharie Central School District*, 120 F.4th 1082 (2d Cir. 2024)...................... 14-15

*Smith v. Town of Clarkton*, 682 F.2d 1055 (4th Cir. 1982)....................10

*Tobar v. Garland*, 65 F.4th 195 (5th Cir. 2023) ....................19

*Trump v. Hawaii*, 585 U.S. 667 (2018) ....................15

*United States v. Caceres*, 440 U.S. 741 (1979)....................21

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952)....................3

*United States v. Suquilanda*, 116 F.4th 129 (2d Cir. 2024)....................15

*United States v. Yonkers Board of Education*, 837 F.2d 1181 (2d Cir. 1987)....................13

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) .................... 2, 10-16

*Webster v. Doe*, 486 U.S. 592 (1988) ....................7

*Wong v. Warden, FCI Raybrook*, 171 F.3d 148 (2d Cir. 1999)....................13

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ....................18

**STATUTES AND OTHER LEGAL AUTHORITIES**

6 U.S.C. § 542....................5

6 U.S.C. § 552(d) ....................5

6 U.S.C. § 557.................... 4-5

8 U.S.C. § 1103(a) ....................3, 4, 6

8 U.S.C. § 1103(g) ....................1, 3, 4, 7

8 U.S.C. § 1254a(a)(4)(B)....................18

8 U.S.C. § 1254a(b)(3) .................... 17-20

8 U.S.C. § 1254a(b)(5)(A) ....................3, 7

8 U.S.C. § 1254a(c)(3)....................19

**BRIEFS, PLEADINGS AND TRANSCRIPTS**

Exhibit A, Motion for Release, *In re Haji Zada*, No. 2026-trc-1 (A.T.R.C. Aug. 14, 2026)....................7

Plaintiffs' Amended Complaint (ECF No. 85-1) .................... 6, 8, 10-16, 18-21

Plaintiffs' New Authority Letter Brief (ECF No. 107) ....................5

Plaintiffs' Renewed Motion to Postpone (ECF No. 96).................... 4-5, 7

**OTHER AUTHORITIES**

USCIS, Policy Memorandum PM-602-0192 (Dec. 2, 2025)....................14

## INTRODUCTION

This Court should reject the government's motion to dismiss Plaintiffs' claims. To begin with, the wrong cabinet member issued the termination at issue here. The government remains unable, after multiple rounds of briefing, to point to one provision in the Homeland Security Act (or the vast reorganization plan following on its heels) that actually transfers the power over TPS determinations away from the Attorney General. The government's only response to Plaintiffs' *ultra vires* claims is the untenable assertion that 8 U.S.C. §1103(g) contains the implied word "only"—a reading that would upend vast other areas of the INA, most immediately disrupting pending proceedings before the Alien Terrorist Removal Court.

In order to dismiss Plaintiffs' equal protection claims prior to discovery, the government is forced to argue that the claims as pled are implausible under *Iqbal* and *Twombly*. But the Supreme Court has, subsequently to those two decisions, held that it is improper to credit an "obvious alternative explanation" at the motion to dismiss stage, at least where an official's own statements and acts contradict the innocent account. Here, Plaintiffs have adduced both direct evidence of national-origin discrimination (in the form of Secretary Noem's own statements), and indirect evidence (in the form of her suspect termination even in the face of her own finding that Yemen remains unsafe to return to). This Court should decline Defendants' effort to cut off discovery of further damning material in the government's records.

Finally, as to procedural due process, Plaintiffs have shown that they have strong protected interests in compliance with the statutory consultation requirement. Plaintiffs have already cited in prior briefs numerous cases holding that benefits that are partly contingent or subject to the exercise of some degree of executive judgment can nonetheless underlie liberty or property interests, and that determinations that affect large groups of individuals can nonetheless be chal-

lenged as violative of procedural due process. Past cases have also recognized that statutory procedural entitlements may also be protected by the Due Process Clause. Seeking enforcement of the statutorily mandated processes is all Plaintiffs have requested here.

## LEGAL STANDARD

Rule 12(b)(6) requires the Court to accept Plaintiffs' well-pleaded facts as true and draw all reasonable inferences in their favor. Plaintiffs must state a plausible claim, not prove that they will prevail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court may not choose between competing plausible inferences. *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020). The Court may also consider documents incorporated by reference in or integral to the Amended Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

To plead discriminatory purpose, Plaintiffs must allege facts supporting a reasonable inference that discrimination was *a* motivating factor in Yemen's termination. *See Iqbal*, 556 U.S. at 678; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977).

Defendants' jurisdictional challenge under Rule 12(b)(1) turns on the legal scope of the TPS review bar. Def's' Mot. to Dismiss, ECF No. 111 ("MTD") at 9, 12. That facial challenge imposes no evidentiary burden on Plaintiffs. The Court must accept their material factual allegations as true and draw all reasonable inferences in their favor. *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

## ARGUMENT

### I. *Ultra Vires* claims

The government's arguments against Plaintiffs' ultra vires claims[1] fail to offer a convincing reading of the entirety of 8 U.S.C. § 1103. As Plaintiffs made clear in their Reply on their Motion to Postpone (ECF No. 104) ("Reply") at 3–5, one of the two relevant 1103 subsections must contain some degree of redundancy—either 1103(a) or 1103(g). Subsection 1103(a) gives to the DHS Secretary all powers in Chapter 12 of Title 8 (the INA) "except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the … Attorney General." Subsection 1103(g) states that "[t]he Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by [the Executive Office for Immigration Review (EOIR)]...."

