**EXHIBIT A**

Motion for Release, *In re Haji Zada*, No. 2026-trc-1 (A.T.R.C. Aug. 14, 2026)

FILED
AUG 14 2026
Clerk, Alien Terrorist Removal Court of the United States

ALIEN TERRORIST REMOVAL COURT
OF THE UNITED STATES

| | |
|---|---|
| IN THE MATTER OF<br>NAZIRA HAJI ZADA,<br><br>Respondent. | Case No. 2026-trc-1 (JNE) |

**RESPONDENT'S MOTION FOR A PROMPT RELEASE HEARING AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELEASE**

Unable to present sufficient evidence to obtain a criminal indictment against Nazira Haji Zada or establish by clear and convincing evidence that she should be removed from the United States through proceedings pursuant to 8 U.S.C. § 1229 *et seq.*, the government, through the Attorney General, has filed an application seeking to use for the first time the highly-criticized law establishing this Court to obtain an order of removal based on the preponderance of the evidence, while hiding that evidence from Ms. Haji Zada and her counsel. Pending a hearing on the application for removal, the government seeks to detain Ms. Haji Zada without bond. At Ms. Haji Zada's first hearing before the Court, her counsel asked the Court to schedule a release hearing as soon as practicable—proposing dates within a week. The Court's earliest availability was August 11, 2026, and the release hearing was scheduled for that date. After government counsel notified Ms. Haji Zada's counsel that the government would not disclose the evidence that allegedly supports her detention and removal, Ms. Haji Zada, through undersigned counsel, filed a motion to compel classified discovery in advance of the release hearing. On August 10, 2026, the Court *sua sponte* cancelled the August 11 release hearing and set a briefing schedule on Ms. Haji Zada's motion to compel. The order did not set a date for a rescheduled release hearing. Ms. Haji Zada has been unlawfully detained since July 28, 2026, based on a statute that is

facially unconstitutional and an application that did not comply with the law, and without an opportunity for her, or her cleared counsel, to review the evidence that will be used against her.

Ms. Haji Zada asks the Court to reschedule her release hearing for August 18, 2026. The Court has already ordered the government to respond to Ms. Haji Zada's motion to compel by Friday, August 14. The Court should order the government to respond to this motion and the arguments in support of Ms. Haji Zada's release on the same day, in advance of an August 18 release hearing. For the reasons set forth below, and such other reasons as may be presented at the hearing, the detention of Ms. Haji Zada is unlawful, and she would not be a danger to the community if released on conditions. The Court, therefore, should order her released to the third-party custody of her husband and daughter, under home detention with electronic monitoring supervised by the District of Columbia Pretrial Services Agency through the United States Probation and Pretrial Services Office of the Northern District of Texas.

**Factual and Procedural Background**

On July 15, 2025, the Acting Attorney General filed under seal an *ex parte* Application to United States Alien Terrorist Removal Court Pursuant to 8 U.S.C. § 1531 ("Application"), seeking to remove Ms. Haji Zada, a lawful permanent resident of the United States. In response, on July 16, 2026, the Court held an *ex parte* hearing under seal and "had questions about the nexus that the government alleges between the actions of [Ms. Haji Zada] and the specific sections and subsections [the government] invoke[d] with respect to those actions." *See* Order (Jul. 16, 2026). The Court ordered the government to "supplement its application consistent with

the matters discussed during the hearing and, in addition, provide any further factual and legal analysis to satisfy its statutory obligations." *Id.*

On July 22, 2026, the government filed, *ex parte* and under seal, a Supplement to Application to United States Alien Terrorist Removal Court Pursuant to 8 U.S.C. § 1531 *et seq.* "Application Supplement").[1] On July 27, 2026, based on these sealed *ex parte* filings, the Court found probable cause to grant the application, noting that probable cause "'is not a high bar.'" Order (Jul. 27, 2026) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). The Court found that the government met its burden to demonstrate that removal proceedings under 8 U.S.C. § 1229 *et seq.*, the proceedings otherwise used for immigration matters, would pose a risk to the national security of the United States. In other words, the government demonstrated that it did not have sufficient evidence apart from classified evidence—the disclosure of which could risk national security—to seek Ms. Haji Zada's removal under § 1229 *et seq.*

