UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOOR DOE, *et al.*,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,<br>Defendants. | Case No. 26 Civ. 2103 (DEH) |
| ABDO DOE, *et al.*,<br>Plaintiffs,<br>v.<br>MARKWAYNE MULLIN, Secretary, United States Department of Homeland Security, in his official capacity, *et al.*,<br>Defendants. | Case No. 26 Civ. 2280 (DEH) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINTS**

JAMES M. MCDONALD
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2713/2734
*Attorney for Defendants*

MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
*Of Counsel*

# TABLE OF CONTENTS

ARGUMENT ........ 1

I. THE *ULTRA VIRES* CLAIM IS FORECLOSED BY *MULLIN* AND LACKS MERIT. ........ 1

II. THE EQUAL PROTECTION CLAIMS ARE FORECLOSED BY *MULLIN* AND FAIL ON THE MERITS. ........ 2

III. PLAINTIFFS' APA CLAIMS ARE FORECLOSED BY *MULLIN*. ........ 7

IV. PLAINTIFFS' DUE PROCESS CLAIM IS FORECLOSED BY *MULLIN* AND FAILS ON THE MERITS. ........ 8

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Mashwali v. USCIS*,
23-cv-7967 (LGS), 2025 WL 872089 n.2 (S.D.N.Y. Mar. 20, 2025) ........................................ 7

*Bellin v. McDonald*,
177 F.4th 167 (2d Cir. 2026) ........................................................................................ 9, 10

*Kapps v. Wing*,
404 F.3d 105 (2d Cir. 2005)........................................................................................... 9

*United States v. Caceres*,
440 U.S. 741 (1979)........................................................................................................ 10

*Afr. Cmtys. Together v. Mullin*,
No. 25-cv-13939-PBS, 2026 WL 2274504 n.3 (D. Mass. Aug. 7, 2026).................................. 2

*African Communities Together v. Mullin*,
No. 26-cv-10278, 2026 WL 2408737 (D. Mass. Aug. 18, 2026) .............................................. 6

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)........................................................................................................ 8

*Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025)..................................................................................................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................... 3, 5

*Bd. of Pardons v. Allen*,
482 U.S. 369 (1987)........................................................................................................ 9

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985)........................................................................................... 3

*Bucklew v. Precythe*,
587 U.S. 119 (2019)........................................................................................................ 3

*CASA de Maryland, Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ................................................................................. 2

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ... 8, 9

*Doe v. Mullin*,
No. 25-cv-15483, 2026 WL 2279577 (N.D. Ill. Aug. 7, 2026) ... 6

*Doe v. Noem*,
No. 26-cv-2103 (DEH), 2026 WL 2085662 (S.D.N.Y. July 20, 2026) ... 4

*Ferreira v. Dosin*,
No. 23-cv-10336 (NSR), 2026 WL 26036 (S.D.N.Y. Jan. 5, 2026) ... 4

*Giambalvo v. Suffolk Cnty.*,
155 F.4th 163 (2d Cir. 2025) ... 3

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ... 2

*Jimenez-Nieves v. United States*,
682 F.2d 1 (1st Cir. 1982) ... 8

*L.M. v. Johnson*,
150 F. Supp. 3d 202 (E.D.N.Y. 2015) ... 4

*Make the Rd. N.Y. v. Mullin*,
179 F.4th 16 (D.C. Cir. 2026) ... 7

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ... passim

*National Rifle Association of America v. Vullo*,
602 U.S. 175 (2024) ... 5

*Nat'l Retail Fed'n v. James*,
806 F. Supp. 3d 427 (S.D.N.Y. 2025) ... 3

*NLRB v. Newark Elec. Corp.*,
14 F.4th 152 (2d Cir. 2021) ... 5

*Nozzi v. Hous. Auth. of L.A.*,
806 F.3d 1178 (9th Cir. 2015) ... 10

*Olim v. Wakinekona*,
461 U.S. 238 (1983) ... 8

*Palin v. New York Times Co.*,
940 F.3d 804 (2d Cir. 2019).......... 5

*Poindexter v. EMI Record Grp. Inc.*,
No. 11-cv-559 (LTS) (JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012).......... 3