---

[1] Notwithstanding the government's *pro forma* argument, MTD at 9-10, the Supreme Court most obviously did not decide the *ultra vires* issue. As Plaintiffs previously stated, "*Mullin* was 'silent on the argument now before [this Court] for the simple reason that the parties in [the case] were silent on it too.' *Retirement Plans Committee of IBM v. Jander*, 589 U.S. 49, 55 (2020) (Gorsuch, J. concurring). In an adversarial system, issues not contested by the parties cannot be considered precedentially decided—even by the Supreme Court. The government's argument that *Mullin* forecloses this Court's review of the ultra vires claim runs afoul of the well-settled principle that decisions lack precedential value on issues that they 'never squarely addressed.' *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (where an issue was not 'raised in briefs or argument nor discussed in the opinion of the Court,' 'the case is not a binding precedent on this point' (emphasis added))." Reply at 2. Nor did this Court, MTD at 11; again, the issue had not yet been presented to this Court, having been added in the Amended Complaint, *see* ECF 85-1 (redline) at ¶¶ 190-92. And if the TPS statute's references to the Attorney General are all still in place, then the jurisdiction stripping provision of 8 U.S.C. § 1254a(b)(5)(A) must protect only his "determinations" from review; the Supreme Court did not consider or decide that that provision covers literally "all non-constitutional claims," MTD at 9, but rather only those non-constitutional claims that were actually raised and fully developed before it. *See* Reply at 2; *see also Aung Doe v. Mullin*, No. 25 Civ. 15483 (MFK), 2026 WL 2279577 at *6 (N.D. Ill. Aug. 7, 2026); *African Communities Together v. Mullin*, No. CV 26-10278-BEM, 2026 WL 2408737, at *3-*4 (D. Mass. Aug. 18, 2026).

The government reads § 1103(g) to be the *exclusive* provision reserving powers (over EOIR) to the Attorney General, *see* MTD at 4, despite the absence of any additional language (like the word "only") that would limit the Attorney General's powers in this way, *see* Reply at 4; on its reading, § 1103(a) would be unnecessary surplussage in the statute. However, reading the statute in that fashion would produce catastrophic results. Many powers exercised today by the Attorney General would be improperly exercised if § 1103(g) set forth the exclusive list of INA powers retained by him, most significantly the power to invoke proceedings before the Alien Terrorist Removal Court, as well as roles in the denaturalization process and acquisitions of land to defend our borders. *See* Reply at 4–5 and 5 n.6.

A far more sensible reading of the apparent redundancy between §§ 1103(a) and (g) is the one Plaintiffs have suggested: because control over the immigration adjudication process under EOIR was so controversial in 2002, Congress wrote § 1103(g) as a belt-and-suspenders provision to make absolutely clear that the Attorney General—a position traditionally held by a lawyer and expected to exercise some degree of quasi-judicial independence from the presidency—would retain control over the adjudication of individual immigration cases. *See* Reply at 4. Congress' desire to demonstratively protect the objectivity and fairness of the immigration courts would then explain the addition of language that was otherwise, strictly speaking, unnecessary.

The government relies on 6 U.S.C. 557 as the provision that actually affirmatively effectuates the *transfer* of power over TPS to the DHS Secretary (in contrast to 1103(a) and (g)'s specification of powers the Attorney General *retains*), *see* MTD at 10. But that provision only relates to "powers transferred" expressly by other sections of the same chapter of the Homeland Security Act. As Plaintiffs stated it in their Renewed Motion to Postpone:

> Section 557 provides that "[w]ith respect to any function transferred by or under this chapter [on Homeland Security Organization, 6 U.S.C. §§ 101-681g] (includ-

> ing under a reorganization plan that becomes effective under section 1502 [6 U.S.C. § 542]) and exercised on or after the effective date of this Act, reference in any other Federal law to any department, commission, or agency or any officer or office the functions of which are so transferred shall be deemed to refer to the Secretary, other official, or component of the Department to which such function is so transferred." 6 U.S.C. § 557 (emphases added). But that provision does not independently transfer any authority from DOJ to DHS. It simply streamlines the amendment of other parts of the U.S. Code by conforming them to transfers of authority specified in chapter 1 of Title 6 (again, 6 U.S.C. §§ 101-681g)—and none of those provisions takes the authority over TPS terminations from the Attorney General and passes it to the DHS Secretary.

Renewed Motion to Postpone (ECF No. 96) at 9–10, *see also* Reply 3 n.1. The reorganization plan could have transferred various TPS powers from the Attorney General, but it did not. Neither did any other provision of Title 6; the government has cited no plausible candidate.