After the application was granted, the government moved to unseal and redact the Unclassified Application for Removal of Nazira Haji Zada and Exhibits A, C and E, and the Court granted that motion. The Application and Application Supplement, along with Exhibits B, C-1, D, F, G, and H, remain *ex parte* and under seal. The government has denied Ms. Haji Zada's counsel access to these materials although one of her attorneys possesses the necessary security

[1] Attached to the government's sealed, *ex parte* Application and Application Supplement were: Exhibit A ("Certification of the Application for Removal of Nazira Haji Zada"); Exhibit B ("Classified FBI Declaration in Support of Application for Removal of Nazira Haji Zada"); Exhibit C (Unclassified ICE Declaration in Support of Application for Removal of Nazira Haji Zada"); Exhibit C-1 ("Classified Addendum to ICE Declaration in Support of Application for Removal of Nazira Haji Zada"); Exhibit D ("Classified In Camera, Ex Parte Declaration of Jarod Brown, Assistant Director, Counterterrorism Division, Federal Bureau of Investigation"); Exhibit E ("Unclassified Summary – Nazira Haji Zada ATRC Referral"); Exhibit F (proposed arrest warrant); Exhibit G (Classified Supplemental FBI Declaration); and Exhibit H (Supplemental Classified Addendum to ICE Declaration in Support of Application for Removal of Nazira Haji Zada).

clearance to review classified materials. Thus, neither Ms. Haji Zada nor her counsel have seen the evidence that allegedly supports her removal.

On July 28, 2026, agents of the Federal Bureau of Investigations ("FBI") took Ms. Haji Zada from her Texas home at approximately 6 a.m., arrested her, placed her on an airplane, and brought her to Washington, D.C. to appear before this Court. She was held for two nights in the Central Cell Block without access to her family or legal counsel before appearing before the Court. Ms. Haji Zada is now in the custody of the D.C. Department of Corrections despite that she has not been charged with a crime.

On July 30, 2026, the Court convened the Alien Terrorist Removal Court's first hearing. At that hearing, the Court pressed the government to explain on the record the evidence that allegedly supports the government's claim that Ms. Haji Zada was an "Alien Terrorist." The government proved unable to do so—instead merely reciting parts of the proposed three-paragraph "summary" of the evidence contained in Gov't Ex E.[2] One paragraph simply states the reason the evidence is classified. Another paragraph summarizes the conspiracy charges brought against Ms. Haji Zada's son and son-in-law in the Western District of Oklahoma. The third paragraph makes only conclusionary statements that Ms. Haji Zada (1) supports and pledged loyalty to ISIS; (2) supported her son and son-in-law's conspiracy; (3) indoctrinated her children with ISIS ideology and had them pledge loyalty to ISIS; and (4) worked with her son-in-law to radicalize her family and conceal their pro-ISIS teaching and planned relocation to ISIS-controlled territory from her husband. *See* Gov't Ex. E. The unclassified summary offers no

---

[2] The Court has not approve this unclassified summary submitted as Gov't Ex E as "sufficient to enable [Ms. Haji Zada] to prepare a defense," as required by 8 U.S.C. § 1534(e)(3)(C). Instead, the Court directed the government to file another unclassified summary that comports with the statute and rules by August 14, 2026.

evidentiary support for those claims but instead claims that an unidentified source provided the information, claiming the source previously provided reliable and corroborated information. *Id.*

The other materials provided to undersigned counsel similarly offer no insight into the alleged support for the allegations against Ms. Zada. The unclassified Application simply describes the exhibits submitted by the government and makes conclusory statements that the exhibits support is application. *See* Unclassified Application. The unclassified declaration of an FBI agent attached to the Application states only that the FBI agent reviewed the classified evidence, without indicating what that evidence is. *See* Gov't Ex. C. The FBI declaration also acknowledges that "the only evidence to support deportation, removal proceedings" regarding Ms. Haji Zada is the classified information, *id.*, information that has not been disclosed to Ms. Haji Zada or her cleared counsel.