*Rajah v. Mukasey*,
544 F.3d 427 (2d Cir. 2008).......... 4

*Regents of the Univ. of Cal.*,
591 U.S. 1 (2020).......... 6

*Reid v. Bondi*,
132 F.4th 109 (2d Cir. 2024).......... 8

*Roe v. St. John's Univ.*,
91 F.4th 643 (2d Cir. 2024).......... 5

*Romero Marroquin de Rodriquez v. Hyde*,
25 Civ. 13210 (AK), 2026 WL 220416 (D. Mass. Jan. 28, 2026).......... 8

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996).......... 1

*Town of Castle Rock v. Gonzales*,
545 U.S. 748 (2005).......... 8

Statutes

8 U.S.C. § 1103(a)(1).......... 1

8 U.S.C. § 1254a(a)(1).......... 10

8 U.S.C. § 1254a(a)(1)(A).......... 10

8 U.S.C. § 1254a(b)(5)(A).......... 1, 7

U.S.C. § 1254a(b)(1)(C).......... 9

Regulations

91 Fed. Reg. 10402.......... 4

Defendants (the "government") respectfully submit this brief in further support of their motion to dismiss (Case No. 26-cv-2280, Dkt. No. 111 ("Gov't Br.")) and in reply to Plaintiffs' opposition briefs (Case No. 26-cv-2103 ("First Case"), Dkt. No. 69 ("2103 Pl. Opp."); Case No. 26-cv-2280 ("Second Case"), Dkt. No. 112 ("2280 Pl. Opp.")).

## ARGUMENT

### I. The *Ultra Vires* Claim Is Foreclosed by *Mullin* and Lacks Merit.

Plaintiffs in the Second Case challenge the Secretary of Homeland Security's termination of Yemen's Temporary Protected Status ("TPS") designation as *ultra vires*, contending that TPS authority belongs to the Attorney General. 2280 Pl. Opp. 3-7; Gov't Br. 9-17. But the Supreme Court, like this Court, has concluded that "[r]esponsibility for TPS decisions rests with the Secretary." *Mullin v. Doe*, 146 S. Ct. 2121, 2129 (2026) ("*Mullin*"); Gov't Br. 10-11. Plaintiffs dismiss this conclusion as dicta. 2280 Pl. Opp. 3 n.1. But the Supreme Court did not simply assume that the Secretary had TPS authority; it said so expressly, cited supporting statutory provisions, and construed 8 U.S.C. § 1254a(b)(5)(A) by substituting "[Secretary of Homeland Security]" for "Attorney General." *Mullin*, 146 S. Ct. at 2129-30, 2133; Gov't Br. 9-10. This conclusion was also essential to the holding that § 1254a(b)(5)(A) bars review of the Secretary's TPS determinations. It is therefore binding. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (courts are bound by "not only the result but also those portions of the opinion necessary to that result").

Plaintiffs' position also lacks merit. Congress charged the Secretary with the "administration and enforcement" of immigration laws, subject to limited exceptions for "functions . . . conferred upon the . . . Attorney General" and other officials. 8 U.S.C. § 1103(a)(1). Plaintiffs read this carve-out to preserve the Attorney General's TPS authority. 2280 Pl. Opp. 3-4. But if that carve-out encompassed every immigration power ever exercised by him, then § 1103(g)(1)—which reserves certain specific immigration authorities to the Attorney General—

would be superfluous. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) (courts "avoid" rendering "words altogether redundant"). Plaintiffs' reading also makes the statute illogical: § 1103(a) would transfer the Attorney General's immigration functions in one breath and reserve them in the next. Finally, Plaintiffs have no answer to their claim's self-defeating nature: If a Secretary could not terminate Yemen's TPS designation, a Secretary could not designate Yemen for TPS either, meaning Plaintiffs' success would eliminate the benefit they seek to preserve. Gov't Br. 11. Given "the explicitly temporary nature of the program," *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 328 (D. Md. 2018), no "reliance interests" would justify preserving a benefit that, by Plaintiffs' account, was unlawfully granted. 2280 Pl. Opp. 6.[1]

## II. The Equal Protection Claims Are Foreclosed by *Mullin* and Fail on the Merits.

Even if Plaintiffs' equal protection claims were reviewable (they are not[2]), the claims cannot survive *Mullin*. There, the Supreme Court held that the alleged evidence of discrimination was "insufficient to show that the termination of Haiti's TPS designation was based on the race of the Haitian people." 146 S. Ct. at 2139. The respondents there—like Plaintiffs—had themselves supplied a "strong, race-neutral explanation" for the allegedly discriminatory statements and TPS termination: "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id.* The respondents had alleged that "the Secretary made a 'preordained decision' to end TPS for all countries," *id.*—just as Plaintiffs here allege

[1] Plaintiffs suggest that the government's interpretation of § 1103 casts doubt on the Attorney General's authority over other matters. 2280 Pl. Opp. 6. But these matters "are not before the Court." *Afr. Cmtys. Together v. Mullin*, No. 25-cv-13939-PBS, 2026 WL 2274504, at *4 n.3 (D. Mass. Aug. 7, 2026).