None of the cases recently decided before other district courts provides a convincing rationale supporting the government's preferred conclusion.[2] The first two such opinions are addressed in Plaintiffs' New Authority Letter Brief (ECF No. 107) at 1 (describing *African Communities Together v. Mullin*, No. 25-cv-13939 (PBS), 2026 WL 2274504 (D. Mass. Aug. 7, 2026) (Saris, J.) ("*ACT*"), and *Aung Doe v. Mullin*, No. 25 Civ. 15483 (MFK), 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) (Kennelly, J.) ("*Aung Doe*")). *ACT* acknowledged that either party's reading of § 1103 renders at least some statutory text "redundant" and therefore superfluous. 2026 WL 2274504 at *3–*4.[3] *Aung Doe*, in contrast, relies on an unconvincing reading of the pre-

[2] The government claims the "[l]ower courts universally adopted this construction" even prior to *Mullin*, MTD at 10, but in none of the cases it cites does it appear that the issue was "actually joined or seriously contested by the parties," Motion to Postpone (ECF No. 96) at 10 n.3. *See* MTD at 10-11 (citing *Mejia Rodriguez v. DHS*, 562 F.3d 1137 (11th Cir. 2009) and *Saget v. Trump*, 375 F. Supp. 3d 280 (E.D.N.Y. 2019)).

[3] *ACT* correctly recognizes that the provisions *Mullin* cited (6 U.S.C. § 552(d) and 557) "are housekeeping provisions" operating only "wherever a substantive transfer of authority has occurred." *Id*. at *3 n.2.

Homeland Security Act text,[4] ignoring that Congress made wholesale changes to it in 2002, 2026 WL 2279577 at *7–*8, and also ignores the paradoxes created by a reading that insists § 1103(g) cannot be redundant, *id*. at *8. Most importantly, neither opinion resolves the fact that the government's reading would invalidate the Attorney General's Alien Terrorist Removal Court and denaturalization powers. *See, e.g.*, *ACT*, 2026 WL 2274504 at *4 n.3; *Aung Doe*, 2026 WL 2279577 at *8. Judge Murphy's decision regarding Ethiopia contains no new reasoning whatsoever, rejecting the *ultra vires* argument "[f]or substantially the reasons set forth by those Courts." *African Communities Together v. Mullin*, No. CV 26-10278-BEM, 2026 WL 2408737 at *5 (D. Mass. Aug. 18, 2026).

Plaintiffs' argument is not "self-defeating," MTD at 11, for the reasons set forth in their Reply at 6–7 and nn.8–9 and their Renewed Motion to Postpone at 11-12 n.5. As Plaintiffs noted previously, "when the cited basis for an agency program turns out to be invalid, the APA requires the government to explore alternatives to outright termination." *Id*. at 11 n.5 (citing *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 24–28 (2020). As the Supreme Court noted in *Mullin*, 146 S. Ct. at 2128, before the TPS statute, "the Executive Branch sometimes provided similar relief as a matter of discretion without any express statutory authorization." Moreover, the fact that TPS holders are vetted and approved individually by DHS pursuant to valid regulations (*see* Am. Compl. ¶ 33; Reply at 7 n.9) creates "mutually explicit understandings" giving them cognizable reliance interests. *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

---

[4] The opinion seems to reason that paragraphs 8-11 of § 1103(a) could not possibly have meant to retain powers to the Attorney General, 2026 WL 2279577 at *7, but offers no basis for that belief. (Some of these powers may have eventually been transferred by the reorganization plan.)

It bears noting that, of course, there will be significant consequences to a decision in Plaintiffs' favor. But there would likewise be drastic changes wrought to the immigration system if this Court were to adopt the government's position. Indeed, the government's litigation position in these cases with respect to the exclusivity of § 1103(g) and Judge Saris' opinion accepting it in *ACT* have already been noted in a motion to invalidate proceedings commenced by the Attorney General before the Alien Terrorist Removal Court. *See* Motion for Release, *In re Haji Zada*, No. 2026-trc-1 (A.T.R.C. Aug. 14, 2026), at 10–11 (attached as Exhibit A).

## II. APA claims

If the TPS statute's references to the Attorney General are all still in place, then the jurisdiction-stripping provision of 8 U.S.C. § 1254a(b)(5)(A) must protect only his "determinations" from review. As a consequence, Plaintiffs' APA claims all remain viable notwithstanding *Mullin*, including those based on (1) the failure to engage in statutory consultation, (2) preordination, (3) unexplained deviation from past practice, and (4) consideration of impermissible factors. None of the DHS Secretary's decisions would be protected by the statutory bar on reviewing the Attorney General's determinations.

## III. Equal Protection claims

### A. This Court Has Jurisdiction Over Plaintiffs' Equal Protection Claim

The TPS review bar does not deprive this Court of jurisdiction over Plaintiffs' equal protection claim. *Mullin* declined to hold that the TPS statute's jurisdictional bar reaches constitutional claims. Under *Webster v. Doe*, Congress must clearly express an intent to preclude constitutional review, and § 1254a(b)(5)(A) contains no such clear statement. 486 U.S. 592, 603 (1988); *see* Renewed Motion to Postpone at 18. The same clear-statement rule also preserves review of Plaintiffs' procedural due process claim, addressed in Section IV.