At the hearing on July 30, 2026, the Court denied Ms. Haji Zada's motion for immediate release, without asking for a government response. Ms. Haji Zada then asked the Court to schedule a release hearing as soon as practicable. The Court's earliest availability was August 11, 2026. Ms. Haji Zada also requested that the government produce the classified discovery to her cleared counsel no later than one week before the scheduled hearing, on August 4, 2026, and the Court indicated that the government should make an effort to do so.

On the evening of August 5, 2026, the government informed counsel for Mr. Haji Zada that, absent an order from the Court, the government has no intention of letting cleared counsel review the classified evidence that allegedly supports the Application. The following evening, August 6, Ms. Haji Zada filed a motion to compel the government to make the classified evidence available for cleared counsel's review. The motion was docketed on August 7, 2026.

The day before the scheduled release hearing, the Court entered an order *sua sponte* cancelling the release hearing and instead setting a briefing schedule on Ms. Haji Zada's motion to compel.

As of the date of this filing, Ms. Haji Zada has been detained for two weeks without an opportunity to review the evidence that will be used against her or be heard at a release hearing.

**Argument**

## I. THE COURT SHOULD SCHEDULE A PROMPT RELEASE HEARING

Ms. Haji Zada respectfully requests the Court order the government to respond to the following arguments in support of her release motion by August 14, 2026, and schedule a release hearing for August 18, 2026. Undersigned counsel understands that the Court has ordered Ms. Haji Zada to file a reply on her motion to compel by August 21, but undersigned counsel will waive that written reply, in favor of an August 18 hearing and an opportunity to file a reply to the government's responses by August 17, 2026, or respond orally at the hearing.

Section 1536 requires the Court to hold a release hearing. Although the statute does not set a time within which the Court must hold the hearing, a release hearing scheduled almost one month after a lawful permanent resident is unlawfully arrested is effectively no release hearing at all. Ms. Haji Zada was arrested on July 28, 2026. She first appeared before this Court on July 30, 2026. The originally scheduled release hearing would already leave her detained for two weeks without an opportunity to challenge that detention. The Court has now cancelled Ms. Haji Zada's release hearing indicating it will be scheduled no sooner than August 21, 2026. August 21 is 24 days after Ms. Haji Zada was pulled out of her home in front of her family by the FBI. Since then, Ms. Haji Zada has been housed at a D.C. jail, a facility designed to detain those—unlike Ms. Haji Zada—charged with criminal offenses, including violent offenses.

Ms. Haji Zada was admitted as a permanent resident and is lawfully present in the United States. Even lawful permanent residents charged with violent criminal offenses are entitled to release hearings "immediately upon the person's first appearance before the judicial officer." 18 U.S.C. § 3142(f)(2). If the government seeks additional time to prepare for a detention hearing, that continuance "may not exceed three days," and even if the defendant himself seeks to delay a detention hearing, that continuance "may not exceed five days." *Id.* Detaining a respondent in this civil proceeding for almost a month when there have been no allegations that she committed, or attempted to commit, any act of violence and no charges that she committed any crime violates due process. Ms. Haji Zada is constitutionally entitled to a hearing as soon as possible.

## II. THE STATUTE AND THE CONSTITUTION SUPPORT RELEASE

Ms. Haji Zada should be released for at least four reasons. First, the statute creating the Alien Terrorist Removal Court is facially unconstitutional because it imposes far too low of a burden on the government to comply with due process. Second, the statute is unconstitutional as applied because Ms. Haji Zada has been given no opportunity to review the evidence against her. Third, Ms. Haji Zada is unlawfully detained because proceedings in this Court can be initiated by only the Secretary of Homeland Security, not the Attorney General. Fourth, Ms. Haji Zada should be released because she is neither a risk of flight nor a danger to the community.