[2] *See Mullin*, 146 S. Ct. at 2140 (Thomas, J., concurring) ("equal protection claim . . . falls within the plain text of § 1254a(b)(5)(A)'s judicial-review bar").

"preordained outcomes" reflected in the former Secretary's attempt "to terminate all thirteen TPS designations that have come up for review." Second Case, Dkt. No. 85 ("2280 Am. Compl.") ¶ 79; First Case, Dkt. No. 1 ("2103 Compl.") ¶ 77 (discussing administration's "plan to effectively end TPS consistent with campaign promises").[3] Where, as here, an "'obvious alternative explanation'" exists, "discrimination is not a plausible conclusion." *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009).

Plaintiffs emphasize that *Mullin* was decided at the preliminary-relief stage. 2280 Pl. Opp. 8-9; 2103 Pl. Opp. 18-19. But "just as binding as [a Supreme Court] holding is the reasoning underlying it," *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019), and "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*'—carries precedential weight in 'future cases.'" *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663 (2025) (Gorsuch, J., concurring); *see also Giambalvo v. Suffolk Cnty.*, 155 F.4th 163, 177 n.4 (2d Cir. 2025) ("conclusion of law by a panel of this Court . . . is binding precedent," even if issued "in the preliminary injunction posture"). Further, the Supreme Court did not merely find that the respondents had failed to carry an interim burden; it deemed their evidence—which mirrors Plaintiffs' allegations—"insufficient to show" discrimination given the "strong, race-neutral explanation" respondents themselves raised. *Mullin*, 146 S. Ct. at 2139. That reasoning prevents Plaintiffs from stating a plausible claim under Rule 12(b)(6). *See, e.g.*, *Nat'l Retail Fed'n v. James*, 806 F. Supp. 3d 427, 431 (S.D.N.Y. 2025) (dismissing case and denying preliminary relief for the "same reasons").

[3] Though Plaintiffs in the First Case have removed this allegation from their amended complaint, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Poindexter v. EMI Record Grp. Inc.*, No. 11-cv-559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (courts "may still credit admissions in the original complaint and attached exhibits" after amendment).

Plaintiffs try to distinguish *Mullin* because the respondents there claimed only race discrimination, whereas Plaintiffs here also claim discrimination based on national origin, ethnicity, ancestry, and religion. 2280 Pl. Opp. 8-9; 2103 Pl. Opp. 20-21. But there is "no cogent reason" why this changes the analysis. *Doe v. Noem*, No. 26-cv-2103 (DEH), 2026 WL 2085662, at *2 (S.D.N.Y. July 20, 2026). The race-neutral explanation credited by the Supreme Court is just as neutral toward other characteristics.

Plaintiffs emphasize their national origin claim (2280 Pl. Opp. 8-9, 15 n.5; 2103 Pl. Opp. 2), but the former Secretary terminated 13 countries' TPS designations, rendering that theory implausible. *Ferreira v. Dosin*, No. 23-cv-10336 (NSR), 2026 WL 26036, at *7 (S.D.N.Y. Jan. 5, 2026) (granting 12(b)(6) motion where adverse actions against parties outside plaintiff's protected class "undermine[d] . . . inference of discriminatory intent"). Moreover, "[o]ur immigration laws have distinguished among aliens based on their national origin from the beginning," and nationality-based distinctions are made "as a matter of course." *Mullin*, 146 S. Ct. at 2144 (Thomas, J., concurring). (It is therefore unsurprising that Yemenis face certain requirements that other immigrants do not. 2103 Pl. Opp. 7, 17.) These distinctions are "upheld so long as they are not wholly irrational." *L.M. v. Johnson*, 150 F. Supp. 3d 202, 217 (E.D.N.Y. 2015) (quoting *Rajah v. Mukasey*, 544 F.3d 427, 438 (2d Cir. 2008)). The TPS termination was not "wholly irrational," *id.*, as the Federal Register notice makes clear, 91 Fed. Reg. 10402, 10402-08 (Mar. 3, 2026). And the substance of the termination is unreviewable in any event. *Doe v. Noem*, 2026 WL 2085662, at *2 ("substantive merits of the Secretary's determination" is unreviewable).