Plaintiffs' equal protection claim remains reviewable whether based on national origin or, alternatively, ethnicity, race, or religion. Am. Compl. ¶ 182. The review bar does not prevent the Court from considering the termination notice and the events leading to termination as evidence of discriminatory purpose. *See* Section III.D.

### B. *Mullin* Does Not Foreclose a National-Origin-Based Equal Protection Claim

*Mullin* does not control whether the Amended Complaint states a plausible claim, as, two federal courts have recognized in allowing similar constitutional challenges to TPS terminations to proceed post-*Mullin*. *See Aung Doe*, 2026 WL 2279577 at *10-*11 (denying motion to dismiss race-based equal protection claim against the termination of TPS for Burma); *African Communities Together*, 2026 WL 2408737 at *6-*7 (same for equal protection claim alleging racial or national-origin animus against the termination of TPS for Ethiopia).

Defendants' Somalia authority, MTD at 17, denied a motion to postpone the termination of Somalia's TPS designation. It did not decide a motion to dismiss. The Somalia court's statement that "it cannot discern a path" to likely success concerned the race claim. On national origin, the court recognized that theory as one "not addressed by *Mullin*" and withheld relief only because "at least at this stage of the litigation" the law was unsettled and a likelihood of success had not been shown. *African Communities Together v. Mullin*, No. 26-cv-11201-ADB, 2026 WL 2364398, at *9 (D. Mass. Aug. 14, 2026). The decision says nothing about whether a national-origin claim survives a motion to dismiss.

This Court's July 20 order applied *Mullin* to the question a motion for stay asks—whether the Government had made a "strong showing" that it was likely to succeed on appeal—and concluded, for purposes of the indicative ruling, that Plaintiffs were "not likely to succeed on the merits" of their equal protection claims. ECF No. 89 at 3–6. Rule 12(b)(6) asks whether the

pleaded facts permit a reasonable inference of discriminatory purpose, and on that question the Court does not weigh the Government's explanation against Plaintiffs' inference and choose the stronger. *See* Section III.C. Nor are these allegations a stretch: the Court itself observed that, considered on their own terms, the "might very well" support the conclusion Justice Kagan reached in *Mullin*. ECF No. 89 at 5. While *Mullin* considered some of these broader statements from government officials expressing antipathy toward travelers from travel-ban countries, it evaluated whether those statements evidenced racial discrimination, not discrimination based on national origin. An inquiry into Plaintiffs' *national-origin*-based discrimination claim for the termination of TPS for Yemen will necessitate a different record.

**C. Plaintiffs Plead a Plausible Equal Protection Claim**

An alternative explanation defeats a claim only when it renders the plaintiff's inference implausible, not merely less likely. *Hassan v. City of New York*, 804 F.3d 277, 297 (3d Cir. 2015) (dismissal proper "only when [a] defendant's plausible alternative explanation is so convincing" as to render the plaintiff's "implausible"); *Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019); *see Iqbal*, 556 U.S. at 678, 682 (investigation of an attack carried out by Arab Muslims explained the detention of Arab Muslim men). The one Defendants offer does not. MTD at 13. In *National Rifle Ass'n of America v. Vullo*, which postdates *Twombly* and *Iqbal*, the Supreme Court applied the pleading standard from those cases and held it improper to "simply credit" the defendant's "obvious alternative explanation" without considering the allegations as a whole. 602 U.S. 175, 195 (2024). The Court relied on the official's own stated purpose, read together with her acts, in rejecting the alternative explanation offered for those acts and instead finding the plaintiffs' allegations plausible. In the Second Circuit, "[t]he test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Palin*, 940 F.3d at 815.

The Court likewise may not choose between two plausible inferences drawn from the pleaded facts on a motion to dismiss. *Lynch*, 952 F.3d at 75.

The Burma court considered and rejected the argument that *Mullin*'s "strong, race-neutral explanation" defeats an equal protection claim at the pleading stage. "If that is enough to defeat the race-discrimination claim, then it is hard to see what evidence, short of an outright admission that racial animus motivated the decision to terminate TPS, would help the plaintiffs." *Aung Doe*, 2026 WL 2279577, at *11. *Arlington Heights* "calls for a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available,'" and officials "seldom, if ever, announce on the record" a discriminatory purpose. *Id.* (quoting *Arlington Heights*, 429 U.S. at 266, and *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)). The court denied dismissal on allegations it described as "much of the same evidence" *Mullin* considered and a theory "less about discrimination against Burma in particular" than about race generally. *Id.* The Ethiopia court adopted that reasoning "[f]or these same reasons." *African Communities Together*, 2026 WL 2408737, at *7. The allegations here are Yemen-specific and go beyond public statements: the decisionmaker called the nationals of the travel-ban countries killers and leeches and declared not one of them wanted, her agency suspended adjudication of every pending application from those nationals the next day, identified by birth or citizenship, and the Termination Notice invoked the Proclamation defining that group as a reason to terminate Yemen's designation. Am. Compl. ¶¶ 47–50, 137. Neither a general stance on immigration nor antipathy toward TPS explains why each of those acts drew its line by nationality. A court in this District denied dismissal of an equal protection claim despite the agency's stated nondiscriminatory rationale for its action, because alleged procedural departures and indications that the stated rationale "may have been pretextual" supported a plausible inference of discriminatory purpose, and because evaluating the

agency's explanation for a departure "is premature" on a motion to dismiss. *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 808–09 (S.D.N.Y. 2018).