### A. Detention is Unlawful Here Because the Authorizing Statute is Facially Unconstitutional

The statute establishing the Alien Terrorist Removal Court permits the government to deport a lawful permanent resident, without showing the resident any of the evidence entered against her, by proving that the lawful permanent resident is "subject to removal because the alien is an alien terrorist." 8 U.S.C. § 1534(g). Because this burden is unconstitutionally low, the

entire Alien Terrorist Removal Court statute is facially unconstitutional, and Ms. Haji Zada should not be detained pursuant to these proceedings.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Addington v. Texas,* 441 U.S. 418, 423 (1979) (quoting *In re Winship,* 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). The "more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 283 (1990). "For that reason, [the Court] ha[s] held that due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake ... are both 'particularly important' and 'more substantial than mere loss of money.'" *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (quoting *Santosky v. Kramer,* 455 U.S. 745, 756 (1982)). Deportation is certainly more serious than "money loss." *Id.*

The Supreme Court has long held "that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true." *Woodby v. INS*, 385 U.S. 276, 286 (1966). Indeed, it would make no sense if "a person may be banished from this country upon no higher degree of proof than applies in a negligence case," *i.e.*, a preponderance of the evidence—the standard the government hopes to apply in this case. *Id.* at 285. The Court reached this conclusion because it refused to "close[] its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land ...." *Id.*

Because no person can be ordered removed from the United States on anything less than clear and convincing evidence, the Alien Terrorist Removal Court statutory scheme which

permits removal based on a preponderance of the evidence can never be applied in accordance with due process. It is, therefore, facially unconstitutional because "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 793, 745 (1987). The Court should not detain Ms. Haji Zada pending proceedings that are unconstitutional.

**B. Detention is Unlawful Here Because the Authorizing Statute is Unconstitutional as Applied**

As discussed at length in Ms. Haji Zada's Motion to Compel Discovery, Ms. Haji Zada should be immediately released because neither she, nor cleared counsel, have been permitted to review the classified evidence allegedly supporting her detention and removal, including but not limited to the transcript of the *ex parte* July 16 hearing.

The Due Process Clause obligates the government to, at a minimum, give undersigned counsel an opportunity to review classified evidence before a release hearing. And the "Fifth Amendment's Due Process Clause forbids the government to 'depriv[e]' any 'person … of …. liberty …. Without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. 678, 690 (2001) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). That prohibition includes depriving a lawful permanent resident of her liberty pending removal proceedings without due process. The critical components of due process are notice and the opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The government's refusal to make any of the evidence which has been secretly presented against Ms. Haji Zada available for review plainly deprives her of both pillars of due process.

**C. Detention is Unlawful Here Because the Application was not Lawfully Filed**

Even if the Court finds that the law is not facially unconstitutional or unconstitutional as applied, the government's Application was not filed in compliance with the law and cannot

support detention. The Application was filed and certified by Acting Attorney General Todd W. Blanche, *see* Application, Gov't Ex. A, but only the Secretary of Homeland Security has the authority to file and certify such an application. *See* 8 U.S.C. § 1103(a).

Although the authorizing statute, 8 U.S.C. § 1531 *et seq.*, as passed in 1996 and amended in 2001, refers only to the Attorney General, Congress created the Department of Homeland Security in 2002, and in 2003, transferred the authority to administer and enforce immigration laws to the Secretary of Homeland Security with limited exceptions that do not apply here. Section 1103(a)(1) of the Homeland Security Act provides:

> The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, Attorney General, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers. *Provided, however,* that determination and ruling by the Attorney General with respect to all questions of law shall be controlling.

8 U.S.C. § 1103(a)(1) (emphasis in original). Section 1103(g) provides the only carve-out to the transfer of powers related to immigration matters from the Attorney General to the Secretary of Homeland Security:

> The Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the Executive Office for Immigration Review, or by the Attorney General with respect to the Executive Office for Immigration Review, on the day before the effective date of the Immigration Reform, Accountability and Security Enhancement Act of 2002.

8 U.S.C. § 1103(g)(1). As the government has argued in other matters, the authorities and functions exercised by the EOIR are the only authorities and functions related to immigration administration and enforcement retained by the Attorney General. *See African Communities Together, et. al v. Mullin*, 2026 WL 2274504, *3-4 (D. Mass. Aug. 7, 2026) (§ 1103(g)(1) defines

the only immigration-related duties retained by the Attorney General); *see also* 6 U.S.C. § 557 (with respect to functions transferred to the Department of Homeland Security, "reference in any other Federal law to any . . . officer or office the functions of which are so transferred shall be deemed to refer to the Secretary").