Plaintiffs argue that an alternative explanation defeats a discrimination claim only if it renders the inference of discrimination implausible. 2280 Pl. Opp. 9-10; 2103 Pl. Opp. 20. But that

is what an "'obvious alternative explanation'" does. *Iqbal*, 556 U.S. at 682. "As between [an] 'obvious alternative explanation' . . . and . . . purposeful, invidious discrimination . . . , discrimination is not a plausible conclusion." *Id.* And here the Supreme Court has already credited a "strong, race-neutral" alternative explanation—one Plaintiffs themselves have endorsed, 2280 Am. Compl. ¶ 79; 2103 Compl. ¶ 77—"that the current administration, which has terminated every TPS designation that has come up for renewal, simply opposes the TPS program, at least as it has been implemented in the past." *Mullin*, 146 S. Ct. at 2128. Courts "cannot turn a blind eye to 'an obvious alternative explanation' . . . that undermine[s] a plaintiff's theory of liability." *Roe v. St. John's Univ.*, 91 F.4th 643, 654 (2d Cir. 2024); *see also NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021) ("agency action is entitled to a presumption of regularity").[4]

Plaintiffs concede that equal protection claims fail when "the face of the Complaint" makes clear that the challenged act would have occurred regardless of animus. 2280 Pl. Opp. 15-16; Gov't Br. 12. That is true here. Plaintiffs themselves assert that Yemen's TPS termination was part of the "second Trump Administration['s] . . . plan to effectively end TPS consistent with campaign promises," noting its termination of 13 TPS designations and contending that the "termination decisions—including the termination of TPS for Yemen—reflect preordained outcomes driven by

[4] Plaintiffs cite no decisions overruling or limiting *Iqbal*'s "obvious alternative explanation" principle. *National Rifle Association of America v. Vullo*, 602 U.S. 175, 194-95 (2024), held that a court could not "simply credit" as an "obvious alternative explanation" the defendant's litigation position that she was merely discharging her "regulatory responsibilities" (and not coercing the plaintiff in violation of the First Amendment, as the complaint alleged). Here, by contrast, Plaintiffs plead an "obvious alternative explanation," which the Supreme Court has already credited. *Vullo* is therefore inapposite. And *Palin v. New York Times Co.*, 940 F.3d 804, 810-12 (2d Cir. 2019), concluded that the district court improperly convened an evidentiary "plausibility hearing" and improperly credited witness testimony at that hearing when deciding a Rule 12(b)(6) motion. The Circuit never discussed *Iqbal's* "obvious alternative explanation" principle.

. . . partisan politics." 2280 Am. Compl. ¶ 79; *see also* 2103 Compl. ¶ 77. By Plaintiffs' own account, the termination would have occurred regardless of animus, which is fatal to their claim.

Plaintiffs contend that the termination was discriminatory because the former Secretary acted despite finding that Yemen was unsafe. 2280 Pl. Opp. 11-13; 2103 Pl. Opp. 14-15. But plaintiffs in every recent TPS case—including those before the Supreme Court—challenged the terminations based on claimed persistent dangerous conditions. *See, e.g.*, *Mullin*, 146 S. Ct. at 2148 n.2 (Kagan, J., dissenting) (discussing "'kidnapping, crime, terrorist activity, [and] civil unrest'" in Haiti and "'terrorism, civil unrest, kidnapping, hostage taking, and armed conflict'" in Syria). Yemen faced no materially different treatment, and Plaintiffs' allegations do not, "singly or in concert, establish[] a plausible equal protection claim." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 34-35 (2020) (dismissal at pleadings stage proper despite alleged "unusual history" of government action and alleged "critical statements . . . that evince discriminatory intent").