To meet the plausibility standard, Plaintiffs need only allege facts that "raise a reasonable expectation that discovery will reveal evidence" of discrimination, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 556). Taken together, the allegations concerning Secretary Noem's statements, the sequence of events, and her own findings support an inference that national-origin discrimination was *a* motivating factor in Yemen's termination. Discovery in related TPS litigation has already revealed that USCIS drafted memoranda recommending termination of TPS for Honduras and Nicaragua before the drafters reviewed USCIS's country-condition reports. Am. Compl. ¶ 101. Comparable internal communications concerning Yemen could further substantiate Plaintiffs' allegation that Secretary Noem's expressed hostility toward the affected nationals influenced her termination decision. As *Aung Doe* recognized after *Mullin*, "evidence of internal decisionmaking may reveal a discriminatory motive not clearly reflected in public statements." *Aung Doe v. Mullin*, No. 25 C 15483, 2026 WL 1983721, at *6 (N.D. Ill. July 9, 2026).

**D. The Court May Consider the Safety Finding as Evidence of Discriminatory Purpose.**

The review bar does not exclude the Secretary's safety finding from the inquiry into discriminatory purpose. Review of the merits asks whether the termination was correct or lawful. That is the review *Mullin* held the bar forecloses, in claims that challenge "the process that led to [the Secretary's] final decision." 146 S. Ct. at 2134. The purpose inquiry asks whether discriminatory purpose was "a motivating factor" in the decision, *Arlington Heights*, 429 U.S. at 265–66, which, where the decisionmaker has given a reason, asks whether that reason was the reason she

acted. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 147 (2000); *New York v. U.S. Dep't of Commerce*, 315 F. Supp. 3d 766, 809 (S.D.N.Y. 2018) (applying *Reeves* to an equal protection claim against federal agency action). *Arlington Heights* draws that line, distinguishing the deference owed to a discretionary decision's merits from the inquiry into its purpose. 429 U.S. at 265–67.

Considering the safety finding does not go to the substantive merits, because the inference Plaintiffs draw does not require the Court to determine whether the Secretary's judgments about conditions in Yemen or the national interest were correct. Whether or not the termination was lawful, it was entered against the Secretary's own finding that Yemeni nationals cannot safely return. Am. Compl. ¶ 55. No other termination notice contains that finding. Am. Compl. ¶ 50; ECF No. 24 at 4–5; ECF No. 54 at 14 & n.9. Seven prior Yemen notices had treated it as the reason for protection, Am. Compl. ¶ 61, and the Notice itself acknowledges that "there may appear to be some tension" within its own findings about the safety of return. *Id.* ¶ 56. The question that fact raises is not whether she should have terminated. It is whether the reason she gave was the reason she acted, seventeen days after declaring that not one of the affected nationals was wanted in this country. That question is about why the decision was made, not whether it was right. It is the question *Reeves* asks of every stated reason, and the one *Arlington Heights* asks when it directs courts to consider whether "the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." 429 U.S. at 267. Defendants themselves read the notices for their content: they compare the national-interest rationale in Yemen's notice with the rationales in other notices that also terminated on national-interest grounds. MTD at 16–17. A notice that may be read to show what the Secretary argued may be read to show what she found.

The ruling this motion requires is narrow. The safety finding is a fact pleaded in the Amended Complaint from the Secretary's own published notice. Am. Compl. ¶¶ 50, 55–56. Denying the motion requires only that it be treated as every other pleaded fact is treated on a motion to dismiss: accepted as true and considered for what it shows. Dismissing on Defendants' theory requires the opposite holding, that a finding the Secretary made in the course of a determination shielded from review could never support an inference about her purpose, whatever the record shows. It would follow that the substantive-departures factor *Arlington Heights* prescribes has no application to such a determination wherever the departure appears in the decisionmaker's own findings.

Nor can the jurisdictional bar be read to exclude the finding without the clear statement Section III.A shows it lacks. A reading that preserves the constitutional claim but forbids the Court to consider the Secretary's own published finding in deciding would preclude the claim in part, yet the jurisdictional bar shows no clear intent to bar such claims. Courts adjudicating constitutional claims about unreviewable decisions examine those decisions. The Second Circuit held that a discretionary prisoner-transfer denial remained reviewable for constitutional claims of race and national-origin discrimination even though the APA barred ordinary review of its merits. *Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir. 1999). In *Dubbs v. CIA*, the Ninth Circuit considered an agency's denial letter and stated security concerns as evidence of a discriminatory policy in a security-clearance decision the APA otherwise might have placed beyond judicial review. 866 F.2d 1114, 1119–21 (9th Cir. 1989). And the Second Circuit has treated discretionary decisions as evidence of discriminatory purpose. *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1235 (2d Cir. 1987).