As the court explained in *African Communities*:

> This interpretation of § 1103 is . . . consistent with its "context[ ] and structure." *Bondi v. VanDerStok*, 604 U.S. 458, 484 (2025) (quoting *Van Buren v. United States*, 593 U.S. 374, 394 (2021)). Prior to 2002, § 1103(a) provided that the "Attorney General" was charged with immigration authority "except insofar as this chapter or [other immigration] laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers." 8 U.S.C. § 1103(a) (1996). Through the Homeland Security Act and the subsequent appropriations bill, Congress made only two amendments to § 1103: first, it replaced "Attorney General" with "Secretary of Homeland Security" in § 1103(a)(1) (and added "Attorney General" to the list of officials in § 1103(a)(1)'s "except" clause), and second, it added § 1103(g), which specifically defined the Attorney General's reserved powers "under this chapter and all other laws relating to the immigration and naturalization of aliens" (notably, the same language used in § 1103(a)(1)). *See* Homeland Security Act § 1102(2)(A), (3); Homeland Security Act Amendments § 105(1). This drafting history indicates that Congress likely intended § 1103(g)(1) -- along with other simultaneously or subsequently enacted statutory provisions, but not prior ones [like the Alien Terrorist Removal Court statute] -- to define the immigration powers retained by the Attorney General notwithstanding the transfer-of-authority provision contemporaneously enacted in § 1103(a)(1).

*Id.* at *4.

The powers of the Attorney General in the Alien Terrorist Removal Court were enacted in 1996 and amended in 2001, and in 2003—like all other powers related to immigration enforcement with the exception of those exercised by the Executive Office for Immigration Review—were transferred to the Department of Homeland Security. For this reason, no lawful application for Ms. Haji Zada's removal has been filed, and the Court has no authority to detain her based on an application file by the Attorney General. She, therefore, must be released.

### D. Ms. Haji Zada is Neither a Risk of Flight nor a Danger to the Community

Even if the authorizing authority were constitutional and a proper application had been filed, the Court must release Ms. Haji Zada. Section 1536(a)(2) provides if an application is filed against a lawful permanent resident, the lawful permanent resident "shall be detained" "unless the alien demonstrates to the court that" she "is lawfully admitted for permanent residence in the United States" and that "if released upon such terms and conditions as the court may prescribe … is not likely to flee" and "will not endanger national security, or the safety of any person in the community if release." The statute does not state the standard of proof required or list factors for the Court to consider, but "[f]aced with silence, courts usually apply the default preponderance standard." *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025). Statutory silence is generally 'inconsistent with the view that Congress intended to require a special, heightened standard of proof.'" *Id.* (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)).

Ms. Haji Zada, who is lawfully in the United States and not charged with a crime, should not be afforded less rights regarding detention than lawful permanent residents charged with crimes. Consistent with the Eighth Amendment prohibition against excessive bail, when criminal charges are made, the Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). Generally, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405. The same standards should be applied here because Ms. Haji Zada is a lawful permanent

resident entitled to broad constitutional protections and no indictment has been brought against her. *See Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 174 (3d Cir. 2018).

Under the Bail Reform Act, pretrial detention for criminal defendants is evaluated using four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the person's history and characteristics; and (4) the nature and seriousness of any danger to any person in the community should the person be released. Under this scheme, the question of dangerousness turns on a "specific, forward-looking assessment of whether [the person] currently pose[s] an unmitigable threat to public safety." *United States v. Munchel*, 991 F.3d 1273, 1285 (D.C. Cir. 2021) (Katsas, J. concurring in part and dissenting in part). Applied here, all four factors weigh in favor of Ms. Haji Zada's release.

The circumstances here support Ms. Haji Zada's request for release. Ms. Haji Zada is accused of being an "alien terrorist." Section 1531(1) defines an "alien terrorist" as an alien described in 8 U.S.C. § 1227(a)(4)(B), which in turn provides, "Any alien who is described in subparagraph (B) or (F) of section 1182(a)(3) of this title is deportable." Section 1182(a)(3)(B) defines aliens engaged in terrorist activities and § 1182(a)(3)(F) defines aliens associated with terrorist organizations. The evidence the government alleges demonstrates that Ms. Haji Zada meets this definition has not been disclosed and without an opportunity to review the alleged evidence, counsel cannot respond, violating Ms. Haji Zada's right to due process.