Plaintiffs cite two out-of-circuit district courts that denied motions to dismiss equal protection claims: *African Communities Together v. Mullin*, No. 26-cv-10278, 2026 WL 2408737, at *6 (D. Mass. Aug. 18, 2026), and *Doe v. Mullin*, No. 25-cv-15483, 2026 WL 2279577, at *10 (N.D. Ill. Aug. 7, 2026). *African Communities Together* merely adopted the reasoning of *Doe* without additional analysis. 2026 WL 2408737, at *6-7. And *Doe* doubted its own conclusion, acknowledging that "the Supreme Court's reasoning . . . suggests that it might not be so limited by its procedural posture." 2026 WL 2279577, at *11. It then certified the question for interlocutory appeal citing a "substantial ground for difference of opinion." *Id.* The court harbored these doubts, even without the benefit of the above arguments: it never considered, for example, the existence of an "obvious alternative explanation" requiring dismissal under *Iqbal*.

Finally, Plaintiffs insist that their claims should not be dismissed without discovery. 2280 Pl. Opp. 11; 2103 Pl. Opp. 19. But "[c]onstitutional challenges to agency action are . . . resolved within the APA's judicial-review framework." *Make the Rd. N.Y. v. Mullin*, 179 F.4th 16, 29 (D.C. Cir. 2026). "'[B]road ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render meaningless the APA's restriction of judicial review to the administrative record.'" *Al-Mashwali v. USCIS*, No. 23-cv-7967 (LGS), 2025 WL 872089, at *8 n.2 (S.D.N.Y. Mar. 20, 2025), *aff'd*, No. 25-1266, 2026 WL 1145921 (2d Cir. Apr. 28, 2026). Plaintiffs say that discovery in another case showed that "USCIS drafted memoranda recommending termination of TPS for Honduras and Nicaragua before the drafters reviewed USCIS's country-condition reports." 2280 Pl. Opp. 11. That only bolsters the "obvious alternative explanation" that the former Secretary "made a 'preordained decision' to end TPS." *Mullin*, 146 S. Ct. at 2139. Plaintiffs do not raise "'a reasonable expectation that discovery will reveal evidence' of discrimination." 2280 Pl. Opp. 11.

## III. Plaintiffs' APA Claims Are Foreclosed by *Mullin.*

Section 1254a(b)(5)(A), as interpreted by *Mullin*, bars Plaintiffs' statutory APA claims. 146 S. Ct. at 2137 ("TPS statute's judicial-review bar applies to all non-constitutional claims"). Plaintiffs in the First Case concede as much. 2103 Pl. Opp. 1, 25. Plaintiffs in the Second Case rest their APA claims on their *ultra vires* theory. Plaintiffs argue that "Plaintiffs' APA claims all remain viable notwithstanding *Mullin*" because "[i]f the TPS statute's references to the Attorney General are all still in place, then the jurisdiction-stripping provision of 8 U.S.C. §1254a(b)(5)(A) must protect only his 'determinations' from review." 2280 Pl. Opp. 7. That argument fails for the reasons set forth above. *See supra* Section I. The statutory APA claims must be dismissed.

## IV. Plaintiffs' Due Process Claim Is Foreclosed by *Mullin* and Fails on the Merits.

Section 1254a(b)(5)(A) likewise bars Plaintiffs' due process claim. Plaintiffs in the First Case do not address this claim. 2103 Pl. Opp. 3. Plaintiffs in the Second Case describe it as resting on interests "created by statute" that "constitutionalize" their "claims to statutory process." 2280 Pl. Opp. 16. But a statutory procedure is not itself a protected interest. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005) ("[E]ntitlement to nothing but procedure" cannot "be the basis for a property interest."). Plaintiffs' own authority explains that "[t]he categories of substance and procedure are distinct." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Plaintiffs' other cases are not to the contrary. In each, the interest at stake existed apart from the procedure the agency failed to follow. *See, e.g.*, *Reid v. Bondi*, 132 F.4th 109, 127 (2d Cir. 2024) (full and fair hearing); *Romero Marroquin de Rodriquez v. Hyde*, 25 Civ. 13210 (AK), 2026 WL 220416, at *3-4 (D. Mass. Jan. 28, 2026) (release from detention). The deprivation Plaintiffs allege is the termination of Yemen's designation "without following the statutorily mandated requirements," 2280 Am. Compl. ¶ 187, which is the same objection to the Secretary's process that *Mullin* placed beyond review.[5]

Nor do Plaintiffs have a protected liberty or property interest. They argue that, absent a finding that Yemen no longer meets the conditions for designation, the designation "is extended." 2280 Pl. Opp. 17-18. But *Bellin v. McDonald*, on which Plaintiffs rely, refutes their argument. *Bellin* makes clear that there is no protected interest where a decisionmaker has "the power to grant