**E. The Combined Allegations Support an Inference of Discriminatory Purpose.**

The sequence of events pleaded in the Amended Complaint, from December 1 to December 18, 2025, connects Secretary Noem's condemnation of Yemenis, among the nationals of the travel-ban countries, to Yemen's termination. On December 1, 2025, she accused travel-ban countries of "flooding our nation with killers, leeches, and entitlement junkies" and declared: "WE DON'T WANT THEM. NOT ONE." Am. Compl. ¶ 48. The next day, USCIS ordered a hold on benefit requests based on birth or citizenship in those countries, including Yemen. *Id.* ¶ 49; USCIS, PM-602-0192, at 1 & n.3 (Dec. 2, 2025). Secretary Noem signed Yemen's termination memorandum on December 18. Am. Compl. ¶ 50; ECF No. 48 at 19. The Termination Notice invoked the same travel ban. Am. Compl. ¶ 137; 91 Fed. Reg. at 10,406–07.

Secretary Noem's statements support an inference that national-origin hostility influenced her decision to end a decade of TPS protection for Yemenis. Her expressed desire to exclude those nationals supports an inference that national-origin hostility influenced Yemen's termination despite the Notice's acknowledgment of impediments to safe return. Am. Compl. ¶¶ 48–50. Defendants emphasize that the remarks were fewer and less specific than those about Haitians. MTD at 15. Yet even one remark by the decisionmaker, considered in context, can support an inference of discriminatory purpose. *Arlington Heights* requires considering those circumstances together. 429 U.S. at 267–68. In *Schiebel v. Schoharie Central School District*, a decisionmaker's remark, considered with procedural irregularities, supported an inference of discrimination although it did not expressly refer to sex. 120 F.4th 1082, 1104–06 (2d Cir. 2024). *Regents* does not foreclose that inference: there, plaintiffs identified no statements of animus by the Secretary or the Attorney General advising her, and the President's remarks were remote or unrelated. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34–35 (2020) (plurality opinion).

Here, Secretary Noem spoke seventeen days before she signed the memorandum terminating Yemen's designation. Her acknowledgment that DHS took the President's direction also connects his characterization of people "coming out of Yemen" as "known terrorists" to the decision. Am. Compl. ¶¶ 51, 116–22. That her statement encompassed other nationalities does not, by itself, foreclose an inference of discriminatory purpose toward Yemenis. *See Hunter v. Underwood*, 471 U.S. 222, 231–32 (1985).

Defendants' assertion that there was a general anti-TPS policy does not categorically exclude an additional discriminatory motive. MTD at 13; *Arlington Heights*, 429 U.S. at 265–66.[5] Under *Iqbal*, a reasonable inference of discrimination need not be the most likely explanation of the alleged conduct. *Schiebel*, 120 F.4th at 1106 (citing *Iqbal*, 556 U.S. at 678). Nor may the Court conclude that there was a lawful explanation by considering the allegations in isolation. *Vullo*, 602 U.S. at 194–96. If Plaintiffs establish that national-origin hostility was a motivating factor in Yemen's termination, Defendants must prove that they would have made the same decision without it. Identifying a general anti-TPS policy does not alone establish that the policy would independently have produced Yemen's termination. *Arlington Heights*, 429 U.S. at 270–71

---

[5] Defendants preserve an argument for rational-basis review, but presume *Arlington Heights* applies. MTD at 12 n.4. *Trump v. Hawaii*, 585 U.S. 667, 702, 705 n.5 (2018), concerned entry restrictions; this case concerns protection for people already here. *United States v. Suquilanda*, 116 F.4th 129, 139–40 (2d Cir. 2024), rejected the contention that federal immigration laws necessarily receive rational-basis review and applied *Arlington Heights* to an equal protection challenge to criminal penalties for unauthorized reentry after removal. Even under *Hawaii*, the inquiry is whether the action "can reasonably be understood to result from a justification independent of unconstitutional grounds." 585 U.S. at 705. Secretary Noem's statements, the sequence, and her acknowledgment of impediments to safe return support an inference that the asserted justifications were a pretext for collective exclusion. Am. Compl. ¶¶ 48-50, 55–58. Unlike *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008), where alleged anti-Muslim motive rested solely on countries' religious demographics, Plaintiffs rely on Noem's words and conduct. National origin is Plaintiffs' principal theory; religion, race, and ethnicity are pleaded alternatively. Am. Compl. ¶ 182; Fed. R. Civ. P. 8(d)(2).

n.21; *MHANY Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 613–14 (2d Cir. 2016). That affirmative defense supports dismissal only if established on the face of the Complaint. Plaintiffs need not plead its absence. *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015). The combined allegations state an equal protection claim, and the motion to dismiss should be denied as to that claim.

### IV. Due Process claims

The presence of a sufficiently strong liberty or property interest is what creates a procedural due process right. For Yemenis who have received or are eligible for TPS, the serious life consequences that would result from losing that status are what give constitutional dimension to the processes attending its withdrawal. The government's jurisdictional argument, MTD at 19–21, is really an excuse to complain that the constitutional arguments are repackaged statutory ones. But as Plaintiffs have previously explained, "TPS holders have strong interests here that are protected by the Fifth Amendment, and it is those strong interests—created by statute—that 'constitutionalize' their claims to statutory process," Reply at 1.[6]

It is irrelevant for present purposes that the procedural defects Plaintiffs complain of are "the same alleged defects that were before the Supreme Court [on preliminary relief]," MTD at 20. Plaintiffs have cited cases where denials of statutorily mandated process were found to overlap precisely with constitutional due process violations. *See* Reply at 10 (citing *Reid v. Bondi*, 132 F.4th 109, 127 (2d Cir. 2024) and *Romero Marroquin de Rodriquez v. Hyde*, 2026 WL

[6] Judge Burroughs' recent decision in the Somalia TPS litigation accepts the government's jurisdictional argument to the extent the due process claims are funneled thru the APA, but offers no reasoning in favor of it. *See African Communities Together v. Mullin*, 2026 WL 2364398 at *11. To the extent the procedural due process claims were standalone constitutional claims, like those in this case, see Am. Compl. (ECF No. 85) at ¶¶ 185-89, Judge Burroughs considered them on the merits. *See ACT*, 2026 WL 2364398 at *6-*8.

220416, at *4 (D. Mass. Jan. 28, 2026)). The government cites no case to the contrary; its two case citations have nothing to do with due process.[7] That does not render the jurisdiction-stripping provision entirely meaningless, as is implicit in the government's brief, MTD at 20–21; it might eliminate any *expectation* regarding, for example, the substantive weight to be accorded a specific item of evidence by the Secretary. Absent a legitimate expectation of entitlement to a certain process, there would be no liberty/property interest. But the statute clearly creates an entitlement to the consultation process.

The government disputes this, arguing that Yemeni TPS holders lack "a legitimate claim of entitlement" and instead have only a "unilateral expectation" of the extension of Yemen's status. MTD at 21. But as Plaintiffs noted in their Reply on the Renewed Motion to Postpone, "[a] recipient [of a government benefit] has a protected entitlement to an existing benefit when the government may withdraw it only on specified grounds." Reply at 8 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972), *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), *Kentucky Dep't of Corrections v. Thompson*, 490 U.S 454 (1989), and *Bellin v. McDonald*, 177 F.4th 167 (2d Cir. 2026)). The TPS statute is such a scheme: it mandates that the Attorney General "shall review" current conditions and "shall determine" whether the statutory conditions continue; absent a negative determination, the designation "is extended." 8 U.S.C. § 1254a(b)(3)(A)–(C)."

Congress created a protected entitlement to continued TPS benefits by requiring extension unless the Secretary determines that the country no longer meets the designation conditions. 8 U.S.C. § 1254a(b)(3)(B)–(C). In *Cleveland Bd. of Educ. v. Loudermill*, the Supreme Court rec-

---

[7] *See* MTD at 20 (citing *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982) (concerning recharacterizing tort claims to avoid application of FTCA bar on libel/slander actions); *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) (concerning recharacterizing claims to evade federal labor law preemption)).

ognized a property interest in continued employment because the statute entitled employees to retain their positions unless discharged for cause. 470 U.S. 532, 538–39 (1985). The TPS statute likewise guarantees continuation subject to specified termination grounds, unlike the one-year appointment in *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 578 (1972), which "made no provision for renewal whatsoever" and "secured absolutely no interest in re-employment." 408 U.S. 564, 578 (1972). TPS holders receive mandatory employment authorization and protection against removal and detention based on immigration status. 8 U.S.C. § 1254a(a)(1), (d)(4). These protections secure livelihood and liberty. *See Bell v. Burson*, 402 U.S. 535, 539 (1971); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

TPS applicants likewise possess a protected interest in mandatory interim benefits that does not depend on final TPS approval. *Contra* MTD at 23 n.7. Section 1254a(a)(4)(B) mandates employment authorization and removal protection upon prima facie eligibility pending a final eligibility determination. That interim employment authorization is a protected property interest. *Mansor v. USCIS*, 830 F.Supp.3d 1082, 1094 (W.D. Wash. 2025); *see also Kapps v. Wing*, 404 F.3d 105, 116–17 (2d Cir. 2005) (recognizing applicants' protected interests in mandatory benefits). Termination foreclosed applicants' access to those benefits. Am. Compl. ¶¶ 141, 156.

The decisionmaker's discretion in applying termination criteria does not eliminate the statutory requirement to extend TPS absent the finding required for termination. The TPS statute satisfies the test Defendants invoke: "substantive limitations on official discretion" and a mandatory outcome when "relevant criteria have been met." MTD at 22 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989)). Termination requires a finding that the country no longer meets the designation conditions; absent that finding, the designation "is extended." 8 U.S.C. § 1254a(b)(3)(B)–(C). *Thompson* found no entitlement because the correctional regulations did

not require admission of a prison visitor even when no listed ground for exclusion applied. 490 U.S. at 464–65. But *Board of Pardons v. Allen* recognized a protected liberty interest in parole even though the board had broad discretion to decide whether releasing a prisoner would serve society's best interests. The statute created that interest by requiring release once the board found the statutory criteria satisfied. 482 U.S. 369, 375–78 (1987). The Second Circuit likewise holds that discretion in applying eligibility criteria does not defeat a protected property interest when the law mandates benefits once those criteria are found satisfied. *Bellin v. McDonald*, 177 F.4th 167, 190–92 (2d Cir. 2026) (recognizing a protected interest in 24-hour Medicaid home care despite the professional judgment required to assess a patient's needs). That same distinction applies here: Congress replaced the ad hoc extended voluntary departure regime with a TPS framework that imposes binding limits on official discretion. Am. Compl. ¶¶ 21–25.

Discretion over initial grants cannot erase Congress's protections for existing holders. *Contra* MTD at 21–23. Individual withdrawal is confined to specified grounds. 8 U.S.C. § 1254a(c)(3). *Hernandez v. Sessions* concerned a discretionary waiver of statutory ineligibility, not withdrawal of existing protections. 884 F.3d 107, 112 (2d Cir. 2018).[8] Defendants rely on Justice Thomas's description of TPS as a government-created privilege in a concurrence no other Justice joined. *Mullin*, 146 S. Ct. at 2143 (Thomas, J., concurring). But calling a statutory entitlement a "privilege" does not defeat procedural protection. *Bell*, 402 U.S. at 539.

[8] *Tobar* concerned individual TPS eligibility; *Bah*, review of an individual denial. Neither addressed process before a country designation's termination. *Tobar v. Garland*, 65 F.4th 195, 196–98 (5th Cir. 2023); *Bah v. Cangemi*, 548 F.3d 680, 685-86 (8th Cir. 2008). *CASA*'s observation about TPS's temporary nature addressed APA reliance interests. *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018). *Portillo-Rendon v. Holder* rejected a challenge to discretionary relief without an identified protected interest or specific procedural deprivation. 662 F.3d 815, 817 (7th Cir. 2011).

Defendants' cases rejecting individualized hearings before the government adopts a general policy do not foreclose Plaintiffs' challenge to the constitutional adequacy of the country-wide termination process. MTD at 23–24. In *Nozzi v. Hous. Auth. of City of L.A.*, the Ninth Circuit held that a housing agency violated due process by implementing a program-wide benefit reduction without adequate notice, although recipients sought no individual hearings. 806 F.3d 1178, 1192 n.16, 1193–99 (9th Cir. 2015). Here, Plaintiffs seek meaningful consultation, country review, and notice through a common process for the termination decision affecting both classes. Plaintiffs have previously cited numerous cases where "federal courts have found procedural due process violations even where the government makes a decision that impacts a large group of people who individually have constitutionally protected interests." *See* Reply at 10–12.

The severe consequences of termination and the value of meaningful consultation and review outweigh their limited administrative burden. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Termination threatens Plaintiffs' livelihoods and exposes them to removal; holders also lose protection against detention based on immigration status. ECF No. 54 at 31–34. Consultation brings other agencies' information and expertise into the review, reducing the risk of erroneously terminating protection on an incomplete record. Due process here requires the government to gather and assess the relevant country information through meaningful consultation and review before deciding to withdraw Plaintiffs' protected benefits. Publication then gives Plaintiffs notice of the decision and its reasons. These safeguards serve both classes through a common process and require no new administrative machinery: Congress already prescribes them. 8 U.S.C. § 1254a(b)(3)(A)–(B).

This Court previously described the consultation process engaged in by DHS as consisting of perfunctory emails that exchanged no country-conditions information. ECF No. 54 at 25–

26 & n.13, 28; Am. Compl. ¶ 60. Declaring TPS "lawfully terminated" assumes the adequacy of that process. MTD at 23–25. The constitutional question is whether Plaintiffs received meaningful safeguards before losing their protected benefits, or whether a predetermined outcome rendered those safeguards ineffective. *United States v. Caceres* (cited at MTD at 24-25) involved recording rules that neither the statute nor the Constitution required, and distinguished safeguards ensuring fairness in deportation proceedings. 440 U.S. 741, 749–53 (1979). Here, *Mathews* independently requires these safeguards. *Cf. Loudermill*, 470 U.S. at 541. Defendants' motion to dismiss Plaintiffs' procedural due process claims should be denied.

**CONCLUSION**

Plaintiffs respectfully ask the Court to deny Defendants' Motion to Dismiss.

Dated: September 11, 2026

Respectfully submitted,

/s/*Shayana Kadidal*
Shayana Kadidal [SK-1278]
Angelo Guisado
Baher Azmy [BA-8406]
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6451
kadidal@ccrjustice.org
aguisado@ccrjustice.org
bazmy@ccrjustice.org

Razeen Zaman
Helen Anne Schutz Lo
Dinesh McCoy*
Phi Nguyen*
Niji Jain
ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Tel: (212) 966-5932
rzaman@aaldef.org

alo@aaldef.org
dmccoy@aaldef.org
pnguyen@aaldef.org
njain@aaldef.org

*Counsel for Plaintiffs*

**Application for admission Pro Hac Vice forthcoming*