Whatever this secret, undisclosed evidence is, the government does not claim that it demonstrates that Ms. Haji Zada committed or planned to commit any violence and has not charged her with any crime. Instead, the government claims that Ms. Haji Zada (1) supports and pledged loyalty to ISIS; (2) supported her son and son-in-law's conspiracy; (3) indoctrinated her children with ISIS ideology and had them pledge loyalty to ISIS; and (4) worked with her son-in-

law to radicalize her family and conceal their pro-ISIS teaching and planned relocation to ISIS-controlled territory from her husband. *See* Gov't Ex. E.

If the government had any reliable evidence of those allegations—that she provided material support to terrorism—Ms. Haji Zada would have been criminally charged along with her son and son-in-law. The government has not disclosed whether any effort was made to indict Ms. Haji Zada, but the absence of an indictment supports the lack of evidence. In fact, before the grand jury that indicted her son and son-in-law [redacted]"

The government's claim that Ms. Haji Zada must be detained because the danger she presents in the community is unmitigable is belied by the actions of the government. The allegations stem from the investigation of and criminal charges against Ms. Haji-Zada's son and son-in-law, who were arrested and detained nearly two years ago, in October 2024. They later admitted planning an election day attack but stated that Ms. Haji Zada was not aware of that plan. The government now alleges that Ms. Haji Zada supported the plan by selling her family home to provide funds for the female members of the family to return to Afghanistan. The government was aware of the sale of the home at the time of the arrests of her son and son-in-law, and developed evidence regarding her role in the sale shortly after their arrest. The government nonetheless took no steps until now to remove Ms. Haji Zada from the community. Moreover, there is no evidence that she sold the home for the purpose of funding an attack or

knew that her son and son-in-law planned an attack. The limited weight of the evidence and the government delayed claim of danger support her release.

Ms. Haji Zada's history and characteristics also support release. Ms. Haji Zada is 47 years old with no prior criminal record. There is no evidence that she participated in the crimes committed by her son and son-in-law or took any actions to endanger the community before or after those crimes took place. No evidence suggests that she cannot be supervised in the community or that conditions cannot be fashioned to protect the community.

Counsel has spoken to a representative of the District of Columbia Pretrial Services Agency, who indicated that Ms. Haji Zada can be monitored with electronic monitoring through the United States Probation and Pretrial Services Office in the Norther District of Texas, where Ms. Haji Zada's family lives. The Court could confine her to her home and would be alerted if she attempts to leave the parameter of her home. Counsel has spoken to Ms. Haji Zada's husband[3] of 29 years and one of her daughters, who both have agreed to act as third-party custodians and ensure that Ms. Haji-Zada complies with the conditions of release. Ms. Haji Zada has committed no crime and would not be a danger to the community if released under these conditions.

Similarly, there is no risk that Ms. Haji Zada would flee or fail to appear in court. She has no valid passport. Currently, her expired passport is in the custody of defense counsel and counsel agrees to maintain custody of the passport as a condition of her release. Moreover, her family is in the Northern District of Texas, living together in the home to which see seeks

[3] The government has asserted many times in public filings that Ms. Haji Zada's husband had no knowledge of or involvement in their son and son-in-law's plot.

release. Her only other family and contacts are in Afghanistan, and she cannot travel to Afghanistan absent a valid passport.

**Conclusion**

For the foregoing reasons, and such other reasons as may be presented at the August 11, 2026 release hearing, Ms. Haji Zada respectfully moves this Honorable Court to release her to the third-party custody of her husband and daughter, on the condition that she reside at her family home under home detention with electronic monitoring, supervised by the District of Columbia Pretrial Services Agency through United States Probation and Pretrial Services for the Northern District of Texas.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

MATTHEW L. FARLEY
MARY MANNING PETRAS
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500