[5] That *Jimenez-Nieves* and *Allis-Chalmers*, cited by the government in its moving brief, Gov't Br. 20, arose outside the due process context, *see* 2280 Pl. Opp. 17 n.7, does not matter. Each held that a party cannot escape a bar on review by relabeling its claims. *See Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

or deny a benefit regardless of whether particular criteria are met," or where the "prescribed criteria are open-ended and subjective" rather than "determinate and well-defined." 177 F.4th 167, 181-82 (2d Cir. 2026) (quotation marks omitted). Criteria of that kind do not "meaningfully channel[] official discretion," and no property interest arises. *Id.* at 182. Such is the case here. Even when the Secretary finds that extraordinary and temporary conditions prevent nationals from returning in safety, she may decline to extend a designation upon finding that permitting those nationals to remain temporarily in the United States is "contrary to the national interest of the United States." 8 U.S.C. § 1254a(b)(1)(C). The Secretary did so here. 91 Fed. Reg. at 10404-06.

Nor is the national interest a "determinate and well-defined" criterion. *Bellin*, 177 F.4th at 182. The regulatory scheme in *Bellin* set out enumerated eligibility requirements, applied them in a standardized assessment, and a medical panel reviewed them. *Id.* at 185–87. The TPS statute has no comparable criteria. The national interest is "an expansive standard that may encompass an array of broad considerations," and applying it "calls upon the Secretary's expertise and discretionary judgment." 91 Fed. Reg. at 10405-06. *Bellin* also treated the availability of judicial review as an "'indication of a legislative intent to cabin . . . discretion.'" *Bellin*, 177 F.4th at 189 (citation omitted). Congress foreclosed such review here, evincing the Secretary's wide discretion.

Plaintiffs' other cases are inapposite. For example, *Loudermill* involved a tenured employee who could be discharged only for cause, and *Allen* involved a prisoner whose release was mandatory once statutory criteria were met. *See Loudermill*, 470 U.S. at 538-39; *Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987). *Kapps v. Wing* turned on the absence of discretion: "there has been no intimation in the course of this litigation that discretionary factors enter into the determination." 404 F.3d 105, 114 (2d Cir. 2005). The TPS statute, by contrast, commits the

designation to the Secretary's judgment. 8 U.S.C. § 1254a(a)(1)(A) (the Secretary "may grant"). Plaintiffs separately invoke the employment authorization and protection from removal available to TPS recipients and applicants, 2280 Pl. Opp. 18, but those benefits last only for the designation period. 8 U.S.C. § 1254a(a)(1); 91 Fed. Reg. at 10402.

The individualized procedures Plaintiffs invoke do not apply to categorical determinations like TPS. Plaintiffs do not contest that the Secretary's termination is such a determination, and they do not address *Bi-Metallic*, *Florida East Coast Railway*, or *Quesada*. Gov't Br. 23-24. They cite a case involving a regulation that deferred a benefit reduction for a period after the agency notified individuals, and an "incomprehensible" notice. *See Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1193-96 (9th Cir. 2015). The TPS statute's equivalent is its 60-day notice period, which the Secretary observed, and her notice is not incomprehensible. 91 Fed. Reg. at 10402-08.

Lastly, Plaintiffs also received whatever process was due. Plaintiffs claim that the safeguards they seek "require no new administrative machinery." 2280 Pl. Opp. 20. But a low burden does not make the existing procedures constitutionally inadequate. The court in *Bellin* concluded that the burden of the proposed procedures was modest and upheld the existing procedures anyway, because the plaintiff could not show that the added procedures would reduce error. 177 F.4th at 195-96. The same is true here. Plaintiffs invoke a "risk of erroneously terminating protection," 2280 Pl. Opp. 20, but they do not identify the standard by which the Secretary's determination could even be judged erroneous. Plaintiffs also distinguish *United States v. Caceres* on the ground that it involved rules "neither the statute nor the Constitution required," 2280 Pl. Opp. 21, but similarly to the challenged rules in *Caceres*, the existing procedures in the TPS statute "do not raise any constitutional questions." 440 U.S. 741, 752 (1979).

## **CONCLUSION**

The Amended Complaints should be dismissed.

Dated: New York, New York
September 25, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney
Southern District of New York
*Attorney for Defendants*

By: */s/ Adam Gitlin*
MARK OSMOND
ADAM GITLIN
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2713/2734
mark.osmond@usdoj.gov
adam.gitlin@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,301 